BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division
DREW C. ENSIGN
Deputy Assistant Attorney General
AUGUST FLENTJE
Deputy Director
EREZ REUVENI
Assistant Director
Office of Immigration Litigation
ERIC HAMILTON
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Director
ELISABETH J. NEYLAN
Trial Attorney
Federal Programs Branch
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | No. 1:25-cv-1285 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| STATE OF ILLINOIS; JB PRITZKER, Governor of Illinois, in his Official Capacity; THE CITY OF CHICAGO; BRANDON JOHNSON, Mayor of Chicago, in his Official Capacity; LARRY SNELLING, Chicago Police Superintendent, in his Official Capacity; COOK COUNTY, ILLINOIS; COOK COUNTY BOARD OF COMMISSIONERS; TONI PRECKWINKLE, President of the Cook County Board of Commissioners, in her Official Capacity; THOMAS J. DART, Cook County Sheriff, in his Official Capacity, | |
| Defendants. | |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## PRELIMINARY STATEMENT

1. Within hours of assuming the Presidency, President Trump declared a "national emergency exists at the southern border of the United States" from the unprecedented "illegal entry of aliens" into the country. Proclamation 10,886, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025). "Many of these aliens unlawfully within the United States present significant threats to national security and public safety, committing vile and heinous acts against innocent Americans." Executive Order 14,159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025). Further exacerbating this national crisis, some of these aliens find safe havens from federal law enforcement detection in so-called Sanctuary Cities where they live and work among innocent Americans, who may later become their crime victims.

2. This national crisis underscores the vital importance of "[e]nforcing our Nation's immigration laws." *Id.* This action seeks to put an end to one State's efforts to impede the Federal Government from doing that.

3. The United States brings this declaratory and injunctive action to prohibit the State of Illinois and its subdivisions from enforcing several state and local laws—namely, the Way Forward Act, TRUST Act, Welcoming City Act, and Cook County, Ill. Ordinance 11-O-73—that are designed to and in fact interfere with and discriminate against the Federal Government's enforcement of federal immigration law in violation of the Supremacy Clause of the United States Constitution. *See* The TRUST Act, 5 Ill. Comp. Stat. 805/1 *et*

*seq.* (2017), *amended*, Illinois Way Forward Act, 2021 Ill. Legis. Serv. 102-234; Cook County, Illinois Ordinance 11-O-73 (2011); and Welcoming City Ordinance, Chicago Mun. Code ch. 2-173 (2012).

4. The United States has well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding U.S. Supreme Court precedent. Indeed, Congress last week strengthened that authority with the enactment of the Laken Riley Act, S. 5, 119th Cong. (2025), which "mandates the federal detention of illegal immigrants who are accused of theft, burglary, assaulting a law enforcement officer, and any crime that causes death or serious bodily injury." DHS, Press Release, President Trump Signs the Laken Riley Act in Law, https://www.dhs.gov/news/2025/01/29/president-trump-signs-laken-riley-act-law.

5. Both the Governor of Illinois JB Pritzker and Mayor of Chicago Brandon Johnson, sued here in their official capacities, profess a shared interest with the Federal Government in enforcing immigration laws to effectuate the removal of such offenders from the United States. Last week on CNN, Governor Pritzker proclaimed: "Well let me start by being clear that when we're talking about violent criminals who've been convicted and who are undocumented, we don't want them in our state. We want them out of the country. We hope they do get deported. And if that's who they're picking up, we're all for it." https://www.cnn.com/2025/01/26/politics/video/sotu-pritzker-on-planned-chicago-immigration-raids. Illinois laws, however, provide otherwise.

6. The challenged provisions of Illinois, Chicago, and Cook County law reflect their intentional effort to obstruct the Federal Government's enforcement of federal

immigration law and to impede consultation and communication between federal, state, and local law enforcement officials that is necessary for federal officials to carry out federal immigration law and keep Americans safe.

