**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

STATE OF ILLINOIS, et al.,

      Defendants.

Case No. 25-cv-1285
Judge Lindsay C. Jenkins

**MEMORANDUM IN SUPPORT OF
THE STATE OF ILLINOIS AND GOVERNOR PRITZKER'S
MOTION TO DISMISS**

KWAME RAOUL
Illinois Attorney General

Christopher G. Wells
*Chief of the Public Interest Division*
Darren Kinkead
*Public Interest Counsel*
Alex Hemmer
*Deputy Solicitor General*
Alexandra Reed
*Assistant Attorney General*
Office of the Illinois Attorney General

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.   The 2017 TRUST Act and the 2021 Way Forward Act .................................2

    B.   Prior unsuccessful challenges to the TRUST Act and the Way Forward Act..................4

    C.   The present lawsuit ........................................................................................5

LEGAL STANDARD ..........................................................................................................6

ARGUMENT........................................................................................................................6

    I.    Federal law does not preempt the Illinois TRUST Act (Count I)....................6

    A.   No federal law overrides Illinois's sovereign choice to opt out of federal immigration enforcement. ........................................................................7

    B.   No federal law requires Illinois law enforcement to provide the specific types of assistance Plaintiff now demands. ...............................................10

        1.   Federal law does not compel Illinois to arrest, detain, continue to detain, or transfer custody of individuals for civil immigration enforcement. .......................................11

        2.   Federal law does not compel Illinois to affirmatively share release date information, particularly when it is routinely posted online. ........................................12

        3.   Federal law does not compel Illinois to provide access to individuals in its custody for federal civil immigration enforcement. ...............................................14

    C.   The TRUST Act is not preempted by 8 U.S.C. § 1373. ...............................15

        1.   The TRUST Act permits the limited information-sharing referenced in 8 U.S.C. § 1373...............................................................................................15

        2.   A broad interpretation of 8 U.S.C. § 1373 would result in unconstitutional commandeering...............................................................................................17

    D.   The federal statutes at issue have no preemptive effect because they do not regulate the conduct of private actors. .........................................................19

    II.   The TRUST Act does not violate intergovernmental immunity principles..................20

    A.   The Act does not regulate the federal government (Count III). ....................21

    B.   The Act does not discriminate against the federal government (Count II). ..................22

    C.   The Act does not violate intergovernmental immunity principles because it effectuates Illinois's Tenth Amendment rights (Counts II and III)...............................23

    III.  The Governor is not a proper defendant. ....................................................24

CONCLUSION....................................................................................................................25

## INTRODUCTION

In two related laws, the 2017 TRUST Act and the 2021 Way Forward Act, Illinois chose to limit the assistance state and local law enforcement officials may provide to federal immigration agents. Now, in 2025, a new federal administration intent on effectuating the largest deportation in American history asks this Court to nullify Illinois's laws. The Constitution forbids that result.

The chief executive of the federal government may have recently changed, but the nation's constitutional structure has not. That structure preserves states' status as dual sovereigns within a federalist system. Consistent with their dual sovereignty, states generally retain the right to direct the conduct of their officers in exercising the states' traditional police powers—including the core power to decide whom to arrest for what conduct. Although states may choose to permit their officers to assist in federal law enforcement, the states cannot be forced to do so.

Through this lawsuit, the new federal administration seeks to coerce Illinois into enforcing federal immigration law. The complaint seeks to overrule Illinois's choice to opt out of federal immigration enforcement through three related claims: preemption based on federal immigration laws (Count I), discrimination against the federal government (Count II), and unlawful regulation of the federal government (Count III). All three claims fail because the Tenth Amendment and the anticommandeering rule protect the sovereign choice Illinois has made.

The grievances in the complaint about Illinois's laws do not cure this foundational defect. Illinois's choice not to assist in enforcing federal immigration law may require federal officers to exert their own effort to increase deportations. But that outcome is a feature of our constitutional design, not an obstacle to it. Nor can Illinois's constitutionally protected choice not to assist federal authorities with deportation be transformed into regulation of or discrimination against the federal government. Every claim in the complaint fails and should be dismissed with prejudice.

1

## BACKGROUND

The federal government ("Plaintiff") has sued the State of Illinois ("Illinois" or "the State") and the Governor of Illinois, JB Pritzker, along with officials from Chicago and Cook County, Illinois's largest city and county. Plaintiff asks this Court to invalidate the TRUST Act and related amendments known as the Way Forward Act, two Illinois laws that generally prohibit participation by state and local law enforcement in federal civil immigration enforcement. Compl. ¶ 3. Plaintiff also seeks to invalidate analogous ordinances enacted by Chicago and Cook County. *Id.* Plaintiff claims that these state and local laws are preempted by federal immigration statutes and violate intergovernmental immunity. Compl. Counts I-III.

### A. The 2017 TRUST Act and the 2021 Way Forward Act

The Illinois TRUST Act took effect in 2017 when Bruce Rauner, the Republican Governor of Illinois, signed it into law. Illinois Public Act 100-463 (eff. Aug. 28, 2017). As initially enacted, the TRUST Act imposed two restrictions on law enforcement agencies and officers in Illinois: first, they may not detain any person solely on the basis of an "immigration detainer" or a "non-judicial immigration warrant," *id.* § 15(a); and second, they may not stop, search, arrest, or otherwise detain a person solely based on citizenship or immigration status, *id.* § 15(b).

In 2021, Illinois enacted amendments to the TRUST Act, known as the Way Forward Act, that expanded the limits on participation by state and local law enforcement in federal immigration enforcement. Illinois Public Act 102-234 (eff. Aug. 2, 2021). These limits generally fall into three categories: a prohibition on eliciting information about citizenship, immigration status, or place of birth from individuals being detained, 5 ILCS 805/15(e); a discontinuation of detention agreements between county jails and federal immigration agencies, *id.* § 15(g); and specific prohibitions on providing various forms of assistance to federal immigration agents conducting civil immigration enforcement, *id.* § 15(h). Regarding the last category, the Way Forward Act states that "[u]nless

2

presented with a federal criminal warrant, or otherwise required by federal law," Illinois law enforcement agencies and officers may not "participate, support, or assist in any capacity with an immigration agent's enforcement operations." *Id.* § 15(h)(1). Specifically, Illinois law enforcement cannot assist federal immigration agents by providing access to or transferring persons in custody, *id.* § 15(h)(2)-(3); permitting use of agency facilities or equipment for immigration enforcement, *id.* § 15(h)(4); granting direct access to certain electronic databases, *id.* § 15(h)(5); responding to information requests and inquiries regarding persons in custody, *id.* § 15(h)(6); or providing non-public release or contact information, or "otherwise facilitat[ing]" the apprehension or questioning of an individual by federal immigration agents, *id.* § 15(h)(7).

