## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. 25-cv-01285 |
| v. | | Hon. Lindsay C. Jenkins |
| STATE OF ILLINOIS, *et al.,* | | |
| Defendants. | | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) & (B)(6) FILED BY COOK COUNTY

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

ARGUMENT ......................................................................................................................3

    **A. This Court Lacks Article III Jurisdiction Over the United States' Claims Against the County**..............................................................................................................3

    **B. The United States' Complaint Should be Dismissed with Prejudice for Failure to Assert a Claim on Which Relief Can Be Granted**............................................................7

        1. Sections 1373 and 1644 Do Not Preempt the County Ordinance............................7

        2. Sections 1373 and 1644 Do Not Expressly Preempt the County Ordinance...........8

        3. The County Ordinance Does Not Conflict with Federal Immigration Law ......... 13

        4. As Broadly Construed by the United States, Sections 1373 and 1644 are Unconstitutional as Applied Here ...................................................................14

        5. The County Ordinance Does Not Violate the Intergovernmental Immunity Doctrine....................................................................................................................16

        6. The Dismissal of the United States' Claims for Failure to State a Claim Should Be With Prejudice ............................................................................................................18

CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Pages</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................6

*Boomer v. AT&T*, 309 F.3d 404 (7th Cir. 2002) ............................................................8

*California v. Texas*, 593 U.S. 659 (2021) ....................................................................4

*Chicago Stadium Corp. v. Indiana*, 220 F.2d 797 (7th Cir. 1955) ...........................5 n. 1

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .....................................................4, 5

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ......................................13

*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013)............................................8

*Diamond v. Charles*, 476 U.S. 54 (1986) ....................................................................4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) ......................4

*Giddings v. Chandler*, 979 F.2d 1104 (5th Cir. 1992) ..................................................13

*Goldhamer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) ........................................ 3, *passim*

*Haaland v. Brackeen*, 599 U.S. 255 (2023) ...............................................................15

*Kareem v. Haspel*, 986 F.3d 859 (D.C. Cir. 2021) ..................................................5 n. 1

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650
    (7th Cir. 2004)........................................................................................15

*Laird v. Tatum*, 408 U.S. 1 (1972).............................................................................6

*Lewis v. Casey*, 518 U.S. 343 (1996)..........................................................................3

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................3, 5

*McHenry County v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) ....................... 14, *passim*

*Medical Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010)................................5 n.1

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..............................................................8

*Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191 (2014) ................................4, 8

*Murphy v. NCAA*, 584 U.S. 453 (2018) ..................................................................18, n.4

*Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639 (7th Cir. 2019)................................8, 13

*New York v. United States*, 505 U.S. 144 (1992)..................................................10, 12, 15

*Printz v. United States*, 521 U.S. 898, 910-11 (1997) ...................................... 11, *passim*

*Reno v. Condon*, 528 U.S. 141, 151 (2000) ............................................................15

*Sanchez v. United States*, 798 F. App'x 936 (7th Cir. 2020)............................................18

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015)......................................................3

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ...............................................5

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)....................................4

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ..............................................5

*Swift & Co. v. Wickham*, 382 U.S. 111 (1965) .......................................................7

*Time Warner Cable v. Doyle*, 66 F. 3d 867 (7th Cir. 1995) ............................................8

*United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365 (7th Cir. 2016)................5 n. 1

*United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018)....................................9

*United States v. California*, 921 F.3d 865 (9th Cir. 2019).........................................9, 14

*United States v. Female Juvenile, A.F.S.*, 377 F.3d 27 (1st Cir. 2004) ...............................13

*United States v. Texas*, 507 U.S. 529 (1993) .......................................................12

*United States v. Valdez-Hurtado*, 638 F. Supp. 3d 879 (N.D. Ill. 2022) ..............................13

*United States v. Washington*, 596 U.S. 832 (2022) ..................................................16

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)........................4

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) .......................................7

Statutes and Ordinances

21 U.S.C. § 360k(a) .................................................................................10

29 U.S.C. § 1144(a) ..................................................................................................10

49 U.S.C. § 14501(c) ................................................................................................10

49 U.S.C. § 41713(b)(1) ...........................................................................................10

8 C.F.R. 287.7(d) .....................................................................................................14

8 U.S.C. § 1373 ............................................................................................... 1, *passim*

8 U.S.C. § 1357(g)(10)(A) ...............................................................................8 n.2, 14

8 U.S.C. § 1644 ............................................................................................... 1, *passim*

