**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 25-cv-01285 |
| v. | Hon. Lindsay C. Jenkins |
| STATE OF ILLINOIS, *et al.,* | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12 (b)(6) FILED BY COOK COUNTY
SHERIFF THOMAS J. DART**

Defendant, Thomas J. Dart, in his official capacity as Cook County Sheriff, moves pursuant to Fed. Rule Civ. P. 12(b)(1) and 12(b)(6) to dismiss the United States' claims against him for lack of Article III jurisdiction and for failure to state a claim.[1]

Defendants may raise lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). Under Article III of the Constitution, the judicial power of federal courts is confined to deciding actual "Cases" or "Controversies." U.S. Const. art. III, §2. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992), and "[u]nless a case or controversy is presented, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional." *Goldhamer v. Nagode*, 621 F.3d 581, 584 (7th Cir. 2010). Because a court must presume that it lacks jurisdiction absent affirmative indication to the contrary, *Renne v. Geary*, 501 U.S. 312, 316 (1991), the party invoking federal jurisdiction bears the burden of demonstrating standing "in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S.

---

[1] The Sheriff joins in full the separate motion to dismiss filed by Cook County, and brings this motion only to supplement the arguments raised in that motion.

at 561. At the motion to dismiss stage, this requires the plaintiff to allege well-pleaded facts showing that it is plausible, not merely possible, that it has Article III standing to seek its desired relief. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). Moreover, because "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), that showing must be made "separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (1999); *see, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff had standing to seek damages, not to seek injunctive relief).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, courts accept as true all well-pleaded facts in Plaintiff's complaint and draws all reasonable inferences from those facts in favor of the United States. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## I. <u>Argument</u>

### A. Plaintiff Has Failed To Establish Article III Jurisdiction.

Here, the United States seeks three forms of relief against the Sheriff (and others): (1) a declaration that the County Ordinance is invalid; (2) an award of litigation costs and fees; and (3) an injunction against future enforcement of the County Ordinance. For the reasons separately

2

stated in the County's motion to dismiss, the United States lacks standing to seek any of this relief. But regarding the United States' request for injunctive relief against this Defendant, we note an additional obstacle to Article III standing.

As the Seventh Circuit has explained, a plaintiff seeking injunctive relief must show (1) a threat of an actual and imminent injury in fact; (2) a causal relation between that injury and the conduct to be enjoined; and (3) that it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury. *Goldhamer*, 621 F.3d at 585. The failure of any of these elements is fatal to standing, and the third element is particularly problematic for the United States here because the complaint does not plausibly allege that the desired injunctive relief is directed only to enforcement of the County Ordinance. The United States does not seek an injunction as to any particular activity it would like for the Sheriff to take or eschew – and thus it has not established that an injunction *against the Sheriff* would redress any supposed injury.

That deficiency is not rectified by the United States' complaint that the County Ordinance allegedly interferes with a detainer request, Doc. 1 at 13¶54, because merely enjoining the enforcement of that ordinance would not affirmatively require the Sheriff to accept any detainer requests or to exchange information with the federal government regarding the immigration status of any individual. Indeed, it would not require him – in fact, it will not even encourage him – to do *anything*. That is because, under the terms of federal immigration law, the Sheriff has broad, unfettered discretion to determine for himself whether he or his employees will "cooperate" with federal authorities and provide the information they request. *E.g.*, 8 U.S.C. § 1357(g)(10)(B). Tellingly, the United States alleges nothing to suggest that the Sheriff has taken any position – positive or negative -- regarding a policy decision whether his office will be providing information

3

to, or cooperating with, the federal government. Indeed, the United States does not allege that the Sheriff has in his custody a single individual for whom information has been, or will imminently be, sought. As a result, all the United States can possibly say here is that its desired injunction makes it *possible* for the Sheriff to provide the information the United States desires.

That is far from enough to invoke the judicial power of the federal courts. An injury is redressable only if the court's action makes it significantly more likely that the plaintiff will obtain relief that directly redresses the injury suffered, *Utah v. Evans*, 536 U.S. 452, 464 (2002), but if it is "just as plausible" as not that the court's action will redress the plaintiff's injury, Article III's redressability requirement is not met. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 43-46 (1976). In other words, "guesswork as to how independent decisionmakers will exercise their judgment" does not suffice to show Article III standing, which requires that an individual "will likely react in predictable ways" to the relief requested. *Murthy v. Missouri*, 603 U.S. 43, 57-58 (2024). The United States does not even attempt to allege that the Sheriff will react to its desired injunction in a predictable way, let alone a way that will favor the United States' interests instead of merely maintaining the status quo. Nor could it.

The United States' conspicuous failure to offer any allegations on something so basic as Article III jurisdiction is as troubling as it is dispositive, because these are not obscure jurisdictional defects, but rather defects that the Supreme Court precedent has *repeatedly* deemed fatal in circumstances materially identical to those presented here. For example, in *Simon*, the plaintiffs challenged a federal law rescinding the requirement that hospitals offer free healthcare to low-income populations to receive favorable tax treatment. 426 U.S. at 28-32. As plaintiffs saw things, restoring that requirement "would 'discourage' hospitals from denying their services to" the indigent plaintiffs. *Id.* at 42. But as the Court explained, it was wholly "speculative whether

4

the desired exercise of the court's remedial powers in this suit would result in the availability to respondents of such services," because the allegations in the complaint left it "just as plausible that the hospitals to which respondents may apply for service would elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services." *Id.* at 43. Noting that "unadorned speculation will not suffice to invoke the federal judicial power," *id.* at 44, the Court vacated the judgment of the lower court and remanded with instructions to dismiss for lack of jurisdiction. *Id.* at 46.

