IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF ILLINOIS; JB PRITZKER, Governor of Illinois, in his Official Capacity; THE CITY OF CHICAGO; BRANDON JOHNSON, Mayor of Chicago, in his Official Capacity; LARRY SNELLING, Chicago Police Superintendent, in his Official Capacity; COOK COUNTY, ILLINOIS; COOK COUNTY BOARD OF COMMISSIONERS; TONI PRECKWINKLE, President of the Cook County Board of Commissioners, in her Official Capacity; THOMAS J. DART, Cook County Sheriff, in his Official Capacity,<br><br>    Defendants. | Case No. 1:25-cv-1285<br><br>Judge Lindsay C. Jenkins |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1(a)(2), Plaintiff submits the following statement of material facts as to which no genuine issue exists, in support of its Motion for Summary Judgment:

    **I. Federal Immigration Law**

1. The Federal Government has exclusive authority to establish and enforce immigration laws in the United States. *See* U.S. Const., art. I § 8, cl. 4. Congress has exercised this authority through the Immigration and Nationality Act (INA) and other

1

related laws, which confer authority on the Executive Branch to enforce the federal immigration laws. *See* 8 U.S.C. § 1101 *et seq.*

2. On January 20, 2025, President Trump issued an Executive Order declaring that a "national emergency exists at the southern border of the United States" from the unprecedented "illegal entry of aliens" into the country. Proclamation No. 10,886, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025).

3. Responsibility for enforcing immigration laws lies primarily with the U.S. Department of Homeland Security (DHS), and two of its components: Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP). *See* Ex. A Declaration of Samuel J. Olson ¶ 3 (Olson Decl.).

4. DHS's effective enforcement of immigration laws plays a key role in keeping the public safe. *See id.* ¶ 5.

5. Within ICE, the Enforcement and Removal Operations (ERO) component is responsible for identifying, arresting, and removing aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of federal immigration laws and border control efforts. *Id.* ¶ 5.

6. Federal agents are statutorily required to detain certain aliens, including those who commit certain predicate crimes. *See* 8 U.S.C. § 1226(c). Congress has recently expanded the list of predicate crimes that trigger the mandatory detention requirement to include "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or

2

any crime that results in death or serious bodily injury to another person[.]" Laken Riley Act, S. 5, 119th Cong. (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)(ii)).

7. Congress has expressly authorized federal agents to effectuate detentions by using administrative warrants. *See* 8 U.S.C. § 1226(a).

8. To acquire such an administrative warrant, an ICE immigration officer "must establish probable cause to believe that the subject is an alien who is removable from the United States." U.S. Immigr. & Customs Enf't, Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers*, § 2.4 (Mar. 24, 2017) (ICE Policy); Olson Decl. ¶ 9.

9. If an alien DHS seeks is in the custody of another law enforcement agency, DHS may issue an "immigration detainer" to advise that agency that DHS seeks custody "for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a); *see also* 8 U.S.C. §§ 1226(a), (c), 1357, 1103(a)(3), 1231(a); Olson Decl. ¶ 9.

10. An immigration detainer typically includes a description of the information needed from the relevant non-federal facility, including the alien's release date and other booking information, to effectuate a transfer of the alien into federal custody. *See* Olson Decl. ¶ 9.

11. As a matter of policy, immigration detainers are accompanied by an administrative warrant – either an alien arrest warrant or a warrant of removal signed by an ICE immigration officer. *See* 8 U.S.C. § 1226(a); U.S. Immigr. & Customs Enf't, Policy No. 10074.2, *Issuance of Immigration Detainers by ICE Immigration Officers*, § 2.4 (Mar. 24, 2017); Olson Decl. ¶ 9.

12. Arrest or detention of an alien may also be obtained through issuance of a judicial criminal warrant by an Article III judge. *See* Olson Decl. ¶ 19.

