**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            *Plaintiff*,<br><br>v.<br><br>STATE OF ILLINOIS, *et al.*,<br><br>            *Defendants.* | Case No. 1:25-cv-1285<br>Judge Lindsay C. Jenkins |

**BRIEF OF *AMICUS CURAIE* IMMIGRATION REFORM LAW INSTITUTE**
**IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT**

## INTEREST OF *AMICUS CURIAE*

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

No counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has funded its preparation or submission.

## SUMMARY OF THE ARGUMENT

The TRUST Act impedes and interferes with federal immigration law enforcement in Illinois, and was designed to do just that. By thus creating an obstacle to congressional purposes, the TRUST Act violates the Supremacy Clause of the U.S. Constitution. The TRUST Act prohibits state and local officers from sharing the release dates of aliens, and their personal information, with U.S. Immigration and Customs Enforcement ("ICE"), and forbids such officers to transfer custody of aliens to ICE. In these prohibitions, Illinois compels many state and local officers who would cooperate with federal enforcement not to cooperate with that enforcement.

This choking-off of cooperation that would otherwise take place is an obstacle both to the federal-state cooperation that Congress sought to facilitate and to immigration law enforcement itself. Indeed, by making Illinois a "sanctuary state," where illegal aliens and criminal aliens who arrive there can expect less effective federal immigration law enforcement than in other states,

1

the TRUST Act functions as a magnet for illegal immigration, thus frustrating Congress's declared purpose of achieving operational control of the border.

The TRUST Act is also conflict preempted in another way: because it commands state and local officials to commit the federal crime of harboring, it makes it impossible for them to obey both state and federal law. The TRUST Act's introduction of this logical conflict between state and federal law is a textbook violation of the Supremacy Clause.

## ARGUMENT

### I.    THE TRUST ACT IS OBSTACLE PREEMPTED.

The Illinois TRUST Act was passed in 2017 to prohibit Illinois state and local law enforcement from cooperating in the enforcement of federal immigration law. *Illinois Trust Act*, 5 ILCS 805. The 2021 Way Forward Act further restricted such cooperation. Press Release, *Governor Pritzker Signs Legislation to Strengthen the Illinois TRUST Act* (Mar. 12, 2021), https://www.illinois.gov/news/press-release.23653.html. As amended, the TRUST Act prohibits state, county, and local law enforcement from "inquir[ing] about or investigat[ing] the citizenship or immigration status or place of birth of any individual in the agency or official's custody or who has otherwise been stopped or detained by the agency or official." 5 ILCS 805/15(e). State officials may not provide federal immigration agents the release date or contact information of any alien held in state or local custody, or respond to any requests for such information from federal agents unless the agent presents a federal criminal warrant. 5 ILCS 805/5(h)(6)-(7).

The TRUST Act also forbids providing federal immigration officers access to non-public facilities or electronic databases for civil immigration enforcement purposes, 5 ILCS 805/15(h)(5), and the transferring of individuals to federal immigration custody absent a

federal criminal warrant. 5 ILCS 805/15(h)(3). Thus, under the Act, in many cases, if a federal immigration officer asks when an alien in local custody will be released, or for that alien's home or work address, local officials who otherwise would be perfectly willing to provide that information may not provide it. And in many cases, if a federal immigration officer seeks to assume custody of an alien from local officials, local officials who otherwise would be perfectly willing to transfer custody may not do so.

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under this clause, Congress has the power to preempt state and local laws. *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)).

Preemption may be either express or implied, and implied preemption includes both field preemption and conflict preemption. *Lozano v. City of Hazleton*, 724 F.3d 297, 302 (3d Cir. 2013) (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). Conflict preemption can occur in one of two ways: where "compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lozano*, 724 F.3d at 303 (citing *Arizona*, 567 U.S. at 399) (internal quotation marks and citations omitted). "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912), *quoted in Hines v. Davidowitz*, 312 U.S. 52, 67 n.20 (1941). The judgment of courts about what constitutes an unconstitutional impediment to federal law is

"informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373.

