**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

STATE OF ILLINOIS, et al.,

     Defendants.

Case No. 25-cv-1285
Judge Lindsay C. Jenkins

**REPLY IN SUPPORT OF**
**THE STATE OF ILLINOIS AND GOVERNOR PRITZKER'S**
**MOTION TO DISMISS**

KWAME RAOUL
Illinois Attorney General

Christopher G. Wells
*Chief of the Public Interest Division*
Darren Kinkead
*Public Interest Counsel*
Alex Hemmer
*Deputy Solicitor General*
Alexandra Reed
*Assistant Attorney General*
Office of the Illinois Attorney General

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES............................................................................................................ ii

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.   The obstacle preemption challenge to the TRUST Act fails.................................................. 1

    A.   No federal statute compels state and local police to facilitate or effectuate civil
immigration detentions. .................................................................................................. 2

    B.   The Tenth Amendment preserves Illinois's ability to opt out of federal immigration
enforcement, and Plaintiff's attempts to disregard it fail. .............................................. 5

        1. Federal supremacy over immigration policy does not authorize conscription of state
officers as immigration agents. ................................................................................ 6

        2. Neither *Murphy* nor the Extradition Clause justify invalidating Illinois's sovereign
choice to opt out of civil immigration enforcement. ................................................ 7

II.   No part of the TRUST Act is expressly preempted by 8 U.S.C. § 1373...........................11

III. Illinois's decision not to participate in civil immigration enforcement does not regulate or
discriminate against the federal government. ...................................................................... 16

IV. The Governor is not a proper defendant. ........................................................................... 20

CONCLUSION.............................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Arizona v. United States*, 567 U.S. 387 (2012) .................................................................. 5, 6, 9

*Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015) ............................................................. 8

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) ................................................................. 14

*California v. Superior Court*, 482 U.S. 400 (1987) ................................................................. 10

*City & County of San Francisco v. EPA*, 145 S. Ct. 704 (2025) ................................................... 12

*City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018) ....................................... 14, 15

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018)................................................................. 7

*City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) ................................................................. 7

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ............................................................11

*County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020) ..................................... 5, 13, 15

*CSX Transp. v. Easterwood*, 507 U.S. 658 (1993) ............................................................11

*Doe v. Holcomb*, 883 F.3d 971 (7th Cir. 2018) ................................................................. 20

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)................................................................. 20

*GEO Grp. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) ................................................................. 17

*Jennings v. Rodriguez*, 583 U.S. 281 (2018)................................................................. 14

*Kansas v. Garcia*, 589 U.S. 191 (2020) ................................................................. passim

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ................................................... 12

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) ................................................................. 17

*McHenry County v. Raoul*, 44 F.4th 581 (7th Cir. 2022) ................................................... passim

*Murphy v. NCAA*, 584 U.S. 453 (2018) ................................................................. passim

*Murthy v. Missouri*, 603 U.S. 43 (2024) ................................................................. 20

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)................................................................. 12

*New York v. United States*, 505 U.S. 144 (1992)............................................................... 8

*North Dakota v. United States*, 495 U.S. 432 (1990)...................................................... 18

*Oregon v. Trump*, 406 F. Supp. 3d 940 (D. Or. 2019)................................................... 15

*Printz v. United States*, 521 U.S. 898 (1997) .................................................. 2, 6, 15, 19

*Russello v. United States*, 464 U.S. 16 (1983) ............................................................. 13

*Steinle v. City & County of San Francisco*, 919 F.3d 1154 (9th Cir. 2019) .................... 14

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ..................................... passim

*United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012)................................................ 5

*United States v. King County*, 122 F.4th 740 (9th Cir. 2024).......................... 17, 19, 20

*United States v. New Jersey*, No. 20-cv-1364, 2021 WL 252270 (D. N.J. Jan. 26, 2021)............. 4

*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (2019) ................................................ 3

*Zbaraz v. Madigan*, 572 F.3d 370 (7th Cir. 2009)........................................................ 5

**STATUTES**

15 ILCS 205/4................................................................................................................ 20

20 ILCS 5/5-15 ............................................................................................................... 20

5 ILCS 805/10 .................................................................................................................. 9

5 ILCS 805/15 ......................................................................................................... passim

5 ILCS 805/30 ................................................................................................................ 20

5 ILCS 805/5 ..................................................................................................... 7, 11, 15

8 U.S.C. § 1226............................................................................................................... 3

8 U.S.C. § 1227............................................................................................................... 9

8 U.S.C. § 1231 ..................................................................................................... 3, 4, 9, 13

8 U.S.C. § 1306............................................................................................................. 13

8 U.S.C. § 1324............................................................................................................... 5

8 U.S.C. § 1357............................................................................................................... 7

iii

8 U.S.C. § 1360 ............................................................................................................ 12

8 U.S.C. § 1373 ..................................................................................................... passim

**OTHER AUTHORITIES**

H.R. Rep. No. 104-725 (1996) ..................................................................................... 14

**REGULATIONS**

8 C.F.R. § 287.7 ...................................................................................................... 3, 17

**CONSTITUTIONAL PROVISIONS**

Ill. Const. 1970, art. V ................................................................................................ 20

U.S. Const. amend. X ............................................................................................ passim

U.S. Const. art. I, § 8, cl. 4 ........................................................................................... 5

U.S. Const. art. IV, § 2 ............................................................................................... 10

U.S. Const. art. VI, cl. 2 ............................................................................................... 8

## INTRODUCTION

By seeking nullification of the TRUST Act through preemption, the federal government asks this Court to override Illinois's sovereign choice about how its own police officers should spend their time and effort. Illinois has determined its officers should focus on enforcing the state's criminal laws, rather than assisting federal officials with civil immigration enforcement. The complaint attacks Illinois's choice because using Illinois's officers, even just for "information sharing," would make it easier for federal officials to detain and deport people. But as Illinois's motion to dismiss demonstrated, no federal statute or constitutional provision compels Illinois to provide the assistance the TRUST Act withholds. Quite the opposite: the Tenth Amendment and the prohibition on federal commandeering preserve Illinois's right to make this choice. Nothing in the federal government's response solves this foundational defect with its preemption and intergovernmental immunity claims. The Court should dismiss the complaint with prejudice.

