**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

THE UNITED STATES OF AMERICA,

   Plaintiff,

  v.

STATE OF ILLINOIS, *et al.,*

   Defendants.

No. 25-cv-01285

Hon. Lindsay C. Jenkins

**REPLY IN SUPPORT OF DEFENDANT COOK COUNTY'S**
**FED. R. CIV. P. 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT ...................................................................................................................3

I.    This Court Lacks Article III Jurisdiction Over The United States' Claims Against
      The County .........................................................................................................3

II.   The United States' Complaint Should Be Dismissed With Prejudice For Failure to
      Assert A Claim On Which Relief Can Be Granted..........................................9

      A.   The United States Has Forfeited Its Express Preemption Claim
           Against The County.................................................................................9

      B.   The United States' Broad Reading Of §§ 1373 And 1644 Is Foreclosed By
           The Presumption Against Preemption..................................................11

      C.   The County Ordinance Does Not Conflict With Federal Immigration Law..... 13

      D.   As Broadly Construed By The United States, §§1373 And 1644 Are
           Unconstitutional As Applied Here.......................................................14

III.  The County Ordinance Does Not Violate The Intergovernmental
      Immunity Doctrine...............................................................................................17

IV.   The Dismissal Of The United States' Claims For Failure To State A Claim
      Should Be With Prejudice.................................................................................. 18

CONCLUSION  .............................................................................................................19

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                           <u>Pages</u>

*Arizona v. United States*, 567 U.S. 387 (2012) ...........................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................7, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................2, 5, 18

*Boogaard v. NHL*, 891 F.3d 289 (7th Cir. 2018) ........................................................10

*Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021) ....................................................15

*California v. Texas*, 593 U.S. 659 (2021) .....................................................................8

*City & Cty. of San Francisco v. Trump*,
    25-cv-01350-WHO, 2025 U.S. Dist. LEXIS 78603 (N.D. Cal., April 24, 2025) ..............15

*Diamond v. Charles*, 476 U.S. 54 (1986) ......................................................................8

*Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) ........................................................15

*Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022)........................................ 17 and 17, fn. 3

*Goldhamer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) ............................................ 5, *passim*

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ...................................................................11

*Griffin v. Bell*, 694 F.3d 817 (7th Cir. 2012) ..............................................................11

*Harrison v. Jefferson Parish School Board,* 78 F.4th 765 (5th Cir. 2023)…………………………..4

*Illinois v. City of Chicago*, 137 F.3d 474 (7th Cir. 1998)………………………………………… 4

*Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625 (7th Cir. 2023) …………………6, 7

*In re Stewart,* 647 F.3d 553 (5th Cir. 2011) …………………………………….................5

*Kareem v. Haspel*, 986 F.3d 859 (D.C. Cir. 2021) .........................................................5

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999)……………………………10

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018) ........................... 12, and 12, fn. 2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................5, 6

ii

*McHenry County v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) .......................................... 1, *passim*

*Medical Assur. Co. v. Hellman*, 610 F.3d 371 (7th Cir. 2010) ........................................5

*Murphy v. NCAA*, 584 U.S. 453 (2018) ................................................................18

*New York v. United States*, 505 U.S. 144 (1992) ....................................................11, 14

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 655 (1995) ..............................................................................12

*Noem v. Garcia*, No. 24A949, 2025 U.S. Dist. LEXIS 1456 (April 10, 2025) ............................16

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .........................................................9

*Printz v. United States*, 521 U.S. 898 (1997) ..............................................14, 15, 16, 17

*Reno v. Condon*, 528 U.S. 141 (2000) ...........................................................15, 16

*Saginaw County v. STAT Emergency Medical Services*, 946 F.3d 951 (6th Cir. 2020).............4

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015) .................................................5

*Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017) ...........................................9

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).................................8

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ...........................................6

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)…………………………………………2

*Trump v. J.G.G.*, No. 24A931, 2025 U.S. Dist. LEXIS 1450 (2025) ...................................16

*United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018)................................11, 12

*United States v. California*, 921 F.3d 865 (9th Cir. 2019)................................... 9, *passim*

*United States v. King Cty.*, 122 F.4th 740 (2024) ................................................17

*United States v. Rosenbohm*, 564 F.3d 820 (7th Cir. 2009) ........................................7

*United States v. West Virginia*, 295 U.S. 463 (1935) .............................................3, 4

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)........................4

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................7

Statutes and Ordinances

8 U.S.C. § 1231(a)(4)(A) ...........................................................................8, 9

8 U.S.C. § 1373................................................................................. 2, *passim*

8 U.S.C. § 1644................................................................................. 2, *passim*

5 ILCS 140/1, et .seq.................................................................................13

Other Sources

Ill. R. Prof. Cond. 8.4(g) ................................................................... 9, fn. 1

## **Introduction**

As explained in the County's motion to dismiss, this suit should be dismissed for lack of jurisdiction. The United States has failed to make even the modest showing necessary to establish the existence of Article III standing to seek injunctive relief here. But even if this Court had jurisdiction, that would only make dismissal on the merits (with prejudice) appropriate because the United States' claims against the County are so fundamentally legally defective that they cannot be saved by an amendment.