7. Upon information and belief, the conduct of officials in Chicago and Illinois minimally enforcing—and oftentimes affirmatively thwarting—federal immigration laws over a period of years has resulted in countless criminals being released into Chicago who should have been held for immigration removal from the United States. According to the U.S. Immigration and Customs Enforcement's (ICE) Law Enforcement Statistical Tracking Unit, from Fiscal Year 2016 until 2025, Enforcement and Removal Operations (ERO) arrested 13,564 aliens in Illinois, lodging 11,036 detainers. For those arrested, many were charged with serious crimes including assault, larceny, and sexual and drug-related offenses.

8. The Illinois Way Forward Act and TRUST Act both impede the Federal Government's ability to regulate immigration and take enforcement actions against illegal aliens by preventing state law enforcement officials from assisting with federal civil immigration enforcement. Under these laws, state officers are explicitly prohibited from complying with immigration detainers or civil immigration warrants; they are also prevented from entering into agreements to detain noncitizens for federal civil immigration violations. *See* 5 Ill. Comp. Stat. 805/15.

9. The Chicago law, the Welcoming City Ordinance, Chicago Municipal Code ch. 2-173, limits the ability of Chicago law enforcement officers (1) to provide the Federal Government with basic information about noncitizens who are in their custody and are subject to federal immigration custody, including custody status or release date, and (2)

to provide federal officers access to such individuals to effect their safe transfer to federal immigration custody when presented with a federal administrative warrant.

10. The Cook County law, Ordinance 11-O-73, "Policy for Responding to ICE Detainers," similarly limits the ability of Cook County law enforcement officers to provide the Federal Government with basic information about noncitizens who are in their custody and are subject to federal immigration custody, or to provide federal officers access to such noncitizens to effect their safe transfer to federal immigration custody when presented with a federal administrative warrant.

11. The challenged provisions of Illinois, Chicago, and Cook County law have the purpose and effect of making it more difficult for, and deliberately impeding, federal immigration officers' ability to carry out their responsibilities in those jurisdictions. These provisions intentionally obstruct the sharing of information envisioned by Congress, including basic information such as release dates and custodial status, thereby impairing federal detention of removable aliens, including dangerous criminals, as required by federal law; they further purport to direct federal officials to procure criminal arrest warrants in order to take custody of removable aliens, even though Congress has made an explicit policy choice that such removals can be effectuated by *civil* arrest warrants for immigration enforcement; and they facilitate the release of dangerous criminals into the community by directing local employees to refuse to transfer such aliens to federal officials in a secure environment—thereby resulting in their release onto the streets, where they all too often reoffend and commit serious crimes.

12. Upon information and belief, the provisions of Chicago and Cook County law that restrict information sharing jeopardize the safety of residents. For example, last August, federal officials issued a detainer request for an alien being held in Cook County jail on domestic violence charges. The detainer was not honored, and the alien was subsequently arrested on October 10, 2024 for aggravated criminal sexual assault and abuse of a minor.

13. The Supremacy Clause prohibits Illinois, Chicago, Cook County, and their officials from obstructing the Federal Government's ability to enforce laws that Congress has enacted or to take actions entrusted to it by the Constitution.

14. The Supremacy Clause also prohibits Illinois, Chicago, and Cook County from singling out the Federal Government for adverse treatment—as the challenged laws do—thereby discriminating against the Federal Government. Accordingly, the provisions challenged here are invalid and should be enjoined.

## JURISDICTION AND VENUE

15. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

16. Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants City of Chicago, Cook County, and their officials reside within the Northern District of Illinois and because all Defendants' acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

17. The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

18. Plaintiff, the United States of America, regulates immigration under its constitutional and statutory authorities, and it enforces federal immigration laws through its Executive

agencies, including the Departments of Justice, State, Labor, and Homeland Security (DHS) as well as DHS's component agencies U.S. Immigration and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP).