These restrictions are not absolute. At the outset, the first section of the TRUST Act, 5 ILCS 805/5, states that none of the statutory terms should be "construed to prohibit or restrict" specific information-sharing regarding "citizenship or immigration status" in accordance with two specific federal statutes, 8 U.S.C. § 1373 and § 1644. Both statutes prohibit government entities and officers at any level—federal, state, or local—from restricting sharing of "information regarding the citizenship or immigration status" of any individual with successor agencies of the Immigration and Naturalization Service. 8 U.S.C. § 1373(a); *accord id.* § 1644.[1]

The Way Forward Act reincorporated this carve-out and added exceptions in § 15(h) for complying with federal criminal warrants and federal law. 5 ILCS 805/15(h). Finally, the Way Forward Act clarified in § 15(i) that the law does not prohibit a state or local official from "otherwise executing that official's duties in investigating violations of criminal law," or from cooperating with federal law enforcement in such investigations to ensure public safety. *Id.* § 15(i).

---

[1] Because of the substantial overlap between 8 U.S.C. § 1373 and § 1644, the remainder of this brief uses "8 U.S.C. § 1373" and "§ 1373" as umbrella terms to encompass both statutes.

**B. Prior unsuccessful challenges to the TRUST Act and the Way Forward Act**

Both the TRUST Act and the Way Forward Act have been the subject of prior preemption and intergovernmental immunity challenges, each of which failed. First, a group of Illinois sheriffs challenged the TRUST Act's prohibition on complying with civil immigration detainers, alleging it conflicted with federal law. Judge Johnston of this district dismissed their claims, holding that the sheriffs lacked standing because the TRUST Act did not require them to do anything prohibited by federal law. Because "ICE detainers are not compulsory" under federal law, he concluded, the sheriffs "do not violate federal law by complying with the Illinois TRUST Act." *Prim v. Raoul*, No. 3:20-cv-50094, 2021 WL 214641, at *3 (N.D. Ill. Jan. 21, 2021).

Next, following the adoption of the Way Forward Act, two Illinois counties with existing agreements to house detainees for federal civil immigration enforcement in their jails challenged the Act's termination of those agreements. The counties claimed federal immigration statutes authorizing cooperative detention agreements preempted the new Illinois law, and that forbidding Illinois counties from having such agreements improperly regulated the federal government. Judge Reinhard of this district dismissed their claims. *McHenry County v. Raoul*, 574 F. Supp. 3d 571 (N.D. Ill. 2021) ("*McHenry County I*"). He first concluded that the federal statutes at issue did not regulate private actors, and therefore, under *Murphy v. NCAA*, 584 U.S. 453 (2018), could not be a basis for preemption. 574 F. Supp. 3d at 578-79. In rejecting the counties' intergovernmental immunity claims, Judge Reinhard further concluded that the federal statute authorizing cooperative detention agreements, 8 U.S.C. § 1103(a)(11)(B), "leaves to the State the decision whether it or any of its political subdivisions enter, or remain in" them. 574 F. Supp. 3d at 581-82.

The Seventh Circuit affirmed, reasoning primarily that the cooperative, non-compulsory nature of the applicable federal statutes provided no support for plaintiffs' claims. *McHenry County v. Raoul*, 44 F.4th 581 (7th Cir. 2022) ("*McHenry County II*"). Agreeing with a prior Fifth Circuit

4

decision, *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018), and a Ninth Circuit decision, *United States v. California*, 921 F.3d 865 (9th Cir. 2019), the Seventh Circuit concluded that federal law gives "states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *McHenry County II*, 44 F.4th at 592 (quoting *California*, 921 F.3d at 889); *accord El Cenizo*, 890 F.3d at 177. Further, because the Tenth Amendment precludes federal commandeering of state and local law enforcement, the federal government could not *require* Illinois's cooperation in federal civil immigration enforcement. *McHenry County II*, 44 F.4th at 592. *McHenry County II* continues to be controlling precedent in the Seventh Circuit.

### C. The present lawsuit

This lawsuit is the third attempt to invalidate Illinois's decision to opt out of federal civil immigration enforcement through the TRUST Act and the Way Forward Act. The complaint in this case identifies no intervening change in federal law that has stripped Illinois of its right to make this choice. Rather, the acknowledged impetus for this lawsuit is the recent change in the federal administration and President Trump's immediate declaration of a purported "national emergency" from the allegedly "unprecedented 'illegal entry of aliens' into the country." Compl. ¶ 1 (citing Proclamation 10,866, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025)). Invoking this supposed "national crisis," Plaintiff alleges that "some of these aliens find safe havens from federal law enforcement detection" in so-called "[s]anctuary" jurisdictions. Compl. ¶ 1. Plaintiff asks this Court to invalidate the Illinois TRUST Act and the Way Forward Act, which Plaintiff claims "are designed to and in fact interfere with and discriminate against the Federal Government's enforcement of federal immigration law in violation of the Supremacy Clause of the United States Constitution." Compl. ¶ 3.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts applying this standard must accept as true well-pleaded factual allegations, they "do not credit legal conclusions" or mere conclusory statements. *Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018).

## ARGUMENT

### I.  Federal law does not preempt the Illinois TRUST Act (Count I).

Consistent with the Tenth Amendment, federal law preserves Illinois's sovereign right to opt out of assisting federal immigration agents with their civil immigration enforcement responsibilities. That is what Illinois has done through its statutes, the TRUST Act and the Way Forward Act.[2] In asserting that federal law preempts these state laws, the complaint systematically mistakes federal immigration agents' preferences for legal obligations. What federal immigration agents may want Illinois law enforcement to do is not the same as what federal law requires.