Cook County Code of Ordinances § 2-441, et. Seq ....................................................6

Cook County Code of Ordinances § 46-37 ....................................................... 1, *passim*

Other Sources

Hamilton, Alexander, THE FEDERALIST NO. 15 at 108 (C. Rossiter ed. 1961) .............................15

H.R. Conf. Rep. No. 104-725, at 383 (1996) ...........................................................11

Defendant Cook County hereby moves, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the United States' claims against Cook County for lack of Article III jurisdiction. In the alternative, Cook County moves pursuant to Rule 12(b)(6) to dismiss the Complaint, with prejudice, for failure to state a claim.

## I.      <u>Introduction</u>

Cook County passed an Ordinance in 2011 providing that its limited law enforcement resources may not be expended for purposes relating solely to the enforcement of federal immigration laws unless those expenditures are fully reimbursed by the federal government. Cook County Code of Ordinances § 46-37. Admitting its refusal to reimburse those expenditures, and during a mass cull of the federal workforce, the United States now asks this Court to deputize Cook County employees into federal service at the County's expense. This drastic request for relief is not supported by circuit precedent and the United States' threadbare complaint cites few facts to string together a claim. Operating almost exclusively "upon information and belief" the United States offers very few relevant facts much less any which this Court must accept as true.

This Court should dismiss all claims against the County, for four reasons. *First*, and fundamentally, the United States lacks Article III standing to sue the County thus depriving this Court of jurisdiction. *Next*, even assuming this Court has jurisdiction, neither section 1373 nor section 1644 preempts County law. *Third,* assuming sections 1373 and 1644 force the County to use its resources to assist federal immigration efforts, that would only make them unconstitutional as applied here, by placing them in direct violation of the anti-commandeering principle inherent in the structure of our federal constitution. *Fourth*, while the United States claims the County is directly regulating, or discriminating against, the federal government, this contention is frivolous because it is directly foreclosed by binding circuit precedent that the United States has simply

ignored. Because the United States' complaint rests on its fundamental misunderstanding of the law – law of the United States Supreme Court, law of this circuit, and even the law set forth in the very statutes they supposedly seek to implement – the deficiencies in its claims cannot be cured by amendment, requiring that its complaint be dismissed with prejudice if it is not dismissed for lack of jurisdiction.

## II.    <u>Background</u>

In 2011, the County enacted in Chapter 46, Section II of the County Code an ordinance prohibiting the use of County funds and resources for the sole purpose of federal immigration enforcement. Cook County Code of Ordinances § 46-37 (hereafter, the "County Ordinance"). As the County Ordinance explains, because there is "no legal authority upon which the federal government may compel an expenditure of County resources to comply with an ICE detainer . . . there shall be no expenditure of any County resources or effort by on-duty County personnel for this purpose, except as expressly provided within this section." *Id.* § 46-37(c). The County Ordinance identifies two circumstances in which such resources or effort may be expended. First, the "Sheriff of Cook County shall decline ICE detainer requests *unless* there is a written agreement with the federal government by which all costs incurred by Cook County in complying with the ICE detainer shall be reimbursed." *Id.* § 46-37(a) (emphasis added). Second, "*[u]nless* ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws," the County Ordinance provides that "ICE agents shall not be given access to individuals or allowed to use County facilities for investigative interviews or other purposes, and County personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty." *Id.* 46-47(b) (emphasis added).

2

In its complaint, the United States claims that the County Ordinance violates the Supremacy Clause because (1) it is preempted by 8 U.S.C. § 1373 and 8 U.S.C. § 1644; (2) it supposedly "discriminates" against the federal government "by singl[ing] out federal immigration officials, expressly and implicitly, for unfavorable and uncooperative treatment when other law enforcement officials are not so treated"; and (3) it supposedly constitutes a regulation of the federal government because it "unlawfully eliminated" civil detainers and warrants as "means for federal immigrations officials to carry out their statutory functions."