Similarly, in *Linda R. S. v. Richard D.*, 410 U.S. 614 (1973), the plaintiff sought an injunction against enforcement of a state law requiring child maintenance payments only to so-called "legitimate children," but not to "illegitimate children," *id.* at 615. But as the Supreme Court observed, all that one could say with any certainty was that granting that relief would cause "the jailing of the child's father," while "the prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative." *Id.* at 618. As a result, the Court concluded, standing was lacking, and the district court was correct to dismiss the plaintiff's claim for lack of Article III jurisdiction. *Id.* at 619.

This case is materially identical to *Simon* and *Linda R.S.*, because one can only speculate on the allegations in the United States' threadbare, rumor-laden complaint that merely enjoining enforcement of the County Ordinance would make it any more likely that the United States will receive the information it desires. Because the complaint fails to plausibly show that the United States' desired relief will likely redress its supposed injuries, it also fails to plausibly show that the United States has Article III standing to pursue its claims against the Sheriff. That requires dismissal of its claims for want of jurisdiction.

**B. The United States's Allegations Fall Short Of Establishing A Claim Against The Sheriff.**

The purported facts alleged against Sheriff Dart are even thinner than those levied against other nominal Defendants. While the Sheriff is mentioned once in the body of the complaint, Doc. 1 at 13¶54; the allegations directed against him suggest no cause of action. The United States does not allege that the Sheriff passes ordinances, sets County policy, or otherwise engages in redressable activity. The Sheriff follows the statutes, ordinances and other regulations imposed upon him by legislative bodies such as the United States, State of Illinois, and Cook County. The United States does nothing to allege otherwise. The bare assertions in the pleading do not even approach a facially plausible claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678-679.

**C. Plaintiff has not alleged any facts showing wrongdoing by the Sheriff.**

The United States alleges the County Ordinance violates the Supremacy Clause, but there are no allegations of any wrongdoing or misconduct by the Sheriff. If anything, the United States's facts are limited to allegations that the Sheriff follows the County Ordinance. The United States concedes the County Ordinance allows for some cooperation between the Sheriff and the Federal Government but alleges the Sheriff is "confused" as to its parameters without further facts. Doc. 1 at 15¶ 61. But unfounded allegations of confusion and the County Ordinance having a chilling effect on Sheriff officials is not a basis for a claim against the Sheriff. Moreover, the alleged release of a detainee who committed a subsequent crime, while being devoid of detail and context, also has no apparent connection to information sharing or lack thereof. Doc. 1 at 5¶12. The United States's alleged facts are minimal and entirely speculative, there are no actual allegations that the Sheriff has obstructed federal law enforcement efforts.

Since the County Ordinance has never been found to be unconstitutional, the Sheriff is not alleged to have engaged in any wrongdoing or violation of federal law. Only if the Court were to invalidate the County Ordinance or other regulation and the Sheriff continues to abide by it would

there potentially be a cause of action between the United States and the Sheriff. For a complaint to survive dismissal, the United States's allegations must nudge its claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Here, they fall far short.

**D. The Sheriff Has Not Violated The Federal Statutes Cited By Following the County Ordinance.**

State law can conflict with federal law when it is impossible to comply with both state and federal law, or when the state law presents an "obstacle" to accomplishing the full perspectives and objectives of Congress. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) citing *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941); *Nelson v. Great Lakes Educ. Loan Servs.*, 928 F.3d 639, 646 (7th Cir. 2019). A court should not find conflict preemption "unless [preemption] was the clear and manifest purpose of Congress." *Ill. Bankers Ass'n v. Raoul*, 2025 U.S. Dist. LEXIS 21537, *8-9 (N.D. Ill. February 6, 2025) *citing Arizona v. United States*, 567 U.S. 387, 400 (2012), *Nelson*, 928 F.3d at 646-47. Plaintiff has identified no conflict between the County Ordinance and the federal statutes it cites. Sections 1373 and 1644 regulate the sharing of immigration status, not the sharing of incarceration status. By contrast, the County Ordinance prohibits Sheriff employees from sharing only incarceration status and release dates. Employees are thus able to comply with both the County Ordinance and federal law. There is no federal law stating the Sheriff or local law enforcement must comply with detainer requests, so the Sheriff can comply with the County Ordinance lawfully. Since the Sheriff does not pass laws or set policies, the mere compliance with the County Ordinance raises no redressable injuries.

**Conclusion**

WHEREFORE, Defendant Thomas J. Dart, in his official capacity as Cook County Sheriff, respectfully requests this Court dismiss the United States' claims against him for lack of jurisdiction and failure to state a claim.

7

Respectfully submitted,

Dated March 4, 2025

EILEEN O'NEILL BURKE,
Cook County State's Attorney

By *s/ Jessica M. Scheller*

Silvia Mercado Masters
Edward M. Brener
Jessica L. Wasserman
Assistant State's Attorneys
Civil Actions Bureau
500 W. Richard J. Daley Center
Chicago, IL 60602
(312) 603-6934
(312) 603-5463

Jessica M. Scheller
Deputy Chief; Civil Actions Bureau
Prathima Yeddanapudi
Chief; Advice, Business & Complex
Litigation Division
Jonathon Byrer
Supervisor, Appeals & Special Projects
Megan Honingford
Assistant State's Attorneys
Jessica.Scheller@cookcountysao.org
Prathima.Yeddanapudi@cookcountysao.org