## II. Defendants' Sanctuary Policies

### A. Illinois

13. In 2017, Illinois passed the Illinois TRUST Act, 5 Ill. Comp. Stat. 805/1 *et seq*. (2017), prohibiting state law enforcement officials from "enforcing federal civil immigration laws," *id.* § 805/15.

14. The TRUST Act provides that no state, local, county, or municipal officer may detain or continue to detain an individual "solely on the basis of an[] immigration detainer or civil immigration warrant" or otherwise comply with such a detainer or warrant. *Id.* § 805/15(a). Nor may such officers "inquire about or investigate the citizenship or immigration status" of any individual in their custody. *Id.* § 805/15(e).

15. The TRUST Act further provides that, "[u]nless presented with a federal criminal warrant," state law enforcement officials may not participate in or assist in any capacity with a federal immigration agent's enforcement operations. *Id.* § 805/15(h). Under this subsection, officers may not offer collateral assistance, including coordinating an arrest with a federal immigration agent in a public facility; giving a federal immigration agent access, including by telephone, to an individual in custody; providing information in response to a federal immigration agent's inquiry regarding an individual in custody; or providing information to a federal immigration agent related to an individual's release or contact information that is not otherwise publicly available. *Id.*

16. The TRUST Act states that it does not "prohibit or restrict any entity from sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code."

4

*Id.* § 805/5.

17. In 2021, the Illinois Way Forward Act amended the TRUST Act to add the following provisions:

> (1) No law enforcement agency, law enforcement official, or any unit of state or local government may enter into or renew any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for federal civil immigration violations.
>
> (2) Any law enforcement agency, law enforcement official, or unit of state or local government with an existing contract, intergovernmental agreement, or other agreement, whether in whole or in part, that is utilized to house or detain individuals for civil immigration violations shall exercise the termination provision in the agreement as applied to housing or detaining individuals for civil immigration violations no later than January 1, 2022.

5 Ill. Comp. Stat. 805/15(g).

### B. Chicago

18. In 2012, the Chicago City Council passed the "Welcoming City Ordinance." Chicago Code ch. 2-173 (Chicago Ordinance).

19. The Chicago Ordinance provides that no city agency or agent shall "arrest, detain, or continue to detain a person based upon an immigration detainer" or "an administrative warrant." *Id.* § 2-173-020(a). Nor shall City agents "permit ICE agents access, including by telephone, to a person being detained by, or in the custody of, the agency or agent" or "use of agency facilities for investigative interviews or other investigative purpose." *Id.* § 2-173-020(a)(2).

20. The Chicago Ordinance also prohibits City agents from "expend[ing] their time responding to ICE inquiries or communicating with ICE regarding a person's custody status, release date, or contact information." *Id.* § 2-173-020(a)(3). And City agents shall

not "transfer any person into ICE custody for the sole purpose of civil immigration enforcement." *Id.* § 2-173-020(a)(5).

21. Finally, Section 2-173-030 of the Chicago Ordinance provides that: "Unless required to do so by statute, federal regulation, court order, or a lawfully issued judicial warrant, no [City] agent or agency shall request, maintain, or share the citizenship or immigration status of any person unless such disclosure has been authorized in writing by the individual to whom such information pertains, or if such individual is a minor or is otherwise not legally competent, by such individual's parent or guardian." *Id.* § 2-17-030(a)(1).

### C. Cook County

22. In 2011, the Cook County, Illinois, Board of Supervisors adopted Ordinance C, titled "Policy for Responding to ICE Detainers." Cook County, Illinois Ordinance 11-O-73 (2011).

23. The County Ordinance requires the Cook County Sheriff to "decline [all] ICE detainer requests unless there is a written agreement with the federal government by which all costs incurred by Cook County in complying with the detainer shall be reimbursed" and further provides that "there shall be no expenditure of any County resources or effort by on-duty County personnel for th[e] purpose" of complying with ICE detainers. Ordinance 11-O-73, § 46-37(a), (c).