Underlying the doctrine of obstacle preemption is the necessity of cooperation between state and federal sovereignties for our federal system to function properly. As the Second Circuit has explained:

> A system of dual sovereignties cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems for the mutual benefit of each system. The operation of dual sovereigns thus involves mutual dependencies as well as differing political and policy goals. Without the Constitution, each sovereign could, to a degree, hold the other hostage by selectively withholding voluntary cooperation as to a particular program(s). The potential for deadlock thus inheres in dual sovereignties, but the Constitution has resolved that problem in the Supremacy Clause, which bars states from taking actions that frustrate federal laws and regulatory schemes.

*City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (internal citations omitted) (holding 8 U.S.C. § 1373 constitutional).

By design, the TRUST Act frustrates the Immigration and Nationality Act ("INA") in two of its central purposes—not only the obvious purpose that immigration law be enforced, but the federal-state cooperation Congress intended to foster in that enforcement. As the Supreme Court has recognized, "consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. For example, in passing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA"), which includes 8 U.S.C. § 1373, Congress sought unimpeded communication among federal, state, and local governments in sharing immigration status information, as well as unobstructed cooperation in ascertaining the whereabouts of illegal aliens. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009(1996). The Senate Judiciary Committee Report accompanying IIRAIRA makes this general purpose clear:

4

> Effective immigration law enforcement requires a cooperative effort between all levels of government. The acquisition, maintenance, and exchange of immigration-related information by State and Local agencies is consistent with, and potentially of considerable assistance to, the Federal regulation of immigration and the achieving of the purposes and objectives of the Immigration and Nationality Act.

S. Rep. No. 104-249, at 19-20 (1996) (emphasis added), *quoted in City of New York*, 179 F.3d at 32-33. Thus, in drafting § 1373, Congress sought to foster a cooperative effort among local, state, and federal law enforcement in the enforcement of immigration law.

A review of additional federal immigration provisions further underscores this intent. Shortly before enacting IIRAIRA, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 2105 (1996) (PRWORA). Entitled "Communication between State and local government agencies and Immigration and Naturalization Service," Section 434 of this law, now 8 U.S.C. § 1644, is nearly identical to § 1373. *Id.* This provision of PRWORA forbids any prohibitions or restrictions on the ability of state or local governments to send to or receive from the federal government information about the immigration status, lawful or unlawful, of an alien in the United States. Going further than the Senate Judiciary Committee Report accompanying IIRAIRA, in the Conference Report accompanying PRWORA, Congress made clear its intent in passing Section 434: to bar *any* restriction on local police in their communications with ICE, including about the *whereabouts* of illegal aliens, which obviously includes the time of their release from detention.

> The conference agreement provides that no State or local government entity shall prohibit, or in any way restrict, any entity or official from sending to or receiving from the INS information regarding the immigration status of an alien or the presence, whereabouts, or activities of illegal aliens. It does not require, in and of itself, any government agency or law enforcement official to communicate with the INS.
>
> The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any

5

> Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS. The conferees believe that immigration law enforcement is as high a priority as other aspects of Federal law enforcement, and that illegal aliens do not have the right to remain in the United States undetected and unapprehended.

H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep.), *quoted in City of New York*, 179 F.3d at 32.

Another federal statute also has the purpose of fostering cooperation in immigration enforcement. In 8 U.S.C. § 1357(g), Congress made clear that no agreement is needed for state and local officers or employees "to communicate with [federal immigration authorities] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States." § 1357(g)(10)(A). Likewise, Congress has refused to require any formal agreement for state and local officers or employees to "cooperate with [federal immigration authorities] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." § 1357(g)(10)(B).

The TRUST Act frustrates, and is intended to frustrate, federal enforcement of immigration law. By design, the TRUST Act keeps ICE in the dark about aliens' release dates and home and work addresses, sharply increasing the difficulty ICE has in accomplishing the congressional purposes of locating removable aliens and taking them into custody. Furthermore, because the TRUST Act, by its terms, mandates noncooperation with federal enforcement of immigration laws, it thwarts the congressional purpose of fostering such cooperation.