## ARGUMENT

### I. The obstacle preemption challenge to the TRUST Act fails.

Illinois's motion to dismiss showed that the TRUST Act is a valid exercise of its Tenth Amendment right to decline to use its law enforcement officers to assist with federal civil immigration enforcement. U.S. CONST. amend. X; ECF 25 at 6-10. The motion relied on precedent from multiple circuits, including this one, rejecting obstacle preemption challenges to state laws effectuating that choice. *See id.* at 9-15 (citing, *inter alia*, *McHenry County v. Raoul*, 44 F.4th 581 (7th Cir. 2022); *United States v. California*, 921 F.3d 865 (9th Cir. 2019)). As in those cases, the complaint here points to logistical concerns about Illinois's choice, but lacks the statutory or constitutional basis necessary for obstacle preemption. ECF 25 at 10-15.

The federal government ("Plaintiff") fails to address these basic defects in its response. Plaintiff makes no serious attempt to identify a valid federal statute that compels Illinois to provide

the assistance the federal administration now demands. Nor can Plaintiff point to a constitutional provision conferring this power on the federal government. While the Constitution establishes federal supremacy in *setting* immigration policy, this case is about responsibility for *enforcing* that policy. On that score, the Tenth Amendment provides a controlling answer: The Federal Government may not "command the States' officers" to enforce federal policy. *Printz v. United States*, 521 U.S. 898, 935 (1997). Practical effects resulting from this limitation on federal authority, such as greater effort by federal officials, are not grounds for obstacle preemption. Plaintiff's attempts to disregard the Tenth Amendment—through a misreading of recent anticommandeering precedent and a misapplication of the Extradition Clause—have no basis in law. The obstacle preemption claim in Count I must be dismissed.

### A. No federal statute compels state and local police to facilitate or effectuate civil immigration detentions.

Count I invokes obstacle preemption against the TRUST Act. Preemption must always come from "either the Constitution itself or a valid statute enacted by Congress," and Plaintiff has neither. *Kansas v. Garcia*, 589 U.S. 191, 202 (2020). The motion to dismiss explained this at length, ECF 25 at 10-15, but Plaintiff offers no response. At bottom, the federal government's obstacle preemption theory boils down to two things: (i) frustration that Illinois's refusal to facilitate arrests by federal immigration agents results in their expending additional effort; and (ii) a belief that Congress expected greater cooperation from states like Illinois when it enacted and amended the Immigration and Nationality Act ("INA"). *See* ECF 50 at 21-26. Neither is a basis for preemption.

Plaintiff faults Illinois for declining to honor "congressionally authorized detainers and administrative warrants – even after [an] alien's state or local custody has ended." ECF 50 at 21. As a result, federal agents must "independently track down and rearrest aliens at large when (and if) they learn that the alien has been released from state custody." *Id.* Plaintiff likewise complains

2

that the TRUST Act "cut[s] ICE off from information" necessary for federal immigration agents to either procure a criminal warrant (which, unlike a civil administrative warrant, Illinois law enforcement would honor), or to "independently stage arrests when aliens emerge from [state] custody." *Id.* at 22.

These policy concerns are not a basis for preemption. Preemption must rest on a federal statute or a constitutional provision, not some "brooding federal interest." *Kansas*, 589 U.S. at 202 (quoting *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019)). The only statutory provisions Plaintiff cites in support of its obstacle preemption theory are: (i) the authorization in 8 U.S.C. § 1226(a) for federal immigration agents to issue non-judicial administrative warrants and detainers, *see* ECF 50 at 5, 21; and (ii) the direction to federal officers to defer removal of an alien sentenced to state imprisonment "until the alien is released" in 8 U.S.C. § 1231(a)(4)(A), and a related instruction to promptly take custody following such release in 8 U.S.C. § 1226(c), *see* ECF 50 at 6, 21.[1] Neither aspect of the INA preempts the Act.

*First*, although Congress may have authorized federal immigration agents to issue administrative warrants and detainers without judicial scrutiny, Congress did not—and could not, consistent with the Tenth Amendment—require states to honor them. As the federal regulations Plaintiff cites acknowledge, immigration detainers are "requests," not mandates. *See* ECF 50 at 5 (quoting 8 C.F.R. § 287.7(a)).[2] And as the motion to dismiss previously noted, federal courts,

---

[1] As discussed *infra* Part II, the federal government separately asserts that portions of the TRUST Act are expressly preempted by 8 U.S.C. § 1373. But as also noted below, the TRUST Act has a specific carve-out for compliance with 8 U.S.C. § 1373, which, in any event, may be an unconstitutional "direct command" to the states. *See Murphy v. NCAA*, 584 U.S. 453, 480 (2018).

[2] Oddly, Plaintiff claims it "does not expect" Illinois "to arrest particular aliens or extend the custody of those who would otherwise be released." ECF 50 at 25. But federal regulations indicate otherwise: 8 C.F.R. § 287.7(d), titled "Temporary detention at Department request," instructs an agency honoring a detainer request to "maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." And although Plaintiff claims

including in this district, have uniformly held that immigration detainers are not compulsory due in significant part to anticommandeering concerns. *See* ECF 25 at 12 (collecting cases).