The United States' express preemption claim fails as a matter of law because §§ 1373 and 1644 do not apply to local governmental regulations of their own agents and employees, nor do they apply to the narrow categories of information regulated by the County Ordinance. That is particularly so when those statutes are read narrowly, as they must be under the presumption against preemption. Further, its conflict preemption claim fails as a matter of law because binding Seventh Circuit precedent specifically rejects the notion that when, as here, federal law gives local governments a free choice whether to cooperate with federal immigration enforcement efforts, the choice not to provide that cooperation conflicts with federal law. *McHenry County v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022).

The United States cannot get around these problems by recharacterizing the County Ordinance as an impermissible regulation of or discrimination against the federal government. The *McHenry County* opinion makes clear that the voluntary nature of local cooperation with federal immigration enforcement defeats these theories as well. *Id*.

Finally, the United States' broad reading of federal law to compel local cooperation with federal immigration enforcement efforts only renders that federal law unconstitutional as applied

here, by reading that federal law to unlawfully commandeer local law enforcement and budgets for federal ends.

Tellingly, the United States has no meaningful response to any of this, other than to demand that it be allowed to move for summary judgment despite the top-to-bottom inadequacies of its complaint. That request puts the proverbial cart miles before the horse – after all, the very reason federal law requires a well-pleaded complaint setting forth claims on which relief can be granted is to ensure that defendants are not subjected to the time, expense, and general *in terrorem* effect of post-complaint proceedings on a complaint that is going nowhere. *E.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (explaining that, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court") (cleaned up); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (*Twombly* "wished to avoid the 'in terrorem' effect of allowing a plaintiff with a 'largely groundless claim' to force defendants into either costly discovery or an increased settlement value").

The United States' response to the motions to dismiss only confirms that its complaint is going nowhere, and fast. Regarding jurisdiction, the United States claims interference with its ability to enforce federal law, but in so doing simply ignores long-settled precedent tying Article III standing to a factual showing of tangible interference with enforcement efforts – a factual showing that the United States' threadbare, rumor-laden complaint has not made. Regarding express preemption, the United States does not deny that the County correctly reads §§ 1373 and 1644 to not reach laws like the County Ordinance, which regulates only County employees, agents, and expenses. Nor does the United States even *acknowledge* the presumption against preemption, let alone attempt to reconcile that presumption with its extraordinarily broad reading of federal

law. Regarding conflict preemption and supposed regulation of and/or discrimination against the federal government, the United States does not dispute that *McHenry County* categorically forecloses these claims. And regarding commandeering, the United States does not seriously dispute that it is seeking to force the County to participate in federal immigration enforcement, at County taxpayer expense, in direct violation of the core principles underlying our federal system of government. Finally, the United States does not deny that any dismissal on the merits should be with prejudice because its complaint's fundamental legal defects cannot be cured by an amendment. We address these problems in turn.

<u>Argument</u>

**I.      This Court Lacks Article III Jurisdiction Over The United States' Claims Against The County.**

As explained in the County's motion, the United States lacks Article III standing to seek injunctive relief, because it has failed to plausibly allege that it will suffer an imminent injury-in-fact that will be redressed by its requested injunction of the County Ordinance. Dkt. 28 at 3-7. This was particularly so, the County explained, because the United States' factual allegations rest on "information and belief," which cannot suffice to clearly show Article III jurisdiction. *Id.* at 5 n.1.