19. Defendant State of Illinois is a state of the Union.

20. Defendant JB Pritzker is the Governor of Illinois, and is being sued in his official capacity.

21. Defendant City of Chicago is a city in the State of Illinois and a Sanctuary City.

22. Defendant Brandon Johnson is the Mayor of Chicago, and is being sued in his official capacity.

23. Defendant Larry Snelling is the Superintendent of the Chicago Police Department, and is being sued in his official capacity.

24. Defendant Cook County is a county in the State of Illinois.

25. Defendant Cook County Board of Commissioners is the governing board and legislative body of Cook County, and is responsible for the management of the affairs of Cook County.

26. Defendant Toni Preckwinkle is President of the Cook County Board of Commissioners, and is being sued in her official capacity.

27. Defendant Thomas J. Dart is the Sheriff of Cook County, and is being sued in his official capacity.

## FEDERAL IMMIGRATION LAW

28. The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the

authority to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

29. The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

30. Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws, the execution of which States cannot obstruct or take discriminatory actions against. *See Arizona v. United States*, 567 U.S. 387, 394–95 (2012); *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444–47 (Scalia, J., concurring).

31. Congress has exercised its authority to make laws governing the entry, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

32. These laws confer upon the Executive Branch extensive authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, unlawfully in the United States. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231.

33. In effectuating these provisions, DHS may issue an "immigration detainer" that "serves to advise another law enforcement agency that [DHS] seeks custody of an alien presently

in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a); *see* 8 U.S.C. §§ 1103(a)(3), 1226(a), (c), 1231(a), 1357(d). An immigration "detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody[.]" 8 C.F.R. § 287.7(a).

34. DHS also may request, but not require, that custody be extended by a period not to exceed 48 hours, "in order to permit assumption of custody by the Department." *Id.* § 287.7(d). And in some instances, DHS is statutorily required – upon request from local authorities – to consider whether to issue a detainer for an alien in local custody. *See* 8 U.S.C. § 1357(d) (addressing violations of laws regulating controlled substances). In other cases, DHS is required to issue a detainer for certain aliens, including any alien who is "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" 8 U.S.C. § 1226(c).

35. On January 29, 2025, President Trump signed into law the Laken Riley Act, named for the nursing student killed by an alien who, after entering the United States illegally, committed additional crimes but was released before immigration authorities could intervene. *See* Laken Riley Act, S. 5, 119th Cong. (2025). The Laken Riley Act requires DHS to detain aliens who are unlawfully present in the United States and have been arrested for theft and other crimes. *Id.*

36. Congress has also codified basic principles of cooperation and comity between state and local authorities and the Federal Government. For example, federal law contemplates that

removable aliens in state custody who have been convicted of state or local offenses will generally serve their state or local criminal sentences before being subject to removal but will be taken into federal custody upon the expiration of their state prison terms. *See* 8 U.S.C. §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

37. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress has therefore directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Likewise, "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from," among other things, "[m]aintaining" "information regarding the immigration status, lawful or unlawful, of any individual," or "[e]xchanging such information with any other Federal, State, or local government entity." *Id.* § 1373(b).

38. Congress also authorized states and localities "to cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

39. Congress further sought to affirmatively penalize efforts to obstruct immigration enforcement by, among other things, prohibiting the "conceal[ing], harbor[ing], or shield[ing] from detection, or attempts to" accomplish the same, of any "alien in any place,

including any building or any means of transportation." *Id.* § 1324(a)(1)(A)(iii).

40.   DHS, through ICE and CBP, performs a significant portion of its law enforcement activities in Chicago and Cook County.  For example, since Fiscal Year 2024, ERO has issued 1,470 detainers in Illinois, and made 400 at-large arrests in Illinois, with 329, or roughly 82%, occurring in the Chicago area.  And CBP is responsible for enforcing the immigration laws at international ports of entry, including apprehending attempted entrants with criminal convictions or who are national security concerns.

### FACTUAL BACKGROUND

### Illinois's TRUST Act and Way Forward Act

41.   The Illinois TRUST Act was enacted in 2017 to prohibit state law enforcement officials from participating in federal civil immigration enforcement.  *See* TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq*. (2017). The TRUST Act was amended in 2021 by the Way Forward Act, to, among other things, prevent state and local law enforcement officials from entering into agreements to detain individuals for federal civil immigration violations.  *See id.* at 805/15(g).