Illinois's constitutionally protected decision not to provide various forms of assistance to federal immigration agents—detaining or continuing to detain individuals upon request, providing affirmative notice of anticipated release dates, or allowing access to individuals in state or local custody—may result in federal immigration agents expending their own effort to enforce federal immigration law. But that outcome is entirely consistent with our federalist system of dual

---

[2] For readability, the remainder of this brief generally uses the "TRUST Act" or "the Act" to collectively refer to the 2017 TRUST Act and the 2021 Way Forward Act, except where greater specificity is necessary.

sovereignty. The Supremacy Clause and preemption principles do not suggest otherwise. The preemption claim in Count I of the complaint should be dismissed.

### A. No federal law overrides Illinois's sovereign choice to opt out of federal immigration enforcement.

Plaintiff asserts that the TRUST Act is an obstacle to federal immigration enforcement that must yield to the supremacy of federal law. *See, e.g.*, Compl. ¶ 74. Plaintiff is wrong as a matter of both constitutional and statutory law. The anticommandeering principle derived from the Tenth Amendment limits what Congress may compel states to do in enforcing federal immigration law, and the statutes Plaintiff cites reflect those limits. *See Murphy*, 584 U.S. at 480 ("a direct command to the States" is "exactly what the anticommandeering rule does not allow"). No federal statute preempts the TRUST Act.

In our constitutional system, "the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." *McHenry County II*, 44 F.4th at 585 (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)). The Supremacy Clause provides that, when federal and state law conflict, federal law prevails. *McHenry County II*, 44 F.4th at 587. But preemption of state law is "an extraordinary power in a federalist system" that courts "must assume Congress does not exercise lightly." *Id.* (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)). States retain their historic police powers "unless clearly superseded by federal statute." *California*, 921 F.3d at 887. One of the "quintessential police power[s]" retained by the states is the "ability to regulate [their] internal law enforcement activities." *Id.* at n.11.

Of the three recognized types of preemption—conflict, express, and field—Plaintiff focuses on conflict preemption. *See, e.g.*, Compl. ¶¶ 11, 29, 74. Conflict preemption, also called "obstacle" preemption, occurs when a "challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *McHenry County*

7

*II*, 44 F.4th at 591 (quoting *United States v. Arizona*, 567 U.S. 387, 399 (2012)). But the basis for preemption must always be "either the Constitution itself or a valid statute enacted by Congress," not "some brooding federal interest." *Kansas v. Garcia*, 589 U.S. 191, 202 (2020) (quoting *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019)). Because "it is Congress rather than the courts that pre-empts state law," preemption analysis is not a "freewheeling judicial inquiry into whether a state statute is in tension with federal objectives." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 607 (2011) (cleaned up). Displacing "the historic police powers of the States" through preemption only occurs when "that was the clear and manifest purpose of Congress." *Arizona*, 567 U.S. at 400 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Congress must also abide by the constitutional limits on its authority to preempt state law. *See Kansas*, 589 U.S. at 202 (requiring a "valid statute"). And absent from Congress's enumerated powers is the ability to "issue orders directly to the States." *Murphy*, 584 U.S. at 470. This, plus the Tenth Amendment's reservation of non-enumerated powers for the states, means that "the Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. 898, 925 (1997). Known as the anticommandeering rule, this limitation on federal power is "simply the expression of a fundamental structural decision incorporated into the Constitution" and embodied in the principle of dual sovereignty. *Murphy*, 584 U.S. at 470-74.

As dual sovereigns, states "remain independent and autonomous within their proper sphere of authority." *Printz*, 521 U.S. at 928. States are thus constitutionally protected from having their officers "dragooned . . . into administering federal law" or pressed into service as "puppets of a ventriloquist Congress." *Id*. (cleaned up). The anticommandeering rule protects state sovereignty regardless of the putative public safety justifications for a particular policy. *Compare Printz*, 521

8

U.S. at 925-35 (invalidating Brady Act provisions requiring state and local law enforcement to perform criminal background checks on prospective handgun purchasers), *with* Compl. ¶ 6 (citing the need "for federal officials to carry out federal immigration law and keep Americans safe").

The "specter of the anticommandeering rule" has led courts to uniformly read federal immigration law to give "states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *McHenry County II*, 44 F.4th at 592 (quoting *California*, 921 F.3d at 888-89); *accord El Cenizo*, 890 F.3d at 177-78. Anticommandeering is why the Ninth Circuit rejected the prior Trump Administration's identical challenge to California's equivalent of the TRUST Act. *California*, 921 F.3d at 888. There, as here, the federal government argued that California's statute was an obstacle to federal law because it "force[d] federal authorities to expend greater resources to enforce immigration laws." *Id.* at 889. But the Ninth Circuit rejected this argument, explaining that "the choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal." *Id.* at 890. Likewise, when Illinois counties asserted preemption challenges to amendments to the TRUST Act in *McHenry County II*, the Seventh Circuit relied on *California* to reach "exactly the same" conclusion in rejecting those plaintiffs' obstacle preemption theory. 44 F.4th at 592.

This Court should reach the same result. The federal government has failed to identify any "valid statute enacted by Congress" reflecting a "clear and manifest purpose" to conscript Illinois into assisting with federal immigration enforcement. *Kansas*, 589 U.S. at 202; *Arizona*, 567 U.S. at 400 (quoting *Rice*, 331 U.S. at 230). Yes, the federal executive has changed. But there has been no intervening change in federal law that disturbs Illinois's sovereign choice to opt out of assisting in federal immigration enforcement.[3] And yes, Illinois's choice may "frustrate" implementation of

---

[3] The complaint briefly references the Laken Riley Act, which President Trump signed on January 29, 2025, Compl. ¶¶ 4, 35, 67, but fails to articulate how that recent federal enactment supports Plaintiff's preemption

"[f]ederal schemes," like the current federal executive's avowed commitment to conduct the largest mass deportation in American history. *California*, 921 F.3d at 890. But this frustration is not obstacle preemption when the Tenth Amendment protects Illinois's sovereign right not to cooperate in the President's schemes. *Id.* at 891; *accord McHenry County II*, 44 F.4th at 592.