### III.  Argument

### A.  This Court Lacks Article III Jurisdiction Over The United States' Claims Against The County.

While the United States' claims against the County are meritless, this Court lacks jurisdiction to even consider them because the United States lacks Article III standing to seek its desired relief against the County. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and "[u]nless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional," *Goldhamer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010). Because a court must presume that it lacks jurisdiction absent affirmative indication to the contrary, *Renne v. Geary*, 501 U.S. 312, 316 (1991), the party invoking federal jurisdiction bears the burden of demonstrating standing "in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561. At the motion to dismiss stage, this requires the plaintiff to allege well-pleaded facts showing that it is plausible, not merely possible, that it has Article III standing to seek its desired relief. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Moreover, because "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), that showing must be made "separately for each form of relief sought,"

3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185 (2000); *see, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages, not to seek injunctive relief).

Here, the United States seeks three forms of relief: (1) a declaration that the County Ordinance is invalid; (2) an award of litigation costs and fees; and (3) an injunction against future enforcement of the County Ordinance. The first two cannot supply jurisdiction here. A request for declaratory relief can never independently provide federal jurisdiction, so courts must assess Article III standing as the action would stand "'in the absence of the declaratory judgment suit.'" *California v. Texas*, 593 U.S. 659, 673 (2021) (quoting *Medtronic, Inc. v. Mirowski Family Ventures*, LLC, 571 U.S. 191, 197 (2014)). Similarly, litigation costs and fees cannot support federal jurisdiction because "an interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000); *accord Diamond v. Charles*, 476 U.S. 54, 70-71 (1986). Otherwise, "everyone would have standing to litigate about anything." *Scott v. Dart*, 108 F.4th 931, 932 (7th Cir. 2024) (Easterbrook, J., statement regarding rehearing). Under this rule, a desire for "reimbursement of the costs of litigation cannot alone support standing," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998), nor can an interest in attorney's fees, *Diamond*, 476 U.S. at 70-71.

That leaves only the request for injunctive relief, but the United States has failed to plausibly allege Article III standing to seek it. A plaintiff's mere "psychic satisfaction" that "the nation's laws are faithfully enforced" does not suffice to create Article III standing. *Steel Co.*, 523 U.S. at 107. As a result, a plaintiff seeking injunctive relief against enforcement of a local law must show (1) a threat of an actual and imminent injury in fact; (2) a causal relation between that

injury and the conduct to be enjoined; and (3) that it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury. *Goldhamer*, 621 F.3d at 585. But the United States has alleged no facts plausibly showing that it faces an actual and imminent injury resulting from the enforcement of the County Ordinance.[1] Indeed, the United States does not allege that the Sheriff has in his custody even a *single* individual about whom information might be sought, let alone that ICE has sought any information regarding that individual. At most, all that can be inferred from the United States' complaint is that it anticipates it will some day submit a detainer request to the Sheriff, but the Supreme Court has made clear that "[s]uch 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require" for Article III standing to seek injunctive relief. *Lujan*, 504 U.S. at 564; *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) (same).

That the United States believes that *past* immigration detainers were not honored, Doc. 1 at 14 ¶57, changes nothing, since it is well settled that mere exposure to past conduct does not confer Article III standing to seek injunctive relief, either, *e.g.*, *Lyons*, 461 U.S. at 102; *Simic v.*

---

[1] Notably, the United States relies largely on "information and belief," which is appropriate only for information in the defendant's control, and which cannot suffice to show Article III jurisdiction unless accompanied by the facts upon which the belief is based. *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (vacating judgment for lack of Article III standing); *see Medical Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010) ("affidavits alleging citizenship based on 'the best of my knowledge and belief' are, by themselves, insufficient to show" diversity jurisdiction). That reflects that federal jurisdiction "must be clearly shown," *Chicago Stadium Corp. v. Indiana*, 220 F.2d 797, 799 (7th Cir. 1955), while an allegation "'on information and belief' can mean as little as 'rumor has it,'" *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). A number of the United States' allegations on "information and belief" involve information in the County's control, *e.g.*, Doc. 1 at 17 ¶69 (alleging information and belief about Homeland Security's abilities), nor are they supported by facts. Those allegations should be disregarded for the purpose of assessing this Court's jurisdiction, but this Court would lack jurisdiction even were those improper allegations considered. We raise the issue only so this Court can clarify what is expected of the United States if it seeks to file an amended complaint curing these jurisdictional problems.