24. Under the County Ordinance, "[u]nless ICE agents have a criminal warrant, or County officials have a legitimate law enforcement purpose that is not related to the enforcement of immigration laws, ICE agents shall not be given access to individuals or allowed to use county facilities for investigative interviews or other purposes, and County

6

personnel shall not expend their time responding to ICE inquiries or communicating with ICE regarding individuals' incarceration status or release dates while on duty." Ordinance 11-O-73, § 46-37(b).

### III. Defendants' Sanctuary Policies Cause Significant Harm to Federal Immigration Enforcement and Public Safety.

25. In order to effectively enforce immigration laws, ICE coordinates closely with law enforcement partners in state, county, and local jurisdictions to transfer criminal aliens into federal custody. *See* Olson Decl. ¶¶ 8–12.

26. Such transfers depend on the relevant state, county, or local jurisdiction's honoring ICE detainers and administrative warrants. *See* Olson Decl. ¶ 9.

27. "Honoring" an ICE detainer typically means allowing ICE officers access to the secure area(s) of their jail facility, including controlled entryways and booking areas, where ICE officers can safely assume custody of the alien and transport the alien to an ICE office. *See id.* ¶ 11.

28. "Honoring" an ICE detainer also entails providing certain information to ICE, including the alien's legal status, location of incarceration, and the date on which the alien will be released from the state or local facility. *See id.* ¶ 12.

29. Failing to honor a detainer obstructs ICE from assuming custody of an alien in a safe and controlled manner. *See id.* ¶ 10. When a detainer is not honored or an alien is released from a non-federal facility without notification or transfer to ICE, ICE must conduct investigations and perform targeted enforcement actions to re-apprehend the alien. *Id.* ¶ 10. And while ICE is undertaking re-apprehension efforts, the alien remains at-large in the community and free to commit further crimes or otherwise threaten public safety. *Id.*

7

30. Pursuant to the Sanctuary Policies, Illinois state and local officers do not honor ICE detainers, including by allowing ICE access to aliens in their facilities – even in otherwise public areas of those facilities – for the purpose of safely transferring aliens into federal custody. *Id.* ¶ 11.

31. Nor do Illinois and its localities provide ICE the information needed to effectuate such a transfer upon the alien's release from state or local custody. *See id.* ¶ 12, 14–18.

32. ICE nonetheless continues to place detainers seeking information from Illinois state, city, and county (including Cook County) facilities but consistently receives no response. *See id.* ¶ 12.

33. When an Illinois state or local jurisdiction does not honor ICE's request for information, ICE cannot readily obtain the required information from other sources, including state and local websites, because the information contained therein is limited and unreliable. *See* Olson Decl. ¶¶ 14–18.

34. The information posted to the Illinois Department of Corrections' website is limited to an inmate's name, place of incarceration, and his or her "projected discharge date," which is based on when that inmate's prison term expires. Olson Decl. ¶ 14.

35. The City of Chicago Police's website provides release dates, but those dates are unreliable and are sometimes posted after the inmate is already released. *Id.*

36. Cook County's website does not provide readily accessible or reliable discharge information; it merely "tracks detainees' progress through various stages of the [discharge] process and provides a general idea of when discharge will be completed." Olson Decl. ¶ 14 (quoting Cook Cnty. Sheriff, *Detainee Discharge Tracker,* https://iic.ccsheriff.org/DetaineeDischarge (last visited Apr. 14, 2025)).

37. When ICE attempts to stage an arrest outside of an Illinois state or local facility—including in a public parking lot—facility staff, usually at the direction of the warden, often commands ICE officers to leave the premises. *See id.* ¶ 18.

38. Prison officials have even delayed the release of an alien when they were aware of ICE's presence outside the state or local facility. *See id.*

39. Although the Sanctuary Policies purport to allow state and local cooperation based on ICE's acquisition of a judicial warrant, Illinois jurisdictions do not share information with ICE agents that is necessary for ICE to obtain such a warrant. *See id.* ¶ 19.