In addition, the law undermines Congress's objective of obtaining "operational control" of the border, defined as "the prevention of all unlawful entries into the United States," not just by terrorists but by all illegal aliens. Secure Fence Act of 2006 § 2(b), Pub. L. No. 109-367, 120 Stat. 2638, 2638–39. By making Illinois a "sanctuary state," where illegal aliens who reach it can expect state protection from federal immigration law enforcement, the TRUST Act functions as a

magnet to illegal immigration itself, thus frustrating Congress's goal of operational control of the border.

By thus standing as an obstacle to all of these central purposes of the INA, the TRUST Act plainly violates the Supremacy Clause.

## II.    THE TRUST ACT MAKES OBEYING BOTH FEDERAL AND STATE LAW AN IMPOSSIBILITY.

An additional, equally plain basis for the government's broad claim of conflict preemption, Compl. ¶¶ 11, 13, 77–80, is the argument that the TRUST Act is conflict-impossibility preempted because it commands officials to commit the federal crime of harboring.

What are generally referred to as the "anti-harboring" provisions of the INA—located at Title II, Chapter 8, § 274 and codified at 8 U.S.C. § 1324—read in pertinent part:

**Bringing in and Harboring Certain Aliens**

**(a) Criminal penalties.—**

(1) (A) Any person who—
(iii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; . . .

(v) (I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—
(ii) in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, United States Code, imprisoned not more than 5 years, or both . . . .

The INA defines "person" when used in Title II as "an individual or an organization." 8 U.S.C. § 1101(b)(3). "The term 'organization' means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of

persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects." 8 U.S.C. § 1101(a)(28). Thus, § 1324 applies to municipal corporations and unincorporated areas alike, which, under the INA's sweeping definition, are organizations, and thus persons.

By preventing state and local law enforcement from providing the information or cooperation that ICE requests in the course of enforcing federal immigration laws, the TRUST Act compels local law enforcement to "conceal[], harbor[], or shield[] from detection" aliens in "any place, including any building" (or to attempt to do so) in violation of 8 U.S.C. § 1324(a)(1)(a)(iii). For example, when ICE requests the release date of an alien from a local jail, and local authorities refuse to give that information to it, as mandated by the TRUST Act, the local authorities are thereafter "shielding" the alien's presence, and therefore the alien, "from detection" either in the jail (a "building") or outside the jail (a "place"), depending on the alien's location at any given moment. Also, if ICE requests the home address of a released alien, and local officials refuse to give it that information, as mandated by the TRUST Act, they are "conceal[ing]" the alien "in a[] building" at any time the alien is at that address. Or, if ICE agents arrive at a local jail to assume custody of an alien, and local authorities, as mandated by the TRUST Act, both refuse them entry and do not transfer custody outside of the jail, the local officials are "harbor[ing]" the alien "in . . . a[] building" while the alien remains in the jail, "harbor[ing]" the alien "in . . . a[] place" if they bring the alien outside the jail and there refuse to transfer custody, or concealing the alien "in a[] place" if they deliberately slip the alien out of the jail in a way that evades the agents' notice. Even if local law enforcement claims that receiving a Form I-247A from ICE does not give it the requisite knowledge of an alien's unlawful presence, the form includes a probable cause determination by the U.S. Department of Homeland Security

that the alien is removable, thus at the very least making law enforcement's noncompliance in "reckless disregard" of the alien's unlawful presence.

Accordingly, the TRUST Act compels local law enforcement to violate the federal anti-harboring statute. In doing so, it makes obedience to both federal and state law an impossibility, and is therefore conflict preempted. *E.g., Lozano*, 724 F.3d at 303 (citing *Arizona*, 567 U.S. at 399).

## **CONCLUSION**

For the foregoing reasons, the government's motion for summary judgement should be granted.

Dated: April 23, 2025

Respectfully submitted,

s/ Christopher J. Hajec
Christopher J. Hajec*
Gabriel R. Canaan
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Avenue, NW
Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
gcanaan@irli.org
Attorney for *Amicus Curiae*
*Pro hac vice admission pending

**CERTIFICATE OF SERVICE**

The foregoing amicus brief will be delivered electronically on April 24, 2025, to counsel for Plaintiff and Defendants through the District's Electronic Case Filing System.

s/ Christopher J. Hajec