*Second*, the INA's allowance for the completion of state imprisonment prior to removal is also not a basis for preempting the TRUST Act. *See* 8 U.S.C. §§ 1231(a)(1)(B)(iii), (a)(4)(A). The complaint asserts that "Congress crafted a statutory scheme that clearly envisioned the Federal Government being able to detain and remove . . . aliens" convicted of state criminal violations "once their state proceedings and sentences concluded." Compl. ¶ 62. But because Congress "allows States to enforce their criminal laws against aliens before deportation," Plaintiff claims that states "cannot terminate custody in a way that frustrates the Federal Government in assuming custody for the purpose of removing the alien." ECF 50 at 24-25.

None of this rhetoric, however, is grounded in statutory text. *See Kansas*, 589 U.S. at 202 (requiring "a valid statute enacted by Congress"). It simply does not matter that Congress may have hoped or presumed that states "would conduct their law enforcement activities in concert with federal immigration efforts." *California*, 921 F.3d at 887. Without any statutory text to "codify [Congress's] belief," there is no basis for preemption. *Id.*; *accord McHenry County*, 44 F.4th at 592 (even if "Congress may have hoped or expected that States would cooperate" with federal requests to house immigration detainees, Illinois was "not bound by that hope or expectation").

Illinois is hardly alone in these conclusions: the federal government repeatedly made the same objections to invalidate analogues to the TRUST Act during President Trump's first term, to no avail. *See California*, 921 F.3d at 889-91; *United States v. New Jersey*, No. 20-cv-1364, 2021 WL 252270, at *7-8 (D. N.J. Jan. 26, 2021); *accord County of Ocean v. Grewal*, 475 F. Supp. 3d

---

that "[w]hen ICE shows up at a State or local facility to take an alien into federal custody, there is no question of whom to blame," experience tells a different story. ECF 50 at 25. As noted by *amici* in this case, state and local law enforcement agencies honoring ICE detainer requests expose themselves to legal liability for unlawful detention claims. *See* ECF 49 at 10-11.

355, 381-82 (D.N.J. 2020), *aff'd on other grounds sub. nom Ocean County Bd. of Comm'rs v. Att'y Gen.*, 8 F.4th 176 (3d Cir. 2021). Plaintiff's response simply ignores this precedent and rehashes the same gripe that laws like the TRUST Act "force[] federal authorities to expend greater resources to enforce immigration laws." *California*, 921 F.3d at 889. That is simply not enough when the Tenth Amendment gives Illinois a "right of refusal" with respect to federal immigration enforcement, as courts have uniformly held. *Id.* at 890. The exercise of that right through the TRUST Act is not—and, as a matter of law, cannot be—obstacle preemption. *Id.*[3]

### B. The Tenth Amendment preserves Illinois's ability to opt out of federal immigration enforcement, and Plaintiff's attempts to disregard it fail.

There is also no basis in "the Constitution itself" for preempting the TRUST Act. *See Kansas*, 589 U.S. at 202. Plaintiff misconstrues federal supremacy over "immigration and alien status," which is grounded in the Naturalization Clause, U.S. CONST. art. I, § 8, cl. 4, as the controlling constitutional principle in this case, but it is not. *Arizona v. United States*, 567 U.S. 387, 395 (2012). Congress's power to determine who may lawfully be in the United States does not include the power to conscript state and local police as federal immigration agents. The Tenth Amendment and the anticommandeering principle derived from it impose this limitation.

---

[3] A group of states submitted an *amicus* brief making a novel—and audacious—statutory argument that even the federal government shied away from: that a federal criminal prohibition on knowingly "harbor[ing]" an unauthorized "alien" preempts the TRUST Act. *See* ECF 55 at 13-17 (citing 8 U.S.C. § 1324(a)(1)(A)(iii)). Unsurprisingly, the *amici* states cite no precedent holding that imprisoning a person in state custody qualifies as "harbor[ing]" under that statute or any other. Typically, courts construe statutory language to avoid such absurd results. *See Zbaraz v. Madigan*, 572 F.3d 370, 386-87 (7th Cir. 2009) ("Just as we will not reach for an unconstitutional interpretation of statutory language, neither will we construe a statute in a way that leads to absurd results."). And the Seventh Circuit precedent cited by *amici* states actually reversed a harboring conviction because of the federal government's overbroad application of that term. *See United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012). The *amici* states also fail to articulate how something the INA expressly authorizes—the completion of state imprisonment prior to removal by federal authorities—could simultaneously be a federal crime.

### 1. Federal supremacy over immigration policy does not authorize conscription of state officers as immigration agents.

Harkening back to a "specific defect" in the Articles of Confederation, Plaintiff observes that since the adoption of the Constitution, citizenship and immigration status in the United States has been determined at the federal level, and that through the INA, Congress has "exercised this authority" to establish "the framework for the 'governance of immigration and alien status.'" ECF 50 at 1, 4 (quoting *Arizona*, 567 U.S. at 395). But all this is beside the point, because the TRUST Act does not purport to regulate "immigration and alien status." *Arizona*, 567 U.S. at 395. Nor does it impose "additional or auxiliary regulations" on noncitizens that exceed those imposed by Congress. *Cf. id.* at 403-06. Rather, the TRUST Act instructs Illinois law enforcement officers that civil immigration enforcement is the federal government's responsibility, not theirs.