The United States' discussion of standing exacerbates these problems. The United States leads off by declaring that the County Ordinance "interferes with the Government's legally protected interest in enforcing federal law," Dkt. 50 at 14, but the courts have roundly rejected the notion that a sovereign's mere declaration of an interest in enforcing its laws suffices to create Article III standing. Indeed, the Supreme Court rejected *another* such suit by the United States – a suit which, like this one, asserted "interference with the authority of the United States" – nearly a century ago, for lack of Article III jurisdiction. *United States v. West Virginia*, 295 U.S. 463, 474

(1935). As the Court explained, "Until the right asserted is threatened with invasion by *acts* of the State, which serve both to define the controversy and to establish its existence in the judicial sense, there is no question presented which is justiciable by a federal court." *Id.* (emphasis added). While a justiciable controversy would have arisen had there been an invasion of the United States' "property interest," the Court went on, "[a] different issue, in point of definition of threatened injury and imminence of the controversy, is presented by rival claims of sovereign power made by the national and a state government." *Id.* at 475. And those sovereign rights "are not invaded or even threatened by mere assertions" of competing authority by a State, particularly when the State has only given "*permission*" to act in a way the United States found offensive, not imminently threatened to take the offensive act itself. *Id.* (emphasis added). Thus, there was "no justiciable controversy," and the Court dismissed the United States' complaint. *Id.*

Under *West Virginia*, a sovereign plaintiff may not establish Article III jurisdiction by merely claiming that its laws are being violated; rather, it must point to imminent *acts* that tangibly interfere with its authority to regulate or enforce its laws. *E.g.*, *Saginaw County v. STAT Emergency Medical Services*, 946 F.3d 951, 956-57 (6th Cir. 2020); *accord Harrison v. Jefferson Parish School Board*, 78 F.4th 765, 770 (5th Cir. 2023). That is because, as the Seventh Circuit has explained, "a claim of authority differs from an exercise of authority. Only the exercise yields a concrete dispute." *Illinois v. City of Chicago*, 137 F.3d 474, 477 (7th Cir. 1998).

Application of this long-settled rule dooms the United States' claims against the County. While the United States makes much of its vague allegation regarding supposed past failures to honor detainer requests, Dkt. 50 at 14 (citing Dkt. 1 at 14 ¶57), this allegation does not suffice to establish standing for two reasons that were already pointed out in the County's motion, yet simply ignored by the United States. First, this allegation rests on mere "information and belief." Dkt. 1

at 14 ¶57. The United States does not dispute that allegations on information and belief, which can amount to mere repetition of baseless rumors, do not suffice to "clearly" establish federal jurisdiction. Dkt. 28 at 5 n.1 (citing *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021); *Medical Assur. Co. v. Hellman*, 610 F.3d 371, 376 (7th Cir. 2010)). Second, the United States forgets that past misconduct does not, on its own, provide standing for prospective injunctive relief. *Id.* at 5-6. That the United States thinks it can get around this problem because it "is challenging the County's Ordinance," Dkt. 50 at 14, only shows that the United States fundamentally misunderstands the requirements of Article III. While a *retrospective* request for damages caused by *past* enforcement of a legislative enactment may (for obvious reasons) rest solely on past conduct, a *prospective* request to enjoin *future* enforcement of that same enactment requires proof of imminent future conduct. *E.g.*, *Goldhamer v. Nagode*, 621 F.3d 581, 585-86 (7th Cir. 2010) (collecting authority); *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) ("a claim for injunctive relief must have its own Article III footing, separate from the past injury that supports claims for retrospective relief").

Equally irreconcilable with Article III principles is the United States' demand that *the County* provide reason to "conclude that the County does not currently implement its own Ordinance or that it plans not to do so in the future." Dkt. 50 at 13-14. It is the United States that bears the burden of affirmatively establishing federal jurisdiction on the face of its complaint, with proper allegations of fact, not the County's obligation to negate jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). On that score, all the United States offers is bare speculation that the County will "continue to injure the United States" at some unknown point in the future. Dkt. 50 at 14. That is doubly insufficient – mere speculation unsupported by well-pleaded factual allegations never suffices to save a complaint, *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief

above the speculative level . . . ."), and Article III requires a plaintiff seeking injunctive relief to show *imminent* harm, not mere harm at some unknown time in the future, *Lujan*, 504 U.S. at 564; *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). But the United States offers no such factual allegations anywhere in its complaint, whether on information and belief or otherwise.