42.   The Way Forward Act along with the TRUST Act limit cooperation with federal enforcement in numerous ways. For example, Section 15 of the TRUST Act prohibits "[a] law enforcement agency or law enforcement official" from "detain[ing] or continu[ing] to detain any individual solely on the basis of any immigration detainer or civil immigration warrant or otherwise comply with an immigration detainer or civil immigration warrant."  *Id.* at 805/15(a).

43.   Under that section, unless presented with a federal criminal warrant, or otherwise required by federal law, state law enforcement officials may not "assist in any capacity with an

immigration agent's enforcement operations," *id.* at 805/15(h). The prohibition extends to offering collateral assistance, including coordinating an arrest in a public facility; giving an immigration agent access, even by telephone, to an alien in state custody; transferring an alien to an immigration agent's custody; providing information in response to an immigration agent's inquiry or request; and providing information to an immigration agent regarding an alien's release date or contact information that is not otherwise publicly available. *See id.* at 805/15(h).

44. In addition, "[a state] law enforcement agency or law enforcement official may not inquire about or investigate the citizenship or immigration status or place of birth of any individual in the agency or official's custody or who has otherwise been stopped or detained by the agency or official." *Id.* at 805/15(e).

45. The TRUST Act purportedly does not prohibit "sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code," or "contacting another law enforcement agency for the purposes of clarifying or confirming the civil or criminal nature of notifications or other records" in certain databases. *Id.* at 805/5. And the Act permits "a [state] law enforcement agency or law enforcement official to request evidence of citizenship or immigration status pursuant to the Firearm Owners Identification Card Act, the Firearm Concealed Carry Act, Article 24 of the Criminal Code of 2012, or 18 United States Code Sections 921 through 931." *Id.* at 805/15(e).

46. Finally, the TRUST Act does not preclude a state law enforcement official from cooperating with other federal agencies, including Homeland Security Investigations

(HSI), in investigating criminal violations "in order to ensure public safety." *See id.* at 805/15(i).

### Chicago's Restrictions on State and Local Cooperation with Federal Officials (Chicago Municipal Code ch. 2-173)

47. In 2012, the Chicago City Council passed the "Welcoming City Ordinance," Chicago Code ch. 2-173, which sought to "clarify the communications and enforcement relationship between the City and the federal government," in addition to "establish[ing] the City's procedures concerning immigration status and enforcement of federal civil immigration laws." Chicago Mun. Code § 2-173-005.

48. The Ordinance explicitly and intentionally limits local cooperation with federal immigration enforcement in various ways. It provides that no city agent or agency shall "detain, or continue to detain a person based upon an immigration detainer" or "an administrative warrant, including, but not limited to, those entered into the Federal Bureau of Investigation's National Crime Information Center database, or successor or similar database maintained by the United States." *Id.* § 2-173-020(a)(1). Moreover, no city agent shall permit ICE agents "access, including by telephone, to a person being detained by, or in the custody of, the [city] agency or agent," or "use of [city] agency facilities for investigative interviews or other investigative purpose." *Id.* § 2-173-020(a)(2). Nor shall city agents "expend their time responding to ICE inquiries or communicating with ICE regarding a person's custody status, release date, or contact information." *Id.* § 2-173-020(a)(3).

49. Section 2-173-030 provides that: "Unless required to do so by statute, federal regulation, court order, or a lawfully issued judicial warrant, no [city] agent or agency shall request, maintain, or share the citizenship or immigration status of any person unless such

disclosure has been authorized in writing by the individual to whom such information pertains, or if such individual is a minor or is otherwise not legally competent, by such individual's parent or guardian." *Id.* § 2-17-030(a)(1).