### B. No federal law requires Illinois law enforcement to provide the specific types of assistance Plaintiff now demands.

None of Plaintiff's specific grievances with Illinois law justify preemption. The complaint points to various forms of assistance that federal immigration agents would like to receive from Illinois law enforcement, but that the TRUST Act prohibits. *See, e.g.*, Compl. ¶¶ 8, 11, 33-34, 43, 63, 68 (honoring non-judicial civil detainers and warrants for the detention and transfer of potentially removable individuals); ¶¶ 11, 43, 63, 69 (providing notice of custodial release dates); ¶¶ 43, 68, 69 (providing federal immigration agents with access to individuals in custody). What the complaint does not do, however, is identify any federal law requiring Illinois to provide this assistance. *See Kansas*, 589 U.S. at 202 (preemption must stem "from either the Constitution itself or a valid statute enacted by Congress"). That requires dismissal of Count I.

At most, the complaint describes ways in which the TRUST Act results in federal immigration agents exerting additional effort to detain and deport people. *See* Compl. ¶ 11 (Illinois's laws have the "purpose and effect of making it more difficult" for federal immigration officers "to carry out their responsibilities" in Illinois). But expending federal effort to enforce federal law is an inevitable consequence of the anticommandeering rule; it is not a justification for invalidating state law. *See McHenry County II*, 44 F.4th at 591-92.

---

claim. It doesn't: the statute merely requires mandatory detention by *federal immigration agents* of individuals accused of certain categories of criminal offenses who may be subject to removal from the United States. Laken Riley Act, S. 5, 119th Cong. (2025).

1. **Federal law does not compel Illinois to arrest, detain, continue to detain, or transfer custody of individuals for civil immigration enforcement.**

Plaintiff first asserts that the TRUST Act's bar on Illinois law enforcement detaining or continuing to detain a person "solely on the basis of any immigration detainer or civil immigration warrant," 5 ILCS 805/15(a), conflicts with federal law. Compl. ¶¶ 8, 11, 68. Specifically, the complaint asserts that this provision "purport[s] to direct federal officials to procure criminal arrest warrants in order to take custody of removable aliens," conflicting with a "policy choice" by Congress that removal of noncitizens "can be effectuated by *civil* arrest warrants"—a policy choice Plaintiff says is set out in 8 U.S.C. § 1226(a) and § 1231(a). Compl. ¶¶ 11, 68. Plaintiff is wrong.

Federal law sets out no such command. Preemption must rest on statutory text, not "broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law." *Kansas*, 589 U.S. at 808 (Thomas, J., concurring) (quoting *Wyeth v. Levine*, 555 U.S. 555, 587 (2009) (Thomas, J., concurring in judgment)). And nothing in the text of 8 U.S.C. § 1226(a) or § 1231(a) directs Illinois to facilitate Plaintiff's civil immigration detentions. Section 1226(a) authorizes a federal officer to issue a non-judicial warrant for "an alien" to "be arrested and detained" during pending removal proceedings, but it does not require state and local law enforcement to conduct those arrests or detentions. The same is true of § 1231(a), which, in relevant part, merely authorizes federal agents to take civil custody of "an alien [who] is ordered removed" in order to effectuate the removal. The Ninth Circuit expressly rejected a preemption claim based on these statutes in *California*, explaining that § 1226 and § 1231 "direct *federal* activities, not those of state or local governments." 921 F.3d at 887. They do not provide a "clear and manifest" statement of congressional purpose to override Illinois's "historic police powers" to decide who its officers may arrest and detain. *Id.* at 885-86 (quoting *Arizona*, 567 U.S. at 400).

11

The complaint cites federal regulations that belie any suggestion that Illinois law enforcement officers *must* detain noncitizens when presented with detainers or administrative warrants. Compl. ¶ 33 (quoting 8 C.F.R. § 287.7(a)). The type of "immigration detainer" that federal immigration agents use to seek custody of individuals detained by state and local law enforcement is explicitly described in federal regulations as a "request," not a mandate. 8 C.F.R. § 287.7(a). That is why federal courts—including in this district—have repeatedly and uniformly held that immigration detainers are *requests* that may be declined. *See Prim*, 2021 WL 214641, at *3 ("ICE detainer requests are not compulsory"); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 802 (N.D. Ill. 2014) (Dow, J.) (same); *Galarza v. Szalczyk*, 745 F.3d 634, 640-41 (3d Cir. 2014) (collecting cases from multiple courts of appeals). To hold otherwise "would offend the Tenth Amendment" by "command[ing] the government agencies of the states to imprison persons of interest to federal officials." *Villars*, 45 F. Supp. 3d at 802 (quoting *Galarza*, 745 F.3d at 643).

## 2. Federal law does not compel Illinois to affirmatively share release date information, particularly when it is routinely posted online.

Plaintiff also objects that Illinois restricts its law enforcement officers from responding to federal requests for "basic information such as release dates and custodial status" pertaining to "removable aliens," Compl. ¶¶ 11, 33, 43 (citing 5 ILCS 805/15(h)). This argument also fails.

First, as the complaint acknowledges, the Act prohibits only the disclosure of release date or contact information that is "not otherwise available to the public." 5 ILCS 805/15(h)(7); Compl. ¶ 43 (citing same). And the Illinois Department of Corrections ("IDOC") publicly posts on its website release date information for all individuals in its custody, regardless of immigration status.[4]

---

[4] This Court can take judicial notice of this fact. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of records on federal agency's website); *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (municipal website). Entering an inmate's name, birthdate, or identification number into IDOC's "Inmate Search" webpage provides, among other things, the inmate's

Regardless, even if release date information were not publicly available, Plaintiff fails to identify a federal statute that compels state law enforcement officers to spend their time providing it to federal officials. *Kansas*, 589 U.S. at 202 (requiring a "valid statute" for preemption). All Plaintiff has to offer are federal statutes that generally allow completion of federal or state criminal prison terms prior to civil immigration detention and removal. Compl. ¶ 36 (citing 8 U.S.C. §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4)). But federal courts have repeatedly refused to conclude that these statutes preempt state policies limiting the sharing of release date information.