*City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Compounding this problem, the past conduct that the United States uses to pad its threadbare complaint has no conceivable relation to the County Ordinance. According to the United States, information regarding ICE detainers or warrants has supposedly been removed from individuals' "criminal file[s]", Doc. 1 at 14 ¶58, but nothing in the County Ordinance even *arguably* authorizes, let alone requires, the removal of such information from criminal files. Indeed, the removal of such material from criminal files would directly violate County records laws. *E.g.*, Cook County Code of Ordinances § 2-441, et. seq. Thus, rather than reflecting a faithful application of the County Ordinance, removal of those materials would be a clear misapplication of the law, perhaps because of supposed "confusion" about "permissible" activity. Doc. 1 at 15¶61. But that cannot support standing here; to the contrary, the Seventh Circuit has held that a "clear misuse of a law" does not provide Article III standing to challenge the law itself. *Goldhamer*, 621 F.3d at 588.

The United States cannot escape these problems by offering a cursory, undeveloped assertion – yet again, on unexplained "information and belief" – that County officials have been "chilled" or "confused" by the County Ordinance. Doc. 1 at 13¶51-52 Most obviously, these allegations are naked conclusions that do not satisfy even the lenient factual requirements of federal notice pleading under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). But even setting that problem aside, it is long settled that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm," but are rather an attempt to seek an advisory opinion prohibited by Article III. *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). The only exception is that the chilling effect of a vague law "can provide standing for a First Amendment challenge," *Goldhamer*, 621 F.3d at 586, but this is obviously not a First Amendment case, making that doctrine inapplicable here.

In sum, the United States lacks standing to pursue any of the relief sought from the County. Its claims against the County must therefore be dismissed, without prejudice, for lack of jurisdiction.

**B.     The United States' Complaint Should Be Dismissed, With Prejudice, For Failure To Assert A Claim On Which Relief Can Be Granted.**

Even assuming this Court has jurisdiction to consider the merits of the claims against Cook County, those claims must be dismissed because they all fail on the merits, for three reasons. *First*, those sections *do not* preempt the County Ordinance under either theory of preemption advanced by the United States. *Next*, if those sections could be read to preempt the County Ordinance, that would make them unconstitutional as applied here, under the anti-commandeering doctrine. *Finally*, the County Ordinance does not unlawfully discriminate against the federal government. We address each of these failings in turn.

**1.   Sections 1373 And 1644 Do Not Preempt The County Ordinance.**

While the United States claims that Sections 1373 and 1644 invalidate the County Ordinance under the Supremacy Clause, that claim rests on the government's fundamental misreading of its own statutes. As the Supreme Court has explained, the "basic question involved" when evaluating a claim under the Supremacy Clause is "one of comparing two statutes" to determine if federal law preempts State or local law. *Swift & Co. v. Wickham*, 382 U.S. 111, 120 (1965). That preemption can take on three forms: express preemption, conflict preemption, and field preemption. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 576 (7th Cir. 2012). The United States invokes only express and conflict preemption, Doc. 1 at 19¶¶77-80, but neither even arguably applies here.

### 2.   Sections 1373 & 1644 Do Not Expressly Preempt The County Ordinance.

As its name would imply, express preemption applies only where a federal statute explicitly provides that it preempts state law. *Boomer v. AT&T*, 309 F.3d 404, 417 (7th Cir. 2002). If the federal statute at issue contains an express preemption clause, the focus must be on its language, *Time Warner Cable v. Doyle*, 66 F. 3d 867, 875 (7th Cir. 1995), because that language "necessarily contains the best evidence of Congress' preemptive intent," *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). When evaluating a claim of express preemption, a court "must 'identify the domain expressly preempted'" by that language. *Id.*; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996); *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 647 (7th Cir. 2019). Potential preemption provisions, like all statutory provisions, must be read in their context and in light of the overall statutory scheme. *Nelson*, 928 F.3d at 647. In evaluating the language of federal law, it must be remembered that there is a presumption against preemption, which may be overcome only by a "clear and manifest" preemptive purpose that is determinative of both the *existence* and the *scope* of federal law's preemptive effect. *Medtronic*, 518 U.S. at 485.