40. Nor do these jurisdictions allow ICE to acquire such information by interviewing aliens in their custody, thereby denying ICE the information it needs to obtain a judicial warrant. *Id.*

41. When ICE is unable to detain criminal aliens through transfers from state or local facilities into ICE custody, aliens are released into the public, where they pose a significant threat to public safety. *See id.* ¶ 22–27.

42. In August 2024, federal officials issued a detainer request for an alien being held in Cook County jail on domestic violence charges. Olson Decl. ¶ 24. The detainer was not honored, and the alien was subsequently arrested on October 10, 2024 for aggravated criminal sexual assault and abuse of a minor. *Id*.

43. On September 28, 2024, federal officials issued a detainer request for an alien being held in Cook County jail for criminal trespass and who was later transferred to Will County jail for a warrant for that same criminal trespass and also for obstruction of the police. Olson Decl. ¶ 25. Pursuant to the Illinois Way Forward Act and Cook County's restrictions, the detainer was not honored by law enforcement officers in either jurisdiction.

Following the alien's release from local custody on October 5, 2024, he was again arrested, this time for aggravated assault of a police officer, gun charges, resisting an officer, obstruction of justice, and criminal trespass. *Id*.

44. On September 1, 2024, federal officials issued a detainer request for an alien held at the McHenry County jail on aiding, abetting, and possession/selling of a stolen vehicle. Olson Decl. ¶ 26. The detainer was not honored due to the Illinois Way Forward Act. *Id*. Following his release from state custody on October 10, 2024, the Elgin Police Department arrested him for aggravated criminal sexual abuse with a minor (two counts), traveling to meet a minor, and contributing to the delinquency of a minor (two counts). *Id*.

45. In January 2025, federal officials issued a detainer request for an alien who was being held in Cook County jail on sexual assault of a minor charges. Olson Decl. ¶ 27. Pursuant to Cook County's restrictions, law enforcement officers did not respond to the detainer request. *Id.* Following the alien's release from local jail, he was arrested and charged with homicide just 17 days later. *Id*.

46. The Sanctuary Policies do not impose restrictions on other forms of information sharing, other law enforcement agencies, or the public. *See id.* ¶ 28–31.

47. Illinois and its localities grant other federal agencies, including the FBI, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Administration (DEA), and United States Marshals Service, information and access to inmates for investigative purposes without requiring that they procure judicial warrants first. *See id.* ¶ 28–31.

48. The Sanctuary Policies attempt to control interactions between federal entities. *See id.* ¶ 29.

10

49. Illinois restricted ICE's Homeland Security Investigations (HSI) office's access to a state database (LEADS 3.0) once it learned that HSI was assisting ERO with civil immigration enforcement. *Id.* Illinois conditioned the restoration of this access on HSI's changing its law enforcement Originating Agency Identifier (ORI) from "ICE" to disassociate itself with immigration enforcement. *Id.* Only after HSI made this change did Illinois reinstate HSI's access. *Id.*

50. When ERO inquired about gaining access to some of this information through the Department of Navy's LinX system, ERO learned that the Chicago Police Department included a stipulation within its agreement with the Department of Navy that Police Department data are prohibited from being used for immigration enforcement. *Id.*

51. The Sanctuary Policies collectively obstruct the enforcement of federal immigration law in Illinois. *See, e.g.*, Olson Decl. ¶¶ 10–13, 32–33.

52. Illinois state and local law enforcement officers have expressed to ICE officials a desire to cooperate with ICE but for the Sanctuary Policies that prevent them from doing so and the fear of facing punishment for violating those Policies. *See id.* ¶¶ 20, 21.

Dated: April 14, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

JACQUELINE COLEMAN SNEAD
Assistant Director

/s/ *Elisabeth J. Neylan*
ELISABETH J. NEYLAN (N.Y. Bar Reg. No. 6125736)
CRISTEN C. HANDLEY (Mo. Bar No. 69114)
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-3519
Fax: (202) 616-8460
E-mail: Elisabeth.J.Neylan@usdoj.gov

*Attorneys for the United States*