The TRUST Act is grounded in the same right of non-participation recognized in the Supreme Court's decision in *Printz*. There, Congress had decided to require a background check for anyone seeking to purchase a handgun at a federally licensed firearm dealer. 521 U.S. at 903-04. But Congress had also gone further by mandating that state and local enforcement officers conduct those background checks. *Id.* The constitutional defect with this approach was not Congress's imposition of the background-check requirement, which was a valid regulation of interstate commerce. *Id.* at 923-24. The defect was Congress's choice to "dragoon[]" state and local officials into implementing the federal background-check policy. *Id.* at 928 (citation omitted).

Congress had no authority to "impress into its service—and at no cost to itself—the police officers of the 50 States." *Id.* at 922. Doing so necessarily usurped the authority of state and local officials over their own law enforcement resources. Time and effort spent conducting federal background checks meant less time and effort spent enforcing state and local laws. *Id.* at 927-28. The TRUST Act merely seeks to prevent the same type of federal imposition on state and local

control over limited law enforcement resources and personnel that *Printz* deemed impermissible under the Tenth Amendment and the anticommandeering principle.

Crucially, Illinois law does not stop the federal government from conducting its own immigration enforcement operations in Illinois. As the complaint notes, federal immigration agents have arrested tens of thousands of people in Illinois pursuant to their authority under the INA. *See* Compl. ¶¶ 7, 40. What Illinois law does make clear, however, is that Illinois's own officers do not have "the authority to enforce federal civil immigration laws," and so they cannot participate in civil immigration enforcement operations. 5 ILCS 805/5, 15(h)(1). Other states can and do make the choice to use their law enforcement resources to enforce federal immigration law, and the INA provides a pathway for that collaboration in 8 U.S.C. § 1357(g). *See City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) (upholding Texas statute mandating cooperation by state and local law enforcement in federal immigration enforcement). But as the Seventh Circuit has recognized, the INA gives "states and localities the *option*, not the *requirement*, of assisting federal immigration authorities." *McHenry County*, 44 F.4th at 592 (quoting *California*, 921 F.3d at 889). Illinois's elected representatives have chosen not to provide such assistance because they have concluded that doing so "imped[es] the community relationships necessary to identify and solve crimes." *City of Chicago v. Sessions*, 888 F.3d 272, 282 (7th Cir. 2018).[4] The ability to make this choice is one of the powers the Tenth Amendment reserves for Illinois.

### 2. Neither *Murphy* nor the Extradition Clause justify invalidating Illinois's sovereign choice to opt out of civil immigration enforcement.

Plaintiff relies on a misapplication of *Murphy v. NCAA*, 584 U.S. 453 (2018), and an inapt analogy to the Extradition Clause to try to disregard the Tenth Amendment's controlling effect

---

[4] Limited *en banc* review of this decision was initially granted, but subsequently vacated, exclusively on the issue of nationwide injunctive relief. *See City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018), *vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018).

here. *See* ECF 50 at 23-26. Both arguments incorrectly frame the TRUST Act's limitations on Illinois law enforcement as limitations on the federal government's own ability to enforce the INA.

*Murphy* reaffirmed the principle that the Constitution "confers upon Congress the power to regulate individuals, not States." 584 U.S. at 477 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). The anticommandeering doctrine is a recognition of this limit on congressional authority: Congress can neither "issue direct orders to state legislatures," *id.* at 475, nor may it "conscript state governments as its agents." *Id.* at 472. By contrast, a "valid preemption provision" exists when Congress "enacts a law that imposes restrictions or confers rights on private actors," and "a state law confers rights or imposes restrictions that conflict with the federal law." *Id.* at 477. In those circumstances, the Supremacy Clause, U.S. CONST. art. VI, cl. 2, provides a "rule of decision" through which "the federal law takes precedence and the state law is preempted." *Id.* (quoting *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 324 (2015)).

Plaintiff attempts to argue that the INA sections it cites are "valid preemption provisions" in that they "seek to regulate private individuals"—*i.e.*, noncitizens—and so do not "run afoul of the Tenth Amendment" in preempting conflicting state law. ECF 50 at 23-24. That argument fails on multiple levels.

First, the INA provisions that Plaintiff cites do *not* regulate private actors, as explained in the motion to dismiss. ECF 25 at 19-20. To be sure, multiple INA provisions do regulate noncitizens, including by setting forth conditions for entering and lawfully remaining in the United States. But those provisions are not cited here as a basis for preempting the TRUST Act (nor could they be, as they have nothing to do with the subject matter of the Act). Instead, the specific provisions that Plaintiff cites govern when and how federal immigration agents obtain custody of potentially removable individuals.

For example, Plaintiff repeatedly complains that Illinois does not facilitate the transfer of state inmates to federal custody after they serve their state sentences. *E.g.*, ECF 50 at 24. But the relevant INA provision does not govern private individuals; it speaks to the Attorney General, barring her from "remov[ing] an alien who is sentenced to imprisonment" by a state "until the alien is released from imprisonment." 8 U.S.C. § 1231(a)(4)(A). Likewise, in 8 U.S.C. § 1231(a)(1)(B)(iii), Congress has tied the 90-day period within which "the Attorney General shall remove [an] alien" who has been "ordered removed" to "the date the alien is released from detention or confinement."[5] The entity regulated by both these provisions is the federal government itself—"the Attorney General"—not any private actor. *Murphy*'s precondition for a "valid preemption provision"—a law that "imposes restrictions or confers rights on private actors," 584 U.S. at 477—is inapplicable. *See* ECF 25 at 19-20.