No more helpful is the United States' continued insistence that information regarding detainer notices is supposedly removed from detainees' files. Dkt. 50 at 15 (citing Dkt. 1 at 14 ¶58). Again, nothing in the County Ordinance even arguably allows placement, retention or removal of information from case files, and the United States does not even attempt to argue that a reasonable person could possibly think it authorizes such activity, forever forfeiting any such argument. That is fatal because Seventh Circuit precedent is unambiguous that "a clear misuse of a law does not provide a basis for a federal court to explore that law's facial constitutionality." *Goldhamer*, 621 F.3d at 588; *accord, e.g.*, *Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625, 630 (7th Cir. 2023) ("It is a threshold requirement to establish a credible threat of enforcement that the statute actually cover the plaintiff's desired conduct."). This jurisdictional principle is equally fatal to the United States' new assertion that the County Ordinance somehow "prevent[s] . . . local officers from turning aliens over to federal custody . . . after the alien's state or local custody has ended." Dkt. 50 at 21. This, too, is not even arguably authorized by the County Ordinance, which governs only the use of County resources and facilities – resources and facilities no longer at issue after an individual's release from custody. Any supposed refusal to turn an individual over to federal custody would thus be wholly *ultra vires* as far as the County Ordinance is concerned, a jurisdictionally fatal fact under *Goldhamer*.

The United States' attempts to get around this problem are incoherent. The United States begins by declaring that "the County's legal view" was made "irrelevant" by the factual allegations

6

in the complaint, Dkt. 50 at 15, but the law is clear that a municipality's interpretation of its own laws "are, of course, highly relevant" when considering a facial challenge to those laws, *e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 795-96 (1989). Furthermore, cases such as *Goldhamer* and *Morales* make clear that the actual meaning of a law the plaintiff seeks to enjoin is a central consideration when assessing Article III standing. And the notion that the United States could get around this problem via factual allegations in its complaint is beyond frivolous – the meaning of a law is a paradigmatic legal conclusion, *e.g.*, *United States v. Rosenbohm*, 564 F.3d 820, 822 (7th Cir. 2009), and it is black-letter law that legal conclusions in a complaint must be disregarded on a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The United States' attempt to distinguish *Goldhamer* as a "pre-enforcement" challenge to a law, not a challenge to a law already enforced, Dkt. 50 at 15-16, is equally frivolous. After all, *Goldhamer* specifically noted that the plaintiffs were "arrested, transported to a police station, and charged," supposedly pursuant to the local ordinance they sought to enjoin, *Goldhamer,* 621 F.3d at 583, but the clear misapplication of that ordinance to their conduct was still fatal to their standing to challenge that ordinance, just as it is fatal to the United States' standing here.

Unable to defend its standing with either facts or caselaw, the United States resorts to outright misrepresentations. The United States does not dispute that it lacks standing to seek declaratory relief or attorney's fees and costs, but bizarrely claims the County somehow "ignores that the United States is seeking injunctive relief." Dkt. 50 at 15 n.2. This is utterly frivolous – the County literally *focused* its argument on that injunctive relief after noting the United States' lack of standing to seek its other desired relief, Dkt. 28 at 4 ("That leaves only the request for injunctive relief . . . ."); *id.* at 4-5 (setting forth elements of standing for "a plaintiff seeking injunctive relief against enforcement of a local law"). Equally frivolous is the United States claim that the County's

argument regarding declaratory relief, attorney's fees, and costs merely "argues that the United States is not entitled to these requested forms of relief." Dkt. 50 at 15 n.2. This is nonsense; the County specifically addressed the United States' lack of standing to seek that relief, citing Supreme Court Article III jurisprudence relating to those specific forms of relief. Dkt. 28 at 4 (citing *California v. Texas*, 593 U.S. 659, 673 (2021) (declaratory judgments); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998) (costs); *Diamond v. Charles*, 476 U.S. 54, 70-71 (1986) (attorney's fees)).

Furthermore, and quite tellingly, the amici states lead by Ohio do not even *attempt* to dispute that the United States lacks standing to sue the County. Indeed, Ohio's arguments only confirm why Article III requires tangible proof of imminent actions that interfere with sovereign interests. Despite arguing at some length that it would be criminal misconduct for County law enforcement to "resist any efforts by the authorities to enter [a] premise to arrest" an individual in County custody, Dkt. 55 at 16, Ohio is conspicuously unable to identify even a single *past* incident of such supposed resistance, let alone the imminent threat of future such conduct that is necessary to provide Article III standing for the United States' desired injunctive relief.

That is because the United States does not allege that it has ever attempted, or is imminently likely to attempt, to apprehend an immigrant while in County custody – likely because the United States concedes, as it must, that federal law specifically *prohibits* removal of immigrants until their release from lawful state custody. Dkt. 50 at 17 (citing 8 U.S.C. § 1231(a)(4)(A)). By resting its theory of "preemption" on hypothetical criminal acts that are not even alleged in the operative complaint, and that could come about only if the United States simply ignores section 1231(a)(4)(A), Ohio only undermines the United States' ability to show Article III standing here. After all, when evaluating "standing to seek injunctive relief against future harm, courts generally

assume that litigants 'will conduct their activities within the law.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).[1] Because the United States lacks standing to sue the County, its claims against the County should be dismissed, without prejudice, for lack of Article III jurisdiction.