50. These provisions used to contain a limited exception when the subject of the investigation: (1) had an outstanding criminal warrant, (2) had been convicted of a felony, (3) was a defendant in a criminal case with a pending felony charge, or (4) was a known gang member, but those exceptions were repealed in 2021. *See id.* 2-173-042(c) (repealed).

51. Upon information and belief, Chicago law enforcement officials have been chilled by these prohibitions.

52. Upon information and belief, Chicago law enforcement officials are also confused by the restrictions on them and thus do not provide even the permissible cooperation out of fear of punishment.

**Cook County's Restrictions on State and Local Cooperation with Federal Officials
(Cook County Code § 46-37)**

53. In 2011, the Cook County Board of Commissioners approved and adopted Ordinance 11-O-73, "Policy for Responding to ICE Detainers," which added Section 46-37 to the Cook County Code. The policy purports to establish the "proper boundaries of the relationship between local law enforcement and" ICE. Ordinance 11-O-73, pmbl.

54. The Cook County Ordinance limits local cooperation with federal immigration enforcement in numerous ways. It mandates that the county Sheriff "shall decline all ICE detainer requests unless there is a written agreement with the federal government by which all costs incurred by Cook County in responding to the detainer shall be reimbursed" and that "there shall be no expenditure of any County resources or effort by on-duty County personnel for [the] purpose" of cooperating with ICE detainers. Cook County Code, § 46-

37(a), (c). Section 46-37(b) of the County Code provides that "ICE agents shall not be given access to individuals . . . , and County personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty."

55. These provisions contain limited exceptions. County personnel may only provide ICE access to individuals in County custody or share information concerning an individual's incarceration status or release date if "ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws." *Id.* § 46-37(b).

56. The Federal Government, through ICE, has offered to reimburse certain costs incurred by Cook County as a result of honoring ICE detainers. Cook County rejected that offer.

57. Upon information and belief, since April 1, 2024, there have been numerous instances where Cook County law enforcement officers failed to honor a federal immigration detainer request concerning an alien who was subsequently criminally charged following the alien's release from jail. Had the requested information sharing occurred in these instances, the commission of numerous crimes likely would have been averted.

58. Consequently, not only are Cook County employees effectively barred from requesting and sharing information regarding immigration status with ICE or other law enforcement agencies, but where ICE has issued an immigration detainer for an alien in local custody, the detainer is removed from the alien's permanent criminal file, and therefore does not follow the alien if he/she is transferred to long-term state incarceration.

59. Upon information and belief, Cook County does not impose these restrictions on other forms of information sharing or other law enforcement agencies. *See* Cook County

Ordinance 11-O-73.

60. Upon information and belief, Cook County law enforcement officials have been chilled by these prohibitions.

61. Upon information and belief, Cook County law enforcement officials are also confused by the county restrictions on them and thus do not provide even the permissible cooperation out of fear of punishment.

## THE CHALLENGED PROVISIONS' IMPACT ON FEDERAL IMMIGRATION ENFORCEMENT

62. The combined effect of the challenged provisions of Illinois, Chicago, and Cook County laws, Ill. SB0667, 5 Ill. Comp. Stat. 805, Chicago Mun. Code §§ 2-173-020, 2-173-030 and Cook County Code § 46-37, facially and as applied, prohibits even the most basic cooperation with federal officials. Congress, in comity to States, permitted state and local jurisdictions to fully punish aliens for state criminal violations prior to removal. *See* 8 U.S.C. § 1231(a)(4)(A) (providing that, subject to limited exceptions, federal agents "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment"). But Congress crafted a statutory scheme that clearly envisioned the Federal Government being able to detain and remove those aliens, once their state proceedings and sentences concluded.

63. Specifically, Congress specified that the removal period begins immediately upon release from state criminal custody, *id.* § 1231(a)(1)(B)(iii), and detention during that period is mandatory, *id.* § 1231(a)(2); *see also* 8 U.S.C. § 1226(c)(3), *id.* § 1357(d) (directing immigration officers to obtain a detainer to facilitate the transfer of criminal aliens from state to federal custody). Congress granted this permission expecting that States would

then facilitate, or at the very least not obstruct, detention of criminal aliens by federal immigration authorities. If ICE lacks knowledge of criminal aliens' release dates from state custody, ICE cannot exercise its statutory responsibility of effecting an arrest upon the alien's release.