For example, in *California*, the Ninth Circuit rejected the federal government's preemption challenge to an analogous provision in California law prohibiting the sharing of non-public release date information. 921 F.3d at 890-91. There, as here, the federal government asserted that Congress "expected cooperation between states and federal immigration authorities" in enacting provisions like § 1226 and § 1231. *Compare id.* at 891 *with* Compl. ¶ 63 (Congress "expect[ed] that States would . . . facilitate, or at the very least not obstruct, detention of criminal aliens by federal immigration authorities"). But the Ninth Circuit rejected that claim, explaining that "the federal government was free to *expect* as much as it wanted, but it could not *require* California's cooperation without running afoul of the Tenth Amendment." *California*, 921 F.3d at 891; *accord County of Ocean v. Grewal*, 475 F. Supp. 3d 355, 382 (D.N.J. 2020), *aff'd on other grounds sub. nom Ocean County Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176 (3d Cir. 2021); *United States v. New Jersey*, No. 20-cv-1364, 2021 WL 252270, at *7-8 (D. N.J. Jan. 26, 2021). The same is true here: Federal law does not compel Illinois to share non-public release date information, and the anticommandeering rule would prohibit such an imposition.

---

admission date, projected parole date, and projected discharge date. *See* IDOC, Individual in Custody Search, available at https://idoc.illinois.gov/offender/inmatesearch.html (last visited Feb. 27, 2025).

### 3. Federal law does not compel Illinois to provide access to individuals in its custody for federal civil immigration enforcement.

The complaint also attacks the TRUST Act's restriction on providing federal immigration agents with access to individuals in state or local custody. *See* Compl. ¶¶ 43, 68-70. Plaintiff claims this restriction requires federal immigration agents "to engage in difficult and dangerous efforts to re-arrest aliens who were previously in local custody, endangering immigration officers, the particular alien, and others who may be nearby." Compl. ¶ 70. But Plaintiff identifies no federal statute requiring assistance of this kind, and thus fails to state a claim for preemption.

Plaintiff's conflict-preemption claim appears to rest primarily on its view that the TRUST Act may lead to the increased use of federal resources. Compl. ¶¶ 11, 70, 80. But that is insufficient to show conflict preemption, as courts have repeatedly held. When the previous Trump Administration sued New Jersey for, among other things, declining to provide federal immigration agents with access to individuals in state custody, the district court rejected this exact argument: "[T]he fact that the federal government may, without the cooperation of local law enforcement agencies, expend extra efforts and resources to apprehend aliens who are subject to removal, does not create the kind of 'direct' obstacle necessary to trigger conflict preemption." *New Jersey*, 2021 WL 252270, at *7 (quoting *Ocean County*, 475 F. Supp. 3d at 382).

And in a related context, the Seventh Circuit also rejected the federal government's claim that declining to provide access to individuals in non-federal custody to federal immigration agents "thwart[s] federal law enforcement." *City of Chicago v. Sessions*, 888 F.3d 272, 282 (7th Cir. 2018).[5] When the prior Trump Administration attempted to withhold federal grant funds from Chicago because its ordinance excluded federal immigration agents from local lock-ups, the

---

[5] Limited *en banc* review of this decision was initially granted, but subsequently vacated, exclusively on the issue of nationwide injunctive relief. *See City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018).

Seventh Circuit, rejecting the claim, distinguished between "refusal . . . to aid in civil immigration enforcement" and "affirmative *interference*." *Id.* Like the Chicago ordinance there, the TRUST Act's access restrictions exemplify the former, not the latter. Because "[t]he choice as to how to devote law enforcement resources—including whether or not to use such resources to aid in federal immigration efforts—would traditionally be one left to state and local authorities," Illinois's access restriction is permissible. *Id.* The Tenth Amendment protects Illinois's sovereign choice and requires dismissal of Count I.

### C. The TRUST Act is not preempted by 8 U.S.C. § 1373.

Finally, Plaintiff is wrong that 8 U.S.C. § 1373 preempts any part of the TRUST Act. As noted, § 1373 purports to prohibit state and local government entities from restricting the exchange of certain immigration-related information between government entities. But the Act permits the voluntary exchange of immigration status information contemplated by § 1373, and so it neither "expressly violate[s]" federal law, Compl. ¶ 74, nor creates an obstacle to a "clear and manifest" congressional objective, *Arizona*, 567 U.S. at 400. The anticommandeering rule also forecloses any interpretation of § 1373 requiring additional information-sharing beyond what the Act permits.

### 1. The TRUST Act permits the limited information-sharing referenced in 8 U.S.C. § 1373.

Plaintiff's intimation that unspecified provisions of the TRUST Act "directly conflict" with the information-sharing protections found in § 1373, Compl. ¶¶ 65, 78, finds no support in the text of either statute. As relevant here, § 1373 forbids state and local government entities or officials from restricting the voluntary exchange of "information regarding the citizenship or immigration status, lawful or unlawful, of any individual" with federal immigration officials. 8 U.S.C. § 1373(a). But § 1373 has a limited sweep, as multiple courts have held: It affects only information about "a person's legal classification under federal law." *California*, 921 F.3d at 891; *accord*

*Ocean County*, 475 F. Supp. 3d at 376 ("immigration status" refers to "whether the individual is a U.S. citizen, green card holder, or holds some other legal or unlawful status in the United States").

Plaintiff makes no attempt—beyond vague references to "information-sharing and maintenance restrictions"—to identify specific provisions of the TRUST Act that it thinks conflict with § 1373. Compl. ¶ 74. There are none. In addition to permitting otherwise prohibited forms of cooperation with federal immigration agents when specifically "required by federal law," 5 ILCS 805/15(h), the TRUST Act expressly permits the voluntary exchange of citizenship or immigration status information that § 1373 contemplates. *See* 5 ILCS 805/5.[6] A nearly identical carve-out in California's analogue to the TRUST Act led the Ninth Circuit to conclude there was no direct conflict with § 1373. *California*, 921 F.3d at 891; *accord Ocean County*, 475 F. Supp. 3d at 379 (recognizing that New Jersey's carve-out for § 1373 "explicitly allows state, local, and county officials to share information regarding an individual's immigration status"). The same is true here.