Here, the plain language of sections 1373 and 1644 makes clear that neither exhibits the clear and manifest intent to preempt the County Ordinance.[2] That is readily apparent from the fact that sections 1373 and 1644 only concern "information regarding *the citizenship or immigration status*, lawful or unlawful," of an individual. 8 U.S.C. § 1373; 8 U.S.C. § 1644 (emphasis added). The County Ordinance says *nothing* about the provision of such information, but rather regulates

---

[2] While the United States also cites 8 U.S.C. § 1357(g)(10)(A) as imposing requirements similar to those set forth in sections 1373 and 1644, Doc. 1 at 9¶37, this contention is beyond frivolous. All that section provides is that an agreement with a State or one of its political subdivisions under section 1357(g)(1) is not necessary for an officer or employee of the State to communicate with the Attorney General regarding an individual's immigration status. The mere existence of that authorization adds nothing to the express preemption analysis, so we address it no further in this section.

only information regarding individuals' incarceration status and release dates. Such information falls squarely outside the plain language of section 1373 (and thus also the identical language of section 1644), which "is naturally understood as a reference to a person's legal classification under federal law." *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) (citing favorably *United States v. California*, 314 F. Supp. 3d 1077, 1102 (E.D. Cal. 2018) ("[T]he plain meaning of Section 1373 limits its reach to information strictly pertaining to immigration status (i.e. what one's immigration status is) and does not include information like release dates and addresses.")).

While that plain language, standing alone, forecloses any claim of express preemption, such a claim fails for the additional reason that sections 1373 and 1644 do not prohibit units of government from determining *for themselves* whether to use their own resources to voluntarily provide assistance or information to the federal government. Rather, they only prohibit one unit of government, or one official in that government, from prohibiting *another* unit of government or official of that other unit of government from making such a decision. Put more simply, the statutory scheme does not require that local governments cooperate with the federal government, only that all local and state governments be given the *free choice* whether to cooperate unrestricted by the laws or actions of other units of government and their officials. This is reflected in the language of sections 1373 and 1644, the legislative history of those statutes, and this nation's long history of voluntary cooperation forming the basis of state and local participation in immigration enforcement. This interpretation also finds support in the canon of constitutional avoidance, because it avoids the serious constitutional questions that would arise were these sections read to eschew voluntary cooperation in favor of forced deputization of state and local officials.

Here, while it is clear that sections 1373 and 1644 were intended to have some preemptive effect, they do not clearly express an intent to prohibit local governments from determining for

themselves whether to provide information to federal immigration officials. Had that been Congress' intent, it was well aware how to preempt State and local laws on particular subject matters with crystal clarity. *E.g.*, 29 U.S.C. § 1144(a); 49 U.S.C. § 41713(b)(1); 21 U.S.C. § 360k(a); 49 U.S.C. § 14501(c). Rather than do so, it used entirely different language – that "a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official," 8 U.S.C. § 1373; and that "no State or local government entity may be prohibited, or in any way restricted," 8 U.S.C. § 1644, from sending certain immigration information to the federal government – admitting of two plausible interpretations. The first, extremely broad interpretation adopted by the United States is that these sections meant to say that a unit of state or local government cannot "prohibit" or "restrict" even *itself* from providing certain information to federal immigration officials – in other words, that they used awkward, unwieldy language to express the simple concept that local governments must provide such information when requested.[3] The second, narrower interpretation is that state and local governments may not "prohibit" or "restrict" *other* units of government from providing that information – in other words, Illinois may not prohibit Chicago or Cook County from providing that information, nor may Chicago or Cook County prohibit the Chicago Transit Authority from providing that information, but each may determine for itself whether to do so without interference from the others.

Given that the presumption against federal preemption serves to limit the scope of federal law's preemptive effect, the fact that the language of sections 1373 and 1644 can be construed narrowly requires adoption of a narrower interpretation of those sections. *See New York v. United*

---

[3] To put it another way, as the United States sees things, a parent would tell a child "do not prohibit any person from looking both ways before crossing the street" instead of simply saying "you must look both ways before crossing the street." Obviously, that is not how ordinary people communicate with one another, nor is it a model of the clarity of purpose needed to effect express preemption.

*States*, 505 U.S. 144, 170 (1992) (explaining that law's "amenability to an equally plausible alternative construction prevents [a court] from possessing such certainty" necessary to conclude that law seeks to override the balance between the federal government and the States). That interpretation is only confirmed by the legislative history of section 1373 and historic immigration practices. Starting with the former, the legislative history of section 1373 makes clear that it "does not require, in and of itself, any government agency or law enforcement official to communicate with" federal immigration authorities. H.R. Conf. Rep. No. 104-725, at 383 (1996). Rather, it was expressly intended only to confer on local governments "the *authority* to communicate" with federal immigration authorities, free of *external* restrictions such as a "constitutional provision" or a "decision of any Federal or State court that prohibits or in any way restricts any communication." *Id.* (emphasis added).