No matter how one reads the cited INA provisions, the TRUST Act *itself* does not regulate private actors; it simply governs the State's use of its own law enforcement resources. *Cf. Arizona*, 567 U.S. at 400-07 (invalidating state criminal penalties on aliens). By its terms, the Act regulates "law enforcement official[s]" and "law enforcement agenc[ies]" in Illinois. 5 ILCS 805/10, 15. Each of the operative provisions in the TRUST Act is an instruction to a "law enforcement agency" or "law enforcement official" related to specific law enforcement actions—stops, searches, investigations, arrests, detentions, custody transfers.[6] *Id.* § 15(a)-(i). Nothing in the TRUST Act

---

[5] Ironically, the effort of state and local law enforcement in prosecuting a particular individual is what supplies the federal government with a basis for removal under various provisions in the INA. *See Arizona*, 567 U.S. at 396 (noting that "[a]liens may be removed if they . . . have been convicted of certain crimes") (citing 8 U.S.C. § 1227); 8 U.S.C. § 1227(a)(2) (establishing "convict[ion]" of certain crimes as grounds for deportation).

[6] The TRUST Act acts as a limitation on state and local police's authority to conduct immigration-related arrests, rather than an expansion of that authority. As such, the Act does not suffer from the defect identified in *Arizona*, 567 U.S. at 407-10, where state law "attempt[ed] to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers." *Id.* at 408.

9

purports to create any right, impose any limitation, or alter the legal status of any private individual, and nothing in the Act otherwise imposes any regulation on private actors that is incompatible with a federal regulation of those same private actors. *See Murphy*, 584 U.S. at 477. A noncitizen who is removable from the United States will remain removable even if an Illinois police officer, in keeping with the TRUST Act, refrains from asking that individual about his immigration status during a traffic stop for a speeding violation. *See* 5 ILCS 805/15(e). Contrary to Plaintiff's view, *Murphy* confirms that the Act is *not* preempted.

Plaintiff also invokes the Extradition Clause, but that clause is no basis for preempting the TRUST Act. *See* ECF 50 at 25-26 (citing U.S. CONST. art. IV, § 2). Yes, the Extradition Clause exists so that "no State should become a safe haven for the fugitives from a sister State's criminal justice system." *Id.* at 26 (quoting *California v. Superior Court*, 482 U.S. 400, 406 (1987)). But as Plaintiff freely boasts, Illinois is not a "safe haven" from federal immigration enforcement—tens of thousands of people have been deported from Illinois during the last decade. *See* Compl. ¶¶ 7, 40. As these figures demonstrate, federal law enforcement officials have jurisdiction to conduct operations in Illinois, unlike law enforcement officials from other states who depend on the Extradition Clause's state-to-state reciprocity. And of course, the Extradition Clause facilitates transfer of custody from one state to another state so the receiving state can conduct a criminal prosecution. The TRUST Act, as has been noted, ECF 25 at 2-3, allows the transfer of individuals from Illinois law enforcement's custody to federal custody pursuant to federal criminal warrants. 5 ILCS 805/15(h); *accord id.* § 15(i). The Extradition Clause is irrelevant to the TRUST Act's validity. With no basis in "either the Constitution itself or a valid statute enacted by Congress" for preempting the TRUST Act, the obstacle preemption claim in Count I must be dismissed. *Kansas*, 589 U.S. at 202.

10

## II.   No part of the TRUST Act is expressly preempted by 8 U.S.C. § 1373.

Plaintiff also claims express preemption of the TRUST Act by 8 U.S.C. § 1373. But there is no express preemption because the TRUST Act includes a specific carve-out for compliance with § 1373—as Plaintiff acknowledges, ECF 50 at 8-9 (citing 5 ILCS 805/5). In order to contrive a conflict, Plaintiff inflates the scope of what § 1373 covers. But as multiple courts have already held, Plaintiff's interpretation far exceeds what the text supports and exacerbates the statute's unconstitutional commandeering. The express preemption claim in Count I must be dismissed.

Even if there were no carve-out foreclosing Plaintiff's express preemption claim, nothing else in the TRUST Act may fairly be read to conflict with § 1373(a). Plaintiff insists that, when Congress said state and local governments "may not prohibit" or "restrict" their employees "from sending to, or receiving from" the federal government "information regarding the citizenship or immigration status . . . of any individual," 8 U.S.C. § 1373(a), what Congress *really meant* was that states must not do anything that might be construed as "stand[ing] in the way of the Federal Government's regulation of aliens," ECF 50 at 34. But that's not what § 1373 *says*—not even close. As the Supreme Court has "stated time and again," the "cardinal canon" of statutory interpretation "presume[s] that" Congress "says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). And the principle has particular force here because, "like all preemption arguments," Plaintiff's contentions about § 1373 "must be grounded 'in the text and structure of the statute.'" *Kansas*, 589 U.S. at 208 (quoting *CSX Transp. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Unable to ground its express preemption argument in the actual text of either § 1373 or the TRUST Act, Plaintiff recycles already-rejected arguments about the purportedly unlimited capaciousness of the word "regarding." Specifically, Plaintiff renews an argument advanced during

President Trump's first term construing the phrase "information regarding . . . citizenship or immigration status" to sweep in information as wide-ranging as personal contact information and the date an individual is scheduled to be released from state or local custody. In Plaintiff's view, the word "regarding" has "a broadening effect" that reaches all "matters relating to" a person's "citizenship or immigration status." ECF 50 at 35-36 (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-18 (2018), and 8 U.S.C. § 1373(a)). This "broadening effect" is so pronounced, Plaintiff says, that § 1373(a) covers not only information about a person's legal classification under federal law, but also any information that might possibly bear on the timing of detention or removal or help to establish a person's physical location. *Id.* at 36-37.