## II.   The United States' Complaint Should Be Dismissed With Prejudice For Failure To Assert A Claim On Which Relief Can Be Granted.

Even assuming, for sake of argument, that this Court has jurisdiction to consider the United States' claims against the County, that only means that this Court should dismiss those claims, with prejudice, for failure to state a claim. Nothing in federal law expressly preempts the County Ordinance, nor does the County Ordinance conflict with federal immigration laws, particularly given the strong presumption against preemption. And binding Seventh Circuit precedent forecloses any claim that the County Ordinance directly regulates, or discriminates against, the federal government. We address these problems in turn.

### A. The United States Has Forfeited Its Express Preemption Claim Against The County.

As the County's motion explained, the United States' claim that §§ 1373 and 1644 expressly preempt the County Ordinance fails for two reasons. First, those sections only concern "information regarding the citizenship or immigration status, lawful or unlawful," of an individual, 8 U.S.C. § 1373; 8 U.S.C. § 1644, and this language reaches only information concerning "a person's legal classification under federal law." *United States v. California*, 921 F.3d 865, 891

---

[1] More troubling, by addressing its arguments towards purely hypothetical conduct not alleged in the United States' complaint, Ohio confirms that its supposed "preemption" arguments are in reality thinly veiled threats of criminal prosecution, offered not to aid this Court in evaluating the sufficiency of the factual allegations in that complaint, but solely to intimidate the County. While such tactics might be acceptable to authoritarian dictators, they are wholly unbecoming of officers of this court in a democratic society. *See* Ill. R. Prof. Cond. 8.4(g) (prohibiting threats of prosecution "to gain an advantage in a civil matter").

(9th Cir. 2019). That is fatal to any express preemption claim because the County Ordinance does not restrict provision of citizenship or immigration information, but only information regarding release dates. Second, consideration of the plain language of §§ 1373 and 1644, along with legislative history and this nation's longstanding tradition of cooperation in the context of immigration enforcement, shows that they were intended only to prohibit outside interference with a government's decision whether to provide information to the United States, not to force the government to provide that information. That is fatal to any express preemption claim against the County, since the County Ordinance only codifies the County's own choice whether to use taxpayer funds to provide information via its agents and employees, and does not seek to restrict any independent government body's provision of that information.

Notably, the United States offers no response to the County's second argument – indeed, it does not even acknowledge that argument's existence, focusing instead on whether the plain language of § 1373 reaches release information. Dkt. 50 at 35-37. By failing to respond to the County's alternative ground for dismissal of its claim for express preemption, the United States has forfeited any response, allowing this Court to dismiss the express preemption claim against the County on this ground alone. It is well settled that "a district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss." *Boogaard v. NHL*, 891 F.3d 289, 295 (7th Cir. 2018). This reflects that "[o]ur system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). And because the inapplicability of §§ 1373 and 1644 to a government's regulation of its own activities

10

independently forecloses the United States' express preemption claim against the County, the United States' forfeiture of any argument on that issue is a sufficient ground for judgment in the County's favor on that claim. *E.g.*, *Griffin v. Bell*, 694 F.3d 817, 826 (7th Cir. 2012).

**B.    The United States' Broad Reading Of §§ 1373 And 1644 Is Foreclosed By The Presumption Against Preemption.**

Forfeiture aside, the United States' express-preemption argument fails as a matter of law. According to the United States, § 1373's use of the word "regarding" expands that section's reach to matters having any conceivable relevance under the immigration laws, such as an individual's release date. Dkt. 50 at 35-37. But this argument fails as a matter of law under the presumption against preemption, which the United States does not even acknowledge, let alone address, in its response. And as the County has already explained, that presumption may be overcome only by a "clear and manifest" preemptive purpose that is determinative of both the existence and the scope of federal law's preemptive effect. Dkt. 28 at 8; *accord*, *e.g.*, *Arizona v. United States*, 567 U.S. 387, 400 (2012) (noting that state police powers are not preempted absent "the clear and manifest purpose of Congress"); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (courts must "be certain of [Congress's] intent before finding that federal law overrides" the constitutional balance of federal and state powers.).