64. Furthermore, federal law contemplates that DHS will be able to inspect all applicants for admission, and take all appropriate action against those found to be inadmissible to the United States, even those transferred to state or local custody pending prosecution. *See id.* §§ 1182, 1225(b)(2); 8 C.F.R. § 235.2. And, to facilitate coordination between state and local officials and the Federal Government, Congress expressly prohibited any federal, state, or local government entity or official from prohibiting, or in any way restricting, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status, lawful or unlawful, of any individual," 8 U.S.C. § 1373(a), or from maintaining and exchanging such information with other law enforcement entities. *Id.* § 1373(b); *see also id.* § 1644.

65. The challenged Illinois, Chicago, and Cook County laws directly conflict with this scheme.

66. The Welcoming City Ordinance runs directly afoul of 8 U.S.C. § 1373 by forbidding city officers from "expend[ing] their time responding to ICE inquiries . . . regarding a person's custody status, release date, or contact information," Chicago Mun. Code § 2-173-020(a)(3), and further providing that such officers may not "request, maintain, or share the citizenship or immigration status of any person," *id.* § 2-173-030(a)(1). Nor can Chicago point to its purported savings clause to avoid that reality. The savings clause allows agents to undertake those activities "if required to do so by statute, federal

regulation, court order, or a lawfully issued judicial warrant," *id.* § 2-173-030(a), but rather than require States and local governments to share and maintain that information, federal law only prohibits restrictions on those activities. Chicago has therefore prohibited the activities that federal law expressly contemplates States will do.

67.     Moreover, Chicago's failure to provide exceptions to its prohibition on cooperation with federal immigration agents conflicts with federal law governing what constitutes a predicate for inadmissibility or removability. *See id.* §§ 1182(a)(2), 1227(a)(2). Federal agents are required to detain illegal aliens who have committed certain offenses upon their release from state custody. Congress not only recently reaffirmed its commitment to this mandate, but augmented the authority of federal agents in this space by adding predicate offenses that trigger this detention requirement, *id.* §§ 1226(c), (c)(3), 1357(d); *see also* Laken Riley Act, S. 5, 119th Cong. (2025).

68.     The restrictions on providing ICE access to removable aliens in their custody, *see* 5 Ill. Comp. Stat. 805/15(a), (h); Cook County Code § 46-37(b); Chicago Mun. Code § 2-173-020, also conflict with federal law, which establishes a system of civil administrative warrants as the basis for immigration arrest and removal, and does not require or contemplate use of a judicial warrant for civil immigration enforcement. *See* 8 U.S.C. §§ 1226(a), 1231(a).

69.     Further, upon information and belief, because of the challenged laws, DHS lacks the ability to readily obtain from local law enforcement the release date of aliens whom DHS has reason to believe are removable from the United States, and DHS lacks access to such aliens to facilitate the transfer of custody, even where DHS presents a Congressionally authorized civil administrative warrant of arrest or removal, *see id.* §§ 1226(a), 1231(a),

or has transferred those aliens to local law enforcement in the first instance to permit their prosecution for a state crime.

70. By restricting basic information sharing and barring DHS access to aliens in state or local custody upon their release as provided by federal law (e.g., an administrative warrant), the challenged Illinois, Chicago, and Cook County laws require federal immigration officers either (1) to engage in difficult and dangerous efforts to re-arrest aliens who were previously in local custody, endangering immigration officers, the particular alien, and others who may be nearby, or (2) to determine that it is not appropriate to transfer an alien to local custody in the first place, in order to comply with their mission to enforce the immigration laws.

71. Illinois, Chicago, and Cook County have no lawful interest in assisting removable aliens' evasion of federal law enforcement.