Nor can Plaintiff manufacture a conflict with § 1373 based on the TRUST Act's prohibition on disclosing non-public release or contact information. Courts have uniformly rejected attempts to stretch the phrase "information regarding . . . immigration status" beyond its natural reading to include such additional details. *E.g.*, *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1164 (9th Cir. 2019); *United States v. California*, 314 F. Supp. 3d 1077, 1102 (E.D. Cal. 2018) (plain meaning of § 1373 only covers "information strictly pertaining to immigration status (i.e. what one's immigration status is)," not "release dates and addresses"), *aff'd in relevant part*, 921 F.3d 865; *Ocean County*, 475 F. Supp. 3d at 376; *City of Philadelphia v. Sessions*, 309 F. Supp.

---

[6] "This Act shall not be construed to prohibit or restrict any entity from sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual . . . ." 5 ILCS 805/5.

3d 289, 332-33 (E.D. Pa. 2018), *aff'd in part, vacated in part on other grounds*, 916 F.3d 276 (3d

Cir. 2019). Nothing on the face of § 1373 conflicts with the TRUST Act.

### 2. A broad interpretation of 8 U.S.C. § 1373 would result in unconstitutional commandeering.

Because § 1373 applies only to immigration status, it does not conflict with the TRUST

Act. But if there were any ambiguity, the canon of constitutional avoidance would require rejection

of a broader reading. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). An expansive view of

§ 1373—encompassing release dates, personal details, or other information—would run afoul of

the anticommandeering rule, as courts have uniformly held.[7]

The incompatibility of § 1373 with anticommandeering principles has already been

recognized in this district. As Judge Leinenweber concluded seven years ago in an analysis that

the Seventh Circuit described as "compelling," *City of Chicago v. Barr*, 961 F.3d 882, 898 (7th

Cir. 2020), § 1373 "offend[s]" the anticommandeering rule "in four ways," *City of Chicago*, 321

F. Supp. 3d at 869.

---

[7] *E.g., City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 866-73 (N.D. Ill. 2018), *aff'd on other grounds*, 961 F.3d 882, 898 (7th Cir. 2020); *Ocean County*, 475 F. Supp. 3d at 376-79, *aff'd on other grounds*, 8 F.4th 176, 182 n.4 (3d Cir. 2021); *Oregon v. Trump*, 406 F. Supp. 3d 940, 971-73 (D. Or. 2019), *vacated as moot sub nom. City & County of San Francisco v. Garland*, 42 F.4th 1078, 1087-88 (9th Cir. 2022); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 949-53 (N.D. Cal. 2018), *aff'd in part, vacated in part on other grounds*, 965 F.3d 753, 761 (9th Cir. 2020); *New York v. U.S. Dep't of Justice*, 343 F. Supp. 3d 213, 231-38 (S.D.N.Y. 2018), *rev'd as applied to federal funding requirements*, 951 F.3d 84, 114 (2d Cir. 2020); *Philadelphia*, 309 F. Supp. 3d at 325-31, *aff'd in part and vacated in part on other grounds*, 916 F.3d 276, 291 (3d Cir. 2019); *see Colorado v. U.S. Dep't of Justice*, 455 F. Supp. 3d 1034, 1057-60 (D. Colo. 2020) (doubting constitutionality of section 1373); *California*, 314 F. Supp. 3d at 1101, *aff'd in part, rev'd in part on other grounds*, 921 F.3d 865, 893 n.19 (9th Cir. 2019) (same). The reasoning of many of these opinions applies regardless of whether § 1373 is read narrowly to apply only to information regarding an individual's immigration status or broadly to encompass release dates, personal details, and the like. But the Court does not need to reach the constitutionality of § 1373 here if it agrees that the statutory provision is best read to apply only to information about a person's legal citizenship or immigration status under federal law (which the Act allows state and local law enforcement officers to share). The constitutional question comes into play only to the extent that the Court finds there is a conflict between what § 1373 requires and what the TRUST Act permits.

*First*, requiring state and local governments to allow their employees to use "paid time" to pass along information that is available to them only in their official capacities "supplants" control over those employees. *City of Chicago*, 321 F. Supp. 3d at 869. Such an imposition "weighs heavily on the constitutionality analysis" because "[a] state's ability to control its officers and employees lies at the heart of state sovereignty." *Id.*; *see Oregon*, 406 F. Supp. 3d at 973 (anticommandeering prohibits "federal intervention into a state['s] . . . control over its officials").

*Second*, § 1373 "constrains [state and] local rule-making" by preventing state and local legislatures from deciding for themselves what information-sharing to permit. *City of Chicago*, 321 F. Supp. 3d at 869; *see San Francisco*, 349 F. Supp. 3d at 951 ("The statute undermines existing state and local policies and strips local policy makers of the power to decide for themselves whether to communicate with [the federal government]."); *California*, 314 F. Supp. 3d at 1099. The anticommandeering rule forbids such "direct command[s]" to state and local lawmakers. *Murphy*, 584 U.S. at 480; *see Philadelphia*, 309 F. Supp. 3d at 330 ("Because Section 1373 directly tells states and state actors that they must refrain from enacting certain state laws, it is unconstitutional under the Tenth Amendment.").

*Third*, § 1373 "redistributes [state and] local decision-making power by stripping it from [state and] local policymakers and installing it instead in line-level employees who may decide whether or not to communicate with [the federal government]." *City of Chicago*, 321 F. Supp. 3d at 870. "This effects a federally-imposed"—and unconstitutional—"restructuring of power within state government." *Id.*; *accord City of Trenton v. New Jersey*, 262 U.S. 182, 187 (1923).