That legislative history is wholly consistent with, and expresses no intent to contravene, this nation's long history of relying on *voluntary* cooperation with federal authority on matters of detention of individuals and immigration. Indeed, the United States repeatedly invokes that tradition of cooperation in its complaint, apparently blind to the irony of doing so in support of a request for injunctive relief. Doc. 1 at 7-9, 33-34, 38 As the Supreme Court has explained, the Framers' early ratification debates rested on the significant "assumption that the States would consent to allowing their officials to assist the Federal Government," not that the federal government could force such assistance on the States. *Printz v. United States*, 521 U.S. 898, 910-11 (1997). And regarding detention in particular, the First Congress specifically declined to require States to provide "assistance of the most rudimentary and necessary sort for the enforcement of the new Government's laws," by holding federal prisoners in State jails, but rather only recommended that they do so voluntarily. *Id.* at 909-10. When Georgia declined, as was its right,

11

the United States responded not by trying to force its hand, as the United States tries to do here, but by providing for federal marshals to rent temporary jail facilities. *Id.* And in the immigration context, the United States has traditionally declined to force the States to participate in the enforcement of federal immigration law, as the United States now demands, but rather only authorized the entry of voluntary contracts with the States to allow such participation. *Id.* at 916.

That long history weighs strongly in favor of a narrow construction of sections 1373 and 1644 to facilitate, rather than reject, voluntary cooperation consistent with this nation's longstanding tradition. It is well settled that Congress will be presumed not to have casually jettisoned longstanding common-law practices, absent a clear indication it intends to do so. *E.g.*, *United States v. Texas*, 507 U.S. 529, 534 (1993). That presumption applies with particular force when, as here, the broader interpretation of federal law would present serious commandeering concerns. *New York*, 505 U.S. at 170. That presumption dovetails here with the same presumption underlying the canon of constitutional avoidance, which also requires plain indicia of Congressional intent, *id.*, because those traditions reflect not mere common-law practice subject to legislative override, but undergird the Constitution's anti-commandeering principle itself, as explained by *Printz*, 521 U.S. at 918. Rather than read federal law to reject not only longstanding tradition of federal-state cooperation, but also the very structure of the Constitution itself, that law should be read narrowly, and consistently with that tradition and structure.

In sum, text, legislative history, tradition, and the structure of the Constitution itself all weigh in favor of a narrow construction of sections 1373 and 1644 to only prohibit governments from interfering with other government's ability to voluntarily cooperate with immigration enforcement. That defeats any claim that those sections expressly preempt the County Ordinance.

### 3. The County Ordinance Does Not Conflict With Federal Immigration Law.

Effectively admitting that it cannot show express preemption here, the United States also argues that the County Ordinance is preempted on the ground that it conflicts with federal immigration law. State law can conflict with federal law when it is impossible to comply with both state and federal law, or when the state law presents an "obstacle" to accomplishing the full perspectives and objectives of Congress. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Nelson.*, 928 F.3d 639 at 646.

Here, the United States claims that the County Ordinance creates "obstacles" to the enforcement of its immigration laws, Doc. 1 at 19¶¶78-79, but that contention is frivolous, for the simple reason that the very same federal laws on which the United States relies make clear that the United States itself does not consider refusal to honor detainer requests an impermissible obstacle to its immigration policies. As the United States admits in its complaint, an immigration detainer is merely a "request" that local law enforcement advise ICE before releasing an individual. Doc. 1 at 7-8¶33; *accord United States v. Female Juvenile, A.F.S.*, 377 F.3d 27, 35 (1st Cir. 2004) ("an INS detainer is not, standing alone, an order of custody. Rather, it serves as a request that another law enforcement agency notify the INS before releasing an alien from detention so that the INS may arrange to assume custody over the alien"); *Giddings v. Chandler*, 979 F.2d 1104, 1105 n.3 (5th Cir. 1992) ("Filing a detainer is an informal procedure in which the INS informs prison officials that a person is subject to deportation and requests that officials give the INS notice of the person's death, impending release, or transfer to another institution."); *United States v. Valdez-Hurtado*, 638 F. Supp. 3d 879, 890 (N.D. Ill. 2022) ("Numerous federal courts have agreed with this Court's conclusion that the language of detainer requests, and of the governing DHS regulation, shows that detainer requests are requests and not legal commands.") (collecting

13

authority). The United States further admits that federal law allows ICE to "request, but not require, that custody be extended" in relation to a detainer request. Doc. 1 at 8¶34 (citing 8 C.F.R. 287.7(d)).