To be sure, the word "regarding" may have a broadening effect, but not nearly as broad as Plaintiff asserts. That's because the word "regarding" must also be understood as a "word[] of limitation": one that restricts the reach of § 1373 to a person's "citizenship or immigration status." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). To read the phrase "regarding [a person's] citizenship or immigration status" as expansively as Plaintiff does—to encompass information that helps to establish the person's *physical location*, for example—"would be to read Congress's words of limitation as mere sham." *Id.* After all, when Congress wanted to ensure that the federal government could access information about where a specific noncitizen might be found, it knew how to say so explicitly. *E.g.*, 8 U.S.C. § 1360(b) ("Any information in any records kept by any department or agency of the Government as to the identity and *location* of aliens in the United States shall be made available to the [government] upon request. . . .") (emphasis added); *see City & County of San Francisco v. EPA*, 145 S. Ct. 704, 713-14 (2025) (applying presumption that Congress acts intentionally when

12

it "includes particular language in one section of a statute but omits it in another section of the same Act") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

It's no surprise, then, that multiple federal courts agree: the phrase "regarding [a person's] citizenship or immigration status" "is naturally understood" to include only "a person's legal classification under federal law." *California*, 921 F.3d at 891; *see County of Ocean*, 475 F. Supp. 3d at 376 (§ 1373 "appl[ies] only to information specifically regarding an individual's immigration or citizenship status, *i.e.*, whether the individual is a U.S. citizen, green card holder, or holds some other legal or unlawful status in the United States"). And, contrary to what Plaintiff implies, ECF 50 at 37, these courts carefully considered—and rejected—the same argument it presses here about the "broadening effect" of the word "regarding." *E.g.*, *California*, 921 F.3d at 892 ("if the term 'regarding' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for really, universally, relations stop nowhere") (cleaned up); *County of Ocean*, 475 F. Supp. 3d at 375-76 (similar).

Plaintiff cites no authority adopting its additive reading of § 1373. No matter the talismanic power of the word "regarding," there is no inherent connection between a person's current address or release date, on the one hand, and their citizenship or immigration status, on the other. Yes, the federal government may, under certain circumstances, detain and remove a noncitizen who neglects to provide notice of a new address, 8 U.S.C. § 1306(b), but an address by itself (whether new or old) reveals nothing about the noncitizen's legal classification. Nor does a release date from state custody: although this information determines *when* the federal government may effectuate a removal order against a noncitizen who has been incarcerated, *id.* § 1231(a)(4)(A), the legal classification of such a noncitizen has already been established.

As a last gasp, Plaintiff points to legislative history that purportedly shows "Congress enacted Section 1373 to ensure that state and local officials can 'communicate with [federal immigration authorities] regarding *the presence, whereabouts, or activities of illegal aliens*,' not merely their legal classification." ECF 50 at 36 (quoting H.R. Rep. No. 104-725, at 383 (1996)). Plaintiff might have a point if Congress had *enacted* that language, not just buried it in a conference report. But because a narrower reading of § 1373—encompassing only a person's legal classification—"is the only interpretation supported by the text and structure of the [statute], even those . . . who believe legislative history is a legitimate tool of statutory interpretation have no need to resort to it" here. *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 240 (2011). As the Ninth Circuit explained when it rejected the same argument Plaintiff renews here, "the plain and unambiguous" text of § 1373 "simply does not accomplish what the [legislative history] says it was designed to accomplish." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1164 n.11 (9th Cir. 2019).[7]

All of this shows that, applying ordinary statutory interpretation principles, § 1373 covers only information about a noncitizen's legal classification. But if § 1373 were interpreted to reach farther—to encompass information including current address and release date—then, as courts have uniformly held, it would amount to just the sort of commandeering forbidden by the Tenth Amendment. *E.g.*, *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 866-73 (N.D. Ill. 2018), *aff'd on other grounds*, 961 F.3d 882, 898 (7th Cir. 2020). This constitutional infirmity provides yet another powerful reason why the Court should decline to adopt what is already a dubious construction of § 1373. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

---

[7] Besides, as the Ninth Circuit further explained, the legislative history that the United States cites concerns a different statutory provision and, if anything, "suggests that 'information regarding [ ] immigration status' does *not* include 'the presence, whereabouts, or activities' of noncitizens" because it takes care to "distinguish[ ] between the two categories." *California*, 921 F.3d at 892 n.18.

14

Not so fast, Plaintiff protests: an "information-sharing law"—as it claims § 1373 is—"does not implicate the Tenth Amendment's anticommandeering principle." ECF 50 at 35 (citing *Printz*, 521 U.S. at 918). The federal government has already tried and failed with this argument in this district. *See* ECF 25 at 17-19 (discussing case). As Judge Leinenweber noted, the "possible information sharing carve-out" that Plaintiff points to is "derived solely from dicta." *City of Chicago*, 321 F. Supp. 3d at 871. In any event, "Section 1373 is more than just an information-sharing provision": among other things, the statute also (i) "prevents" state and local governments "from extricating [themselves] from federal immigration enforcement" and (ii) "supplants local control of local officers" by preventing state and local governments "from limiting the amount of paid time [their] employees use to communicate with" federal immigration authorities. *Id.* at 869-72. Other courts have reached the same result. *See, e.g.*, *County of Ocean*, 475 F. Supp. 3d at 378 n.21 (reading *Printz* to "carve out" "an 'information sharing exception' to the anticommandeering doctrine" is "specious"); *Oregon v. Trump*, 406 F. Supp. 3d 940, 973 (D. Or. 2019), *vacated as moot sub nom. City & County of San Francisco v. Garland*, 42 F.4th 1078, 1087-88 (9th Cir. 2022) (§ 1373 is not "just [an] information-sharing provision[]"). Plaintiff simply ignores these decisions, but there is no reason this Court should.