Under that presumption, a law's "amenability to an equally plausible alternative construction prevents [a court] from possessing such certainty" necessary to conclude that law seeks to override the balance between the federal government and the States. *New York v. United States*, 505 U.S. 144, 170 (1992). That is fatal to the United States' argument, given that the courts have recognized that § 1373 "is naturally understood as a reference to a person's legal classification under federal law." *California*, 921 F.3d at 891 (citing favorably *United States v. California*, 314 F. Supp. 3d 1077, 1102 (E.D. Cal. 2018) ("[T]he plain meaning of §1373 limits its

reach to information strictly pertaining to immigration status (i.e. what one's immigration status is) and does not include information like release dates and addresses.")).

The United States' cited authorities are not to the contrary, and their inclusion in the briefing does little to clarify the dispute before this Court.  For example, despite citing *United States v. California*, as support for its position, Dkt. 50 at 36, the United States neglects to mention that, as explained in the County's motion, *California* specifically stated that § 1373's "plain meaning . . . limits its reach to information strictly pertaining to immigration status . . . and does not include information like release dates and addresses," 314 F. Supp. 3d at 1102. It further ignores that the Ninth Circuit adopted this interpretation on appeal, explaining that § 1373 "is naturally understood as a reference to a person's legal classification under federal law." *California*, 921 F.3d at 891. Equally curious is the United States' reliance on *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018), which the United States offers for the notion that "statutory terms like 'regarding' or 'related to' have 'a broadening effect,'" Dkt. 50 at 36. What the Supreme Court actually said is that such language "*generally* has a broadening effect." *Lamar*, 584 U.S. at 710 (emphasis added).[2] That conspicuously omitted caveat was necessary because the Supreme Court's earlier preemption precedent made clear that such broadening is inappropriate in cases involving preemption, because it is effectively unlimited and would thus "read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

---

[2]  Moreover, *Lamar* did not view this statutory language in a vacuum, as the United States believes, but found support for its expansive reading of "respecting," in the context of the Bankruptcy Code, in both the legislative history of that statute, the "incoherent results" which would flow from adopting the opposite position, and the long history of expansive construal by the lower courts. 584 U.S. at 710-11.

Again, the United States simply ignores that presumption here, forfeiting any argument on that subject as well, and requiring dismissal of the United States' express preemption claim.

###   C.      The County Ordinance Does Not Conflict With Federal Immigration Law.

The United States' claim of conflict preemption is readily and easily resolved in the County's favor. Despite arguing at great length about the impediments to federal immigration enforcement that result from a lack of local cooperation, the United States does not (and cannot) dispute that federal immigration law makes such local cooperation *wholly voluntary*. Nor does the United States dispute that the Seventh Circuit held in *McHenry County* that when federal law is permissive, "the choice of a state to refrain from participation cannot be invalid" even if it may frustrate federal immigration enforcement. 44 F.4th at 592 (quoting *California*, 921 F.3d at 890). This body of law is fatal to any claim of conflict preemption because *McHenry County* is binding on this Court. This is true even though the United States believes it cannot enforce the immigration laws if the County does not cooperate with federal immigration efforts. Dkt. 50 at 22. Again, by making local cooperation with those efforts wholly optional, Congress clearly contemplated that such local cooperation would be withheld – that the executive branch is displeased with that decision does not show a conflict with congressional intent, only that the executive wishes Congress had passed a different law mandating cooperation.

That problem aside, the United States' complaint offers no factual support for its claim of supposed impossibility. While the United States dismisses courtroom monitoring and inmate status website data as unreliable, its complaint offers no well-pleaded facts plausibly showing as much. Dkt. 50 at 22-23. Nor does the United States explain why it would be unable to easily obtain the information it seeks through the most obvious means for obtaining information from local governments: a request via the Illinois Freedom of Information Act (FOIA), 5 ILCS 140/1, *et. seq.*

That is particularly problematic since the United States complains that "members of the public" receive the information it desires, Dkt. 50 at 30. Since the general public obviously has no authority to issue detainer requests, that implies that the public is able to use other lawful means, including FOIA requests – the normal manner in which the public requests information from the government – to receive such information. The United States' complaint having alleged no well-pleaded facts plausibly supporting its impossibility argument, that argument fails as a matter of law under basic pleading standards. *Iqbal*, 556 U.S. at 678.

### D. As Broadly Construed By The United States, §§1373 And 1644 Are Unconstitutional As Applied Here.

All this said, dismissal would still be appropriate even were federal law to compel the County to ensure that its employees assist in federal immigration law enforcement, for the simple reason that such federal conscription of personnel, resources, and policy-making decisions is exactly what the anticommandeering doctrine forbids. Dkt. 28 at 14-16. Indeed, the United States' own justification for demanding County compliance only highlights the constitutional problem with the United States' position.