72. Upon information and belief, neither Illinois, nor Chicago, nor Cook County permits its employees to place a detainer or administrative warrant in the alien's file or to enter its existence in government databases, such that if an alien is transferred to another law enforcement agency, that agency cannot act on the undisclosed detainer or administrative warrant or learn about and share that alien's immigration status with other law enforcement, including the Federal Government.

73. Illinois, Chicago, and Cook County single out the Federal Government for their disfavored treatment. *See* 5 Ill. Comp. Stat 805/15; Chicago Mun. Code § 2-173-020; Cook County Ordinance 11-O-73.

74. These provisions are an obstacle to the Federal Government's enforcement of the immigration laws and discriminate against federal immigration enforcement, as well as

(with respect to the information-sharing and maintenance restrictions) expressly violate 8 U.S.C. § 1373.

75.     In rejecting congressionally authorized means of enforcing federal immigration law, including detainers and administrative warrants, these provisions constitute unlawful direct regulation of the Federal Government.

<u>**CLAIMS FOR RELIEF**</u>

<u>**COUNT ONE – VIOLATION OF THE SUPREMACY CLAUSE**
**(PREEMPTION)**</u>

76.     Plaintiff hereby incorporates paragraphs 1 through 75 of the Complaint as if fully stated herein.

77.     The challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 constitute and create obstacles to the enforcement of federal immigration law.

78.     The challenged provisions of those acts also undermine federal immigration law's protections for information sharing and are thus preempted under both express and conflict preemption principles. *E.g.*, 8 U.S.C. §§ 1373(a), 1644.

79.     Federal immigration law therefore preempts the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173.

80.     Accordingly, those provisions violate the Supremacy Clause, interfere with federal law, and create obstacles to the enforcement of federal immigration law both on their face and as applied to the Federal Government.

**COUNT TWO – VIOLATION OF THE SUPREMACY CLAUSE
(UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)**

81.  Plaintiff hereby incorporates paragraphs 1 through 80 of the Complaint as if fully stated herein.

82.  Defendants' enforcement of the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 discriminates against the Federal Government.

83.  The challenged provisions single out federal immigration officials, expressly and implicitly, for unfavorable and uncooperative treatment when other law enforcement officials are not so treated.

84.  Accordingly, the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 violate the Doctrine of Intergovernmental Immunity and therefore alternatively are invalid on that basis.

**COUNT THREE – VIOLATION OF THE SUPREMACY CLAUSE
(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

85.  Plaintiff hereby incorporates paragraphs 1 through 84 of the Complaint as if fully stated herein.

86.  Defendants' enforcement of the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 effects direct regulation of the Federal Government.

87. By refusing to honor civil detainers and warrants expressly authorized by Congress, Defendants have unlawfully eliminated these means for federal immigrations officials to carry out their statutory functions.

88. Accordingly, the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 effect regulation of the Federal Government and alternatively are invalid on that basis.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

1. That this Court enter a judgment declaring that the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 violate the Supremacy Clause and are therefore invalid;

2. That this Court enter a judgment declaring that the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173 violate 8 U.S.C. § 1373 and are therefore invalid;

3. That this Court issue preliminary and permanent injunctions that prohibit Defendants as well as their successors, agents, and employees, from enforcing the challenged provisions of the TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq.* (2017), as amended by the Way Forward Act, SB0667 (2021); Cook County Ordinance 11-O-73, § 46-37 (2011); and Chicago Welcoming City Ordinance ch. 2-173;

4. That this Court award the United States its costs and fees in this action; and

5. That this Court award any other relief it deems just and proper.

DATED: February 6, 2025

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
AUGUST FLENTJE
Deputy Director
EREZ REUVENI
Assistant Director
Office of Immigration Litigation

ERIC HAMILTON
Deputy Assistant Attorney General
ALEXANDER K. HAAS
Director
JACQUELINE COLEMAN SNEAD
Assistant Director
ELISABETH J. NEYLAN
Trial Attorney
Federal Programs Branch

*Attorneys for the United States*