*Fourth*, § 1373 functionally precludes states and localities "from extricating [themselves] from federal immigration enforcement." *City of Chicago*, 321 F. Supp. 3d at 870. But "the option of non-participation in a federal program" is constitutionally required. *Id.*; *see Ocean County*, 475

18

F. Supp. 3d at 379 ("Under the proposed interpretation, states would have no ability to make the 'legitimate choice' to decline to participate in the enforcement of federal immigration law because they would be unable to regulate the type of information that state and local agencies share with federal immigration authorities.").

All these intrusions inflicted by § 1373 flout "the policy rationales undergirding the anticommandeering principle"—shifting perceived accountability for federal policies to states and localities, while simultaneously removing their control over non-federal resources and employees. *City of Chicago*, 321 F. Supp. 3d at 870 (citing *Murphy*, 584 U.S. at 473-74). None of this is permissible. Congress has no power to issue direct orders to states, and yet that is what § 1373 purports to do. If § 1373 makes any demand of Illinois or its subdivisions that is contrary to what the TRUST Act already permits, the federal statute is unconstitutional and must give way.

### D. The federal statutes at issue have no preemptive effect because they do not regulate the conduct of private actors.

Another, independent defect defeats Plaintiff's preemption claim: none of the federal immigration statutes relied upon regulate private actors. That means none of these statutes have preemptive effect under the Supreme Court's *Murphy* decision.

*Murphy* holds that "every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." 584 U.S. at 479. Because the Constitution "confers upon Congress the power to regulate individuals, not States," only federal statutes "that regulate[] private actors" satisfy the requirements necessary to preempt state law. *Id.* at 472, 479 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). By contrast, a federal law that purports to issue a "direct command to the States" violates the anticommandeering rule and cannot be a basis for preempting state law. *Id.* at 474, 477, 480.

19

As noted above, *Murphy* previously led to dismissal of a preemption challenge to the TRUST Act in this district in *McHenry County I*, 574 F. Supp. 3d at 578-79. Although the Seventh Circuit did not reach the *Murphy* question in affirming the dismissal, it likewise did not reject the district court's analysis, opting not to "map the precise limits of *Murphy*'s preemption holding." *McHenry County II*, 44 F.4th at 588. And other courts—including the Third Circuit—have applied *Murphy* to reject preemption challenges to state laws limiting participation in federal immigration enforcement. *See, e.g.*, *Ocean County*, 8 F.4th at 181-82 (relying on *Murphy* to reject preemption claim based on § 1373 and § 1644 since a "federal statute that does not regulate private actors cannot serve as a basis for preemption"); *Colorado*, 455 F. Supp. 3d at 1059 (similar).

*Murphy* provides an independent basis for dismissing the preemption claim here. None of the federal statutes invoked regulate private actors, so they cannot preempt state law. To the extent some of these statutes—8 U.S.C. § 1373 and § 1644—purport to prohibit states from limiting information-sharing by their officers, they are a "direct command to the States," which is just "what the anticommandeering rule does not allow." *Murphy*, 584 U.S. at 480. Count I should be dismissed for this independent reason.

## II. The TRUST Act does not violate intergovernmental immunity principles.

Nothing in the TRUST Act violates intergovernmental immunity. Compl. ¶¶ 81-88. That doctrine generally bars states from "regulat[ing] the United States directly or discriminat[ing] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (cleaned up). The Seventh Circuit rejected arguments in *McHenry County II* that § 15(g) of the TRUST Act violated these principles, *see* 44 F.4th at 592, and the same rationale requires dismissal now. The TRUST Act regulates *state* officers, not federal officers, and it does not discriminate against the United States in doing so. And, because the Tenth Amendment allows

20

Illinois to forego assisting with federal programs, Illinois's choice cannot violate immunity principles even if the federal government is uniquely impacted. Counts II and III fail.

### A. The Act does not regulate the federal government (Count III).

First, the Court should dismiss Count III because the TRUST Act does not unlawfully regulate the federal government and thus does not violate intergovernmental immunity.

Under fundamental principles of intergovernmental immunity, "States may not regulate the federal government directly." *McHenry County II*, 44 F.4th at 592. But the TRUST Act regulates state and local officials, not federal officers. It directs law enforcement agencies and officials—defined to include only "agenc[ies] of the State or of a unit of local government" charged with enforcing state law and their employees, 5 ILCS 805/10—not to enforce federal civil immigration law in certain specific respects, *id.* § 15. It neither requires federal officers to take certain action nor prohibits them from doing so. As the Seventh Circuit explained in rejecting an intergovernmental immunity challenge to § 15(g), the TRUST Act "directly regulates only State and local entities and law enforcement—not the federal government." *McHenry County II*, 44 F.4th at 593; *see also id.* (§ 15(g) "imposes no direct regulation on any federal official or agency").[8] *McHenry County II* squarely forecloses Count III.

Plaintiff apparently believes the TRUST Act violates immunity principles by directing state and local officials not to assist with civil immigration detainers and administrative warrants, Compl. ¶ 87, but that is wrong. Nothing in the TRUST Act directly regulates federal officers; the statute merely directs whether *state* officers honor requests to detain state residents—a choice both the Constitution and federal immigration laws allow Illinois to make. Here again, Plaintiff's

---

[8] Other courts have reached the same conclusion in similar cases. *See, e.g.*, *Ocean County*, 475 F. Supp. 3d at 385 (New Jersey measure "regulates only the conduct of state and local law enforcement agencies"); *California*, 314 F. Supp. 3d at 1110 (California law "regulates state law enforcement," not federal immigration authorities).

objection is that Illinois's choice makes it more difficult for federal officers to enforce federal immigration law. But the Seventh Circuit rejected an analogous version of this argument in *McHenry County II*, deeming it irrelevant that "a consequence of the Act" was that "the federal government will not be able to" depend on state and local resources to enforce immigration law. 44 F.4th at 593. "The federal government," the Seventh Circuit explained, remained formally "free" to enforce immigration law as it so chooses, *id.*, and any practical burdens imposed by the Act do not make it a direct regulation of the federal government. Count III must be dismissed.

### B. The Act does not discriminate against the federal government (Count II).

Second, the Court should dismiss Count II because the TRUST Act does not discriminate against the federal government and thus does not violate intergovernmental immunity.