That is fatal to any claim of conflict preemption here. Inherent in the very nature of the United States' decision to make detainers serve as *informal requests* rather than *formal, binding orders* is a determination that voluntary noncompliance is not an impermissible obstacle to federal immigration enforcement. Otherwise, federal law would *require* compliance, not merely "request" it. And when, as here, the federal law is permissive, "the choice of a state to refrain from participation cannot be invalid" even if it may frustrate federal immigration enforcement. *McHenry County v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) (quoting *California*, 921 F.3d at 888). This is true even if Congress "may have hoped or expected" it would receive cooperation. *McHenry County*, 44 F.4th at 592. That binding precedent defeats any possible claim of obstacle preemption here.

The same is true with regard to 8 U.S.C. § 1357, also invoked in the United States' complaint. Doc. 1 at 9¶37-38. As noted above, that section merely provides that no intergovernmental agreement is required to authorize an individual to provide immigration information to the Attorney General. 8 U.S.C. § 1357(g)(10)(B). It should go without saying that a statute not requiring action, but merely authorizing it, is permissive rather than mandatory. And, again, permissive federal laws cannot serve as the basis for conflict preemption. *McHenry County*, 44 F.4th at 592.

### 4. As Broadly Construed By The United States, Sections 1373 And 1644 Are Unconstitutional As Applied Here.

Even assuming the United States' broad interpretation of sections 1373 and 1644 is somehow correct, that only dooms its complaint because that interpretation is unconstitutional as

14

applied. The Constitution contains an anti-commandeering doctrine and as the Supreme Court has made clear, "the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions." *New York*, 505 U.S. at 162. This reflects that the Constitution was designed to undo the "'great and radical vice'" of the dysfunctional Articles of Confederation it replaced, by substituting federal regulation of the States with federal regulation of individuals. *Id.* at 163 (quoting Alexander Hamilton, THE FEDERALIST NO. 15 at 108 (C. Rossiter ed. 1961)). It further reflects, as is particularly relevant here, that the federal government may not "take credit for 'solving' problems without having to ask their constituents to pay for the solutions with higher federal taxes," nor may it shift to the States "the blame for [a federal initiative's] burdensomeness and for its defects." *Printz*, 521 U.S. at 930. Under this principle, the federal government may not "direct state law enforcement officers to participate," even "temporarily, in the administration of a federally enacted regulatory scheme." *Id.* at 904. Nor may it "require state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno v. Condon*, 528 U.S. 141, 151 (2000); *accord Haaland v. Brackeen*, 599 U.S. 255, 283 (2023). By contrast, when the state may simply "ignore" a request from the federal government, the anti-commandeering principle is not implicated. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. United States*, 367 F.3d 650, 662 (7th Cir. 2004).

Here, the theory underlying the United States' entire case against Cook County is that the County *must* assist, via its officers and employees, in the enforcement of the federal immigration laws despite the United States' refusal to compensate the County for the resources expended in doing so. In short, the United States believes that section 1373 and 1644 strip from the County its fundamental home rule authority under the Illinois Constitution, Article VII, Section 6, to control

its local affairs. Such a broad interpretation of sections 1373 and 1644 strikes at the very core of the anti-commandeering doctrine, by requiring state and local governments to use local resources and taxpayer funds to assist in the enforcement of federal law regarding the detention of aliens, while the federal government takes the credit for "solving" the problem of illegal immigration. Indeed, the Supreme Court noted in *Printz* that both immigration *and* detention of individuals who violate federal law have traditionally been considered matters on which the federal government asked only for voluntary cooperation, indicating strongly that such matters are at the very heart of the anti-commandeering doctrine. *Printz*, 521 U.S. at 909-910, 916. As a result, as applied to the County on the facts alleged here, sections 1373 and 1644 are unconstitutional, requiring dismissal of the United States' claims.

### 5. The County Ordinance Does Not Violate The Intergovernmental Immunity Doctrine.

The United States also alleges that the County Ordinance is invalid on the alternative grounds that it either regulates, or discriminates against, the federal government. While these alternative grounds are brought pursuant to the intergovernmental immunity doctrine, which prohibits state laws that either regulate the United States directly or discriminate against the Federal Government, *United States v. Washington*, 596 U.S. 832, 838 (2022), any contention that the County Ordinance runs afoul of that doctrine is frivolous, having been foreclosed by binding Seventh Circuit precedent the United States simply ignores.