The correct reading of § 1373 is the only reading grounded in its plain language: the statute covers only a person's legal classification under federal immigration law. Plaintiff does not dispute that the TRUST Act allows state and local officials in Illinois to share this information with their federal counterparts. ECF 25 at 15-17 (citing 5 ILCS 805/5). So there is no conflict—§ 1373 does not expressly preempt any portion of the TRUST Act—and Count I should be dismissed.

### III. Illinois's decision not to participate in civil immigration enforcement does not regulate or discriminate against the federal government.

Illinois has explained why the TRUST Act does not violate intergovernmental immunity: The Act regulates state officers, not federal officers, and does not discriminate against the federal government in doing so. ECF 25 at 20-24. Plaintiff's counter-arguments are identical to those already rejected in *McHenry County*. ECF 50 at 26-34. Counts II and III must be dismissed.

*First*, Plaintiff is wrong that the TRUST Act regulates the federal government. *Id.* at 26-29. Plaintiff's argument is, at bottom, that the Act makes it more logistically challenging for federal officers to arrest and remove noncitizens. Plaintiff contends the Act effectively "requir[es]" ICE agents to get criminal warrants to take custody of noncitizens from state and local law enforcement officers rather than relying on detainers or administrative warrants for that purpose, which they say federal law allows them to use. *Id.* at 27. That argument is flawed on multiple levels.

Most basically, Plaintiff's argument is indistinguishable from the one rejected in *McHenry County*. There, too, the plaintiffs argued that the Act had the practical effect of preventing the federal government from relying on authority granted by the INA—in that case, the authority to enter into immigration detention agreements with states and localities. *See McHenry County*, 44 F.4th at 592-93. But that effect was not a violation of intergovernmental immunity: Although the court agreed that the practical "consequence of the Act" was that "the federal government will not be able to" enter into such agreements, that did not mean that the Act "directly regulate[d]" the federal government. *Id.* at 593. Instead, because the Act "directly regulates only State and local entities and law enforcement," its practical effect alone did not violate intergovernmental immunity principles. *Id.* That was especially true because the INA provisions at issue imposed no specific, mandatory duty on the federal government, but instead conferred only an authority that presupposed the voluntary cooperation of state and local actors. *See id.* ("[E]ven before the Act

16

was passed, local entities were free to withhold their cooperation . . . ."). All that is true here: The provisions at issue (§§ 15(a) and (h) of the Act) regulate state officers, not federal officers, and the tools Plaintiff wants to use presume—but do not mandate—state cooperation. *See supra* pp. 2-7; 8 C.F.R. § 287.7(a) (a detainer is only a "request" for cooperation). *McHenry County* thus controls.[8]

Plaintiff appears to acknowledge that *McHenry County* forecloses this claim, accepting that it "concluded" that laws like the Act "cannot . . . regulate the Federal Government." ECF 50 at 28. Plaintiff instead cites two out-of-circuit cases postdating *McHenry County* that it asserts take a different view of the applicable legal principles. *See id.* at 28-29 (citing *GEO Grp. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc); *United States v. King County*, 122 F.4th 740 (9th Cir. 2024)). But this Court is bound by *McHenry County*, not those Ninth Circuit cases, which, in any event, look nothing like this one. Each case concerned laws that regulated private entities contracting with the federal government, not state and local officers; the conclusion that those laws effectively gave states the "power of review" over "ICE's contracting decisions," *GEO Group*, 50 F.4th at 761 (quoting *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956)); *accord King County*, 122 F.4th at 756, is thus irrelevant here. By contrast, the Ninth Circuit rejected a federal intergovernmental immunity challenge to a state statute that was essentially on all fours with the TRUST Act in *United States v. California*, 921 F.3d 865 (9th Cir. 2019), explaining that a contrary holding would be "inconsistent with the Tenth Amendment," *id.* at 891. So even setting *McHenry County* aside, Plaintiff's out-of-circuit cases do not save Count III.

---

[8] Plaintiff's claim here is considerably weaker than the equivalent claim in *McHenry County*, at least as to administrative warrants. The TRUST Act provisions at issue there wholly foreclosed the federal government from entering into agreements with Illinois municipalities. *See* 44 F.4th at 593. Here, although Plaintiff asserts that the Act "prevent[s] federal agents from" detaining noncitizens using administrative warrants, thus "directly impos[ing]" a "different standard" on federal immigration agents for noncitizen detention than federal law allows, ECF 50 at 27, the Act does no such thing. The Act simply prevents *state and local* officers from detaining noncitizens on the basis of a federal administrative warrant, 5 ILCS 805/15(a), (h).