The United States complains that the local governments' lack of cooperation forces federal agents to "independently track down and rearrest" immigrants after release. Dkt. 50 at 21. This is merely a claim that it would be *easier* to enforce immigration laws were local governments forced into federal service, but the Supreme Court has made clear that the federal government cannot force local officials into service just because it would be "an expedient solution to the crisis of the day." *New York*, 505 U.S. at 187. As the Court stated in *Printz v. United States*, the Constitution does not allow Congress to "take credit for 'solving' problems without having to ask their constituents to pay for the solutions with higher federal taxes." 521 U.S. 898, 930 (1997). If the federal government desires to enforce its own laws, it must do so with its own resources, not by

coopting County resources. *See Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014) ("Under the Tenth Amendment, immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government."). Indeed, the United States may not condition funding to local governments on their enforcement of federal immigration law. *City & Cty. of San Francisco v. Trump*, 25-cv-01350-WHO, 2025 U.S. Dist. LEXIS 78603 (N.D. Cal., April 24, 2025) (enjoining the government's attempt to coerce local municipalities into enforcing federal immigration law as a violation of the Tenth Amendment.)

The United States attempts to sidestep the anticommandeering doctrine by arguing that it is categorically inapplicable whenever federal laws "regulate private actors." Dkt. 50 at 23. Nonsense. Whether a federal law regulates private conduct rather than the States goes only to whether that law is a valid *exercise* of the federal legislative power conferred by Article I. *Brackeen v. Haaland*, 994 F.3d 249, 299 (5th Cir. 2021). Commandeering doctrine, by contrast, inquires whether the States are being forced to participate in the *enforcement* of those otherwise-valid laws. That is why *Printz* struck down a federal law that directly required state and local law enforcement officers to conduct background checks, when that requirement was imposed for the purpose of enforcing a federal prohibition on possession of firearms by certain private individuals. 521 U.S. at 902.

Unable to deny the anti-commandeering doctrine entirely, the United States falls back on a supposed information-sharing exception to that doctrine. Dkt. 50 at 35. If such an exception existed, it would not help the United States to the extent it complains about supposed failures in turning over, or allowing access to, detainees. *Id.* at 21, 22. More problematic for the United States, of course, is the fact that no such exception exists. This was made clear by *Reno v. Condon*, which addressed a law that *only* required States to provide information in their possession, but did not

15

also "require [them] to assist in the enforcement of federal statutes regulating private individuals." *Reno v. Condon*, 528 U.S. 141, 151 (2000). Here, the very heart of the United States' complaint is a demand to compel the County to assist in the identification, detention, and transfer of individuals based on their immigration status—all core law enforcement functions. That places this case squarely outside *Reno*. *Printz* is not to the contrary, for the simple reason that it specifically *declined* to "address these or other currently operative enactments that are not before us; it will be time enough to do so if and when their validity is challenged in a proper case." 521 U.S. at 918.

The anticommandeering concerns here are particularly pressing because the United States is demanding that the County assist in enforcing a federal program that, as it has been applied by this administration, raises a host of serious constitutional questions. Most obviously, the federal government has summarily transferred immigrants to a "terrorism confinement center" abroad, allegedly without any prospect of return even if that transfer was in error—a move raising due process concerns as serious as they are obvious. *See Trump v. J.G.G.*, No. 24A931, 2025 U.S. Lexis 1450 at *4 (April 7, 2025); *Noem v. Garcia*, No. 24A949, 2025 U.S. LEXIS 1456 (April 10, 2025) (Sotomayor, J., concurring).

The County cannot be forced to be complicit in such unconstitutional conduct, particularly when doing so could expose its officers (and, thus, County taxpayers) to suit under section 1983. As the Court has recognized, "even when the States are not forced to absorb the costs of implementing a federal program, they are still put in the position of taking the blame for its burdensomeness and for its defects." *Printz*, 521 U.S. at 930. The anticommandeering doctrine ensures that the County cannot be forced to shoulder responsibility for the flaws of a federal policy that it neither crafted nor controls—particularly one that is as legally dubious as the one the United States has enacted.

16

**III.     The County Ordinance Does Not Violate The Intergovernmental Immunity Doctrine.**

The United States' intergovernmental immunity claims fail as a matter of law. The United States admits that *McHenry County* "concluded that laws that 'regulat[] [sic] only State and local entities and law enforcement' cannot possibly regulate the Federal Government." Dkt. 50 at 28. *McHenry County* also recognized that "refusal to cooperate in the immigration context – a possibility contemplated by the relevant federal statutes – does not constitute discrimination against the federal government." 44 F.4th at 594 n.7. Those binding conclusions of the Seventh Circuit require dismissal of the United States' direct-regulation and discrimination claims.

The United States' preferred cases are all from out of this circuit, and thus have no precedential value, particularly in the face of *McHenry County*. They are also easily distinguished. The United States first relies on *Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc), which held that a California statute outlawing private detention facilities regulated the federal government because, rather than merely increasing costs for the federal government, it "dictat[ed] to the federal government who could do federal work," *id.* at 754. Nothing in the County Ordinance even remotely has such an effect – to the contrary, like the law at issue in *McHenry County*, the County Ordinance merely controls the work that may be performed by County officials using County resources.[3] The Ninth Circuit's subsequent decision in *United States v. King County*, is even farther afield, since the executive order in that case specifically "directed county officials to ensure that future leases at Boeing Field prohibit [private base operators] from servicing ICE charter flights." 122 F.4th 740, 747 (2024). But nothing in the County Ordinance even attempts to

---

[3] In addition to being distinguishable from the facts of this case, it is doubtful that *Geo Group* can be reconciled with *McHenry County*'s requirement that regulation of the federal government be direct before it can be considered impermissible. 44 F.4th at 592-593. The regulation in *Geo Group* simply banned *all* private detention facilities, which the *Geo Group* dissent recognized is only an "indirect regulation of the government." 50 F.4th at 763 (Murguia, J., dissenting).

17

regulate private activity – again, it regulates only County activity using County funds and resources.

Regarding discrimination, the United States' claims are also factually deficient. While the United States complains that other government entities receive the information it desires, Dkt. 50 at 30, it does not allege that these other entities have also refused to reimburse the County for its expenses. Given that the County Ordinance focuses specifically on reimbursement, that is a material gap in the complaint, and that gap cannot be filled by speculation. *See Twombly,* 550 U.S. at 555.

## IV.   The Dismissal Of The United States' Claims For Failure To State A Claim Should Be With Prejudice.

Finally, the United States does not dispute that the defects in its claims cannot be cured by an amendment. Accordingly, it has forfeited any argument on that subject, so any dismissal on the merits should be with prejudice, without leave to amend.

Moreover, the United States does little to distinguish *McHenry County*, which is binding precedent on this court and forecloses any claims of conflict preemption. The United States' assertion that here both the Federal Government and State "seek to regulate private individuals," Dkt. 50 at 24, is unsupported and plainly wrong. The County Ordinance regulates how its limited law enforcement resources are expended, specifically, requiring the Cook County Sheriff to decline the federal government's requests for detainer and requests for information. The federal laws at issue, §§1373 and 1644, seek to regulate State and local government entities and officials, not private individuals. 8 USC §1373(a), 8 USC §1644. The Seventh Circuit in *McHenry County* cited the "broad rule" that a "valid preemption provision 'must be read as one that regulates private actors.'" 44 F.4th at 587 (citing *Murphy v. NCAA*, 584 U.S. 453, 477 (2018)). Since no amount of amending can change the fact that §§1373 and 1644 regulate state and local government entity,

and not private, actors, the United States' preemption arguments fail and dismissal should be with prejudice.

**Conclusion**

WHEREFORE, Defendant Cook County respectfully requests that this Court dismiss the United States' claims against the County for lack of Article III jurisdiction. In the alternative, the County requests that this Court dismiss those claims for failure to state a claim, with prejudice.

Respectfully submitted,

Dated April 29, 2025                          EILEEN O'NEILL BURKE

State's Attorney of Cook County

By:   *s/ Jessica M. Scheller*

| | |
|---|---|
| Silvia Mercado Masters | Jessica M. Scheller |
| Edward M. Brener | Deputy Chief; Civil Actions Bureau |
| Jessica L. Wasserman | Prathima Yeddanapudi |
| Assistant State's Attorneys | Chief; Advice, Business & Complex |
| Civil Actions Bureau | Litigation Division |
| 500 W. Richard J. Daley Center | Jonathon Byrer |
| Chicago, IL 60602 | Supervisor, Appeals & Special Projects |
| (312) 603-6934 | Megan Honingford |
| (312) 603-5463 | Assistant State's Attorneys |
| | Jessica.Scheller@cookcountysao.org |
| | Prathima.Yeddanapudi@cookcountysao.org |

19