Intergovernmental immunity principles prohibit a state from "discriminat[ing] against the Federal Government or those with whom it deals." *Washington*, 596 U.S. at 838. States may not "single those parties out 'for less favorable treatment'" than some other group or "regulate them 'unfavorably on some basis related to their governmental status.'" *McHenry County II*, 44 F.4th at 593 (quoting *Washington*, 596 U.S. at 839). But the TRUST Act does not do so. It does not treat the federal government worse than some other entity (such as Illinois itself); it simply establishes a statewide policy under which state officers must refrain from certain conduct. The Seventh Circuit in *McHenry County II* rejected a substantially identical challenge to § 15(g) on that basis, explaining that § 15(g) did "not discriminate against the federal government," in that it did not "single[] out" the federal government "for less favorable treatment" than some other entity. *Id.* at 593-94 (quoting *Washington*, 596 U.S. at 838). Other courts have reached the same conclusion about other state measures reflecting a decision not to assist the federal government in enforcing federal immigration law. *See, e.g.*, *New Jersey*, 2021 WL 252270, at *14 (dismissing intergovernmental immunity challenge to similar New Jersey measure because it did not "treat[]

22

any similarly situated parties better than the federal government"); *California*, 314 F. Supp. 3d at 1111 (same). The same is true here.

The complaint appears to suggest that the TRUST Act is discriminatory in that it "singles out" federal immigration law, Compl. ¶ 87, but that does not mean the Act violates intergovernmental immunity principles. Indeed, the plaintiffs in *McHenry County II* made exactly the same argument, contending that § 15(g) "discriminates against the federal government because it affects an exclusively federal domain," i.e., the enforcement of federal immigration law. 44 F.4th at 594. But the Seventh Circuit summarily rejected that argument, explaining that "[d]ifferential treatment is critical to a discrimination-based intergovernmental immunity claim," and that § 15(g) did not grant "more favorable treatment" to "any actors 'similarly situated' to the federal government." *Id.* "The mere fact that the Act touches on an exclusively federal sphere is not enough to establish discrimination." *Id.*; *accord Ocean County*, 475 F. Supp. 3d at 385 (rejecting argument that New Jersey measure discriminated by "interfer[ing] with Congress's inherent authority to regulate federal immigration law"). Count II should be dismissed.

### C. The Act does not violate intergovernmental immunity principles because it effectuates Illinois's Tenth Amendment rights (Counts II and III).

Finally, the TRUST Act does not violate intergovernmental immunity principles because it simply effectuates Illinois's decision to decline to participate in federal immigration enforcement efforts. The complaint identifies no case invalidating state law on intergovernmental immunity grounds where the law reflected only the state's voluntary decision not to participate in a federal program—a decision the Tenth Amendment entitles it to make, *see Murphy*, 584 U.S. at 471. For good reason: if a state's decision to decline to assist the federal government were "discrimination" against it, then the Tenth Amendment would have no force. A state's exercise of its Tenth Amendment prerogative would often violate the intergovernmental immunity doctrine.

The Ninth Circuit's opinion in *California*, 921 F.3d 865, rests on just this reasoning. There, the federal government argued that California's analogue to the TRUST Act violated the doctrine of intergovernmental immunity. *Id.* at 891. The Ninth Circuit summarily rejected that argument. *Id.* It explained that "[a] finding that [the law] violates the doctrine of intergovernmental immunity would imply that California *cannot* choose to . . . refus[e] to assist [federal] enforcement efforts— a result that would be inconsistent with the Tenth Amendment and the anticommandeering rule." *Id.* Other courts, including the district court in *McHenry County I*, have relied on the same reasoning to reject intergovernmental-immunity challenges to state laws effectuating a choice not to assist in federal immigration efforts. *See McHenry County I*, 574 F. Supp. 3d at 581; *New Jersey*, 2021 WL 252270, at *13 ("[I]f the Court were to accept the United States' position—that because the Directive limits the ability of state and local agencies to assist with the enforcement of federal civil immigration, it discriminates against the Federal Government—state participation in such efforts would no longer be voluntary.").

The same principles dictate the same result here. To the extent the TRUST Act can be read to treat the federal government differently than it does any other actors, it does so only to the extent of effectuating Illinois's decision not to participate in federal immigration enforcement efforts—a decision Illinois is constitutionally entitled to make. To hold that the intergovernmental immunity doctrine prevents Illinois from doing so "would be inconsistent with the Tenth Amendment and the anticommandeering rule." *California*, 921 F.3d at 891. Counts II and III must be dismissed.

### III. The Governor is not a proper defendant.

The federal government has sued both Illinois and the Governor in his official capacity. Regardless of how the Court rules on the Rule 12(b)(6) grounds for dismissal, Plaintiff's claims against the Governor must be dismissed under Rule 12(b)(1) for lack of standing. *See Murthy v.*

*Missouri*, 603 U.S. 43, 61 (2024) ("plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek") (cleaned up).

Even taking the federal government at its word that the TRUST Act frustrates immigration enforcement efforts, it cannot establish that any such "injury likely was caused or will be caused by" the Governor's actions—an essential element of Article III standing. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024). The TRUST Act authorizes the Attorney General, not the Governor, to enforce its provisions. *See* 5 ILCS 805/30. Because the federal government has not shown that the Governor could enforce the TRUST Act to its detriment, it lacks Article III standing to maintain this suit against him. *E.g., Doe v. Holcomb*, 883 F.3d 971, 979 (7th Cir. 2018). All claims against the Governor should be dismissed for lack of standing.

## CONCLUSION

The Court should dismiss all claims against the State of Illinois and Governor Pritzker with prejudice.

Date:  March 4, 2025

Respectfully submitted,

KWAME RAOUL
*Illinois Attorney General*

By:  /s/Christopher G. Wells

Christopher G. Wells
*Chief of the Public Interest Division*
Darren Kinkead
*Public Interest Counsel*
Alex Hemmer
*Deputy Solicitor General*
Alexandra Reed
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, Illinois 60601
Christopher.Wells@ilag.gov
Darren.Kinkead@ilag.gov
Alex.Hemmer@ilag.gov
Alexandra.Reed@ilag.gov