Starting with the claim that the County Ordinance somehow "regulates" the federal government, this claim fails for essentially the same reason as the United States' claim of conflict preemption. As the Seventh Circuit has explained, while "States may not regulate the federal government *directly*," a regulation prohibiting State or local government cooperation with the federal government "regulates only State and local entities and law enforcement—not the federal

government." *McHenry County*, 44 F.4th at 592-593. That is particularly true when, as here, the regulation only prohibits cooperation that "local entities were free to withhold" even before that regulation was enacted. *Id.* at 593. Moreover, even assuming solely for sake of argument that a regulation of a local government's internal affairs – which is all the County Ordinance is – could *ever* be considered a regulation of the federal government, that regulatory effect could be considered "direct" only by stripping that word of all meaning.

The United States' claim that the County Ordinance somehow "regulates" the United States by supposedly making it impossible to obtain information needed to enforce federal immigration law also fails for lack of supporting facts. While the United States plausibly alleges that it cannot obtain its desired release information via a very particular procedural mechanism – a detainer request – it does not allege that the desired release dates cannot be obtained by any other non-burdensome means, such as by courtroom monitoring and/or an inmate status website. While the Sheriff does not always have advance notice of the release dates of individuals in custody, those release dates become a matter of public record for a host of obvious reasons. The United States' failure to allege that it is unable to access those public records by some means *other* than a detainer request requiring additional expenditure of County time and resources is extremely conspicuous. Indeed, it only further illustrates that its allegations are simply not plausible as a matter of the basic "common sense" judges should consult when considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The United States' last-gasp claim that the County Ordinance violates intergovernmental immunity by discriminating against the federal government fares just as poorly. As the Seventh Circuit has explained, mere "refusal to cooperate in the immigration context—a possibility contemplated by the relevant federal statutes—does not constitute discrimination against the

federal government." *McHenry County*, 44 F.4th at 594 n.7. But that is *literally* the United States' theory here: that "Cook County [Places] Restrictions on State and Local Cooperation with Federal Officials." Doc. 1 at 13 (heading; bolding omitted).

### 6. The Dismissal Of The United States' Claims For Failure To State A Claim Should Be With Prejudice.

Finally, this Court should make its dismissal of the United States' claims with prejudice and terminate this litigation against the County. Although this is the United States' first complaint, and although a first amendment is normally allowed as a matter of right, leave to amend even as a matter of right may be denied if that amendment would be futile. *Sanchez v. United States*, 798 F. App'x 936, 937 (7th Cir. 2020). Such is the case here, because the many, many failings of the United States' claims cannot possibly be overcome by alleging new or different facts in an amended complaint.[4] Nor can any amount of additional factual allegations change the fact that binding Seventh Circuit precedent forecloses the United States' direct regulation and discrimination theories, which were apparently brought without even bothering to read controlling circuit precedent.

### Conclusion

WHEREFORE, Defendant Cook County respectfully requests that this Court dismiss the United States' claims against the County for lack of Article III jurisdiction. In the alternative, the County requests that this Court dismiss those claims for failure to state a claim, with prejudice.

---

[4] For example, no amount of factual allegations can change the fact that sections 1373 and 1644 cannot have preemptive effect because they purport to regulate only States, not individuals. In order to preempt any statute, the "provision at issue must be best read as one that regulates private actors." *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). But the Court need not address that matter at this time.

Respectfully submitted,

Dated March 4, 2025            EILEEN O'NEILL BURKE
State's Attorney of Cook County


By *s/ Jessica M. Scheller*

| |
|---|

Silvia Mercado Masters      Jessica M. Scheller
Edward M. Brener             Deputy Chief; Civil Actions Bureau
Jessica L. Wasserman       Prathima Yeddanapudi
Assistant State's Attorneys    Chief; Advice, Business & Complex
Civil Actions Bureau         Litigation Division
500 W. Richard J. Daley Center   Jonathon Byrer
Chicago, IL 60602           Supervisor, Appeals & Special Projects
(312) 603-6934              Megan Honingford
(312) 603-5463              Assistant State's Attorneys
                                Jessica.Scheller@cookcountysao.org
                                Prathima.Yeddanapudi@cookcountysao.org