*Second*, Plaintiff is likewise wrong that the Act discriminates against the federal government. *See* ECF 50 at 29-34. Here, too, Plaintiff advances an argument expressly rejected in *McHenry County*: that the Act "discriminate[s] against the Federal Government by singling out federal immigration enforcement for unfavorable treatment." ECF 50 at 30. But, again, the plaintiffs in *McHenry County* made the same argument, and the Seventh Circuit rejected it, explaining that it was irrelevant that §15(g) of the Act "affect[ed] an exclusively federal domain"— namely, federal immigration enforcement. 44 F.4th at 594. Rather, the court explained, a plaintiff challenging a state statute on the ground that it discriminates against the federal government must identify an entity "'similarly situated' to the federal government that receive[s] more favorable treatment." *Id.* (quoting *North Dakota v. United States*, 495 U.S. 432, 438 (1990) (plurality opinion)). "The mere fact that the Act touches on an exclusively federal sphere"—*i.e.*, federal immigration enforcement—"is not enough to establish discrimination." *Id.*

Plaintiff cannot identify a "similarly situated" entity that the Act treats "more favorabl[y]" than the federal government. *Id.* Plaintiff relies primarily on § 15(i), which permits state and local officers to cooperate with "federal and other law enforcement agencies" conducting criminal investigations. ECF 50 at 30. But § 15(i) illustrates why the Act does *not* discriminate against the federal government: It permits state and local cooperation with *any* federal officer (including a federal immigration officer) conducting a criminal investigation. *See* 5 ILCS 805/15(i) ("Nothing in this Section shall preclude a law enforcement official from otherwise executing that official's duties in investigating violations of criminal law and cooperating in such investigations with federal and other law enforcement agencies . . . ."); *accord id.* § 15(h) (permitting cooperation with federal officers when "presented with a federal criminal warrant"). The main distinction the Act draws, in other words, is not between federal officials and state ones, as Plaintiff appears to think,

but between criminal law enforcement (with which state and local officials assist) and civil immigration enforcement (with which they do not). There is nothing discriminatory about that, as *McHenry County* confirms. *See* 44 F.4th at 594.

Plaintiff's remaining arguments lack merit. Plaintiff insists that, because only the federal government conducts civil immigration enforcement, the Act is discriminatory as a matter of law. ECF 50 at 31. But again, *McHenry County* rejects that theory. *Supra* p. 18. Plaintiff says *McHenry County* involved a TRUST Act provision "touch[ing] on a federal sphere in an innocuous way," ECF 50 at 32, but fails to explain what that means. To the extent Plaintiff refers to *California*'s observation that intergovernmental immunity is "not implicated when a state . . . singles out federal activities in an otherwise innocuous enactment," 921 F.3d at 881, the statute upheld there was virtually identical to the Act, *see id.* at 891. Plaintiff finally argues at length that "the danger" of state discrimination against the federal government is "at its peak" when "the target of the impermissible discrimination is the Federal Government itself." ECF 50 at 32-33. But that argument is circular (a state law violates intergovernmental immunity principles only when it discriminates against the federal government) and irrelevant here, because the Act does not discriminate against the federal government. Count II should be dismissed.

*Finally*, Plaintiff's cursory Tenth Amendment argument is likewise wrong. ECF 50 at 33-34. The Tenth Amendment protects a state's decision not to participate in a federal program, *see Printz*, 521 U.S. at 935, and that is all the TRUST Act does. *See* ECF 25 at 23-24; *California*, 921 F.3d at 891 (rejecting immunity challenge to analogous law on this ground). Plaintiff suggests the Tenth Amendment is irrelevant to the Act. ECF 50 at 33. But that is incorrect, as previously discussed, *supra* pp. 5-10. Plaintiff cites the Ninth Circuit's decision in *King County*, 122 F.4th 740, ECF 50 at 34, but the county ordinance there restricted private conduct, not the county's use

of its own resources, *see* 122 F.4th at 758-59. Here, the Act governs only the conduct of state and local officials, and falls squarely within the Tenth Amendment's heartland.

## IV.     The Governor is not a proper defendant.

The motion to dismiss noted that the TRUST Act confers authority on the Attorney General, not the Governor, to enforce its provisions. ECF 25 at 24-25 (citing 5 ILCS 805/30). That means the relief Plaintiff seeks against the Governor (an injunction forbidding him to enforce the TRUST Act) will not remedy its injury, and so the claims against the Governor must be dismissed for lack of standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024); Compl. at 21.

Plaintiff's primary response is: "So what?" Despite the need for standing to sue "each defendant," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024), Plaintiff says dismissing the Governor "would make no practical difference" because any injunction against the State of Illinois would apply to him anyway. ECF 50 at 17. But that argument simply affirms the Governor is an unnecessary defendant. Plaintiff's other argument—that the Governor has voiced public support for the TRUST Act and created the Welcoming Illinois Office—is no better. ECF 50 at 18. Plaintiff has not adequately alleged that either of these actions caused it any injury. And although the Attorney General *is* authorized to enforce the TRUST Act, 5 ILCS 805/30, he is not (as Plaintiff falsely asserts, ECF 25 at 18) a member of the Governor's administration, but rather an independently elected constitutional officer. Ill. Const. 1970, art. V, §§ 1, 8, 15; *see* 15 ILCS 205/4; 20 ILCS 5/5-15. Because Plaintiff still has not shown that the Governor "plays" *any* "role in enforcing" the TRUST Act, it lacks Article III standing to pursue its claims against him. *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018).

## CONCLUSION

The Court should dismiss all claims against the State of Illinois and Governor Pritzker with prejudice.

Date: April 29, 2025

Respectfully submitted,

KWAME RAOUL
*Illinois Attorney General*

By: /s/Christopher G. Wells

Christopher G. Wells
*Chief of the Public Interest Division*
Darren Kinkead
*Public Interest Counsel*
Alex Hemmer
*Deputy Solicitor General*
Alexandra Reed
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, Illinois 60603
Christopher.Wells@ilag.gov
Darren.Kinkead@ilag.gov
Alex.Hemmer@ilag.gov
Alexandra.Reed@ilag.gov

*Counsel for the State of Illinois and
Governor JB Pritzker*