**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         *Plaintiff*,<br><br>   v.<br><br>STATE OF ILLINOIS; JB PRITZKER, Governor of Illinois, in his Official Capacity; THE CITY OF CHICAGO; BRANDON JOHNSON, Mayor of Chicago, in his Official Capacity; LARRY SNELLING, Chicago Police Superintendent, in his Official Capacity; COOK COUNTY, ILLINOIS; COOK COUNTY BOARD OF COMMISSIONERS; TONI PRECKWINKLE, President of the Cook County Board of Commissioners, in her Official Capacity; THOMAS J. DART, Cook County Sheriff, in his Official Capacity,<br><br>         *Defendants*. | Case No. 1:25-cv-1285<br><br>Hon. Lindsay C. Jenkins |

**DEFENDANTS CITY OF CHICAGO, BRANDON JOHNSON, AND LARRY
SNELLING'S REPLY IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

    I.      The WCO Is Not Preempted. ............................................................... 2

          A.     The WCO is not preempted under conflict preemption principles. ........... 2

          B.     The Tenth Amendment protects the City's decision not to assist with civil immigration enforcement. ................................................................. 6

          C.     The WCO's information sharing restrictions are not expressly preempted by 8 U.S.C. §§ 1373 and 1644. ............................................... 9

               1.     Sections 1373 and 1644 are not preemption provisions. ............... 10

               2.     Sections 1373 and 1644 are unconstitutional under the Tenth Amendment and, as invalid laws, cannot preempt the WCO. ...... 10

               3.     The WCO is not preempted by sections 1373 and 1644 because it does not run afoul of those sections. ........................................... 12

    II.     The WCO Does Not Violate Intergovernmental Immunity By Discriminating Against The Federal Government. ........................................................ 15

    III.    The WCO Does Not Violate Intergovernmental Immunity By Directly Regulating The Federal Government. ........................................................................... 18

CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................................ 9, 15

*City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) ................................................. 19

*City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018) ............................... 11

*City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) .............................................. 4

*City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) ............................................... 6

*City of Los Angeles v. Sessions*, CV 18-7347-R, 2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) .... 6

*Colorado v. U.S Dep't of Just.*, 455 F. Supp. 3d 1034 (D. Colo. 2020) ........................ 10

*County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020) ........................... 3, 5, 6

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ........................................ 4

*Davis v. Elmira Sav. Bank*, 161 U.S. 275 (1896) .......................................................... 4

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ........................... 14

*F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216 (2013) ................................... 6

*Fedorenko v. United States*, 449 U.S. 490 (1981) ......................................................... 9

*Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) .......................................... 20

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...................................................................... 4

*Hodel v. Va. Surface Mining and Reclamation Ass'n*, 452 U.S. 264 (1981) ................... 7

*Jama v. ICE*, 543 U.S. 335 (2005) ............................................................................... 9

*McHenry County v. Raoul*, 44 F. 4th 581 (7th Cir. 2022) ..................................... passim

*Murphy v. Nat'l Collegiate Athletic Ass'n.*, 584 U.S. 453 (2018) ...................... 7, 8, 10

*Nash v. Fla. Indus. Comm'n*, 389 U.S. 235 (1967) ....................................................... 4

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ............................................................................................................. 13

*Ocean Cty. Bd. of Comm'rs v. Att'y Gen. of State of New Jersey*, 8 F.4th 176 (3d Cir. 2021) ..... 10

*Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041 (7th Cir. 2013) ................................................ 9

*Printz v. United States*, 521 U.S. 898 (1997) ...................................................................8, 11, 18

*R. J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170 (8th Cir. 2023) ............................... 15

*Reno v. Condon*, 528 U.S. 141 (2000) ...........................................................................................11

*United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal. 2018) (*California I*)...... 3, 12, 13, 14

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) (*California II*) ........................... passim

*United States v. California*, No. 2:18-cv-721-WBS-DB, 2018 WL 5780003 (E.D. Cal. Nov. 1, 2018) ................................................................................................................................... 17

*United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012)........................................................... 6

*United States v. King County*, 122 F.4th 740 (9th Cir. 2024).......................................... 17, 18, 20

*United States v. Washington*, 596 U.S. 832 (2022) .................................................................... 18

## Statutes

8 U.S.C. § 1357(g) ......................................................................................................................... 5

8 U.S.C. § 1360(a) ....................................................................................................................... 13

8 U.S.C. § 1360(b) ....................................................................................................................... 13

8 U.S.C. § 1373 ..................................................................................................................... passim

8 U.S.C. § 1644.................................................................................................................9, 10, 11, 12

MCC § 2-173-020(a).......................................................................................................... 12, 15, 16

MCC § 2-173-030(a)........................................................................................................... 14, 16, 19

## Other Authorities

American Immigration Council, *Sanctuary Policies: An Overview*, February 21, 2025 (available at https://www.americanimmigrationcouncil.org/research/sanctuary-policies-overview) ......... 6

## Constitutional Provisions

U.S. Const., Amend. X.................................................................................................................... 9

## INTRODUCTION

The City's Welcoming City Ordinance ("WCO") is an exercise of the City's fundamental police power to keep its residents safe. It leaves the police free to fight Chicago crime rather than divert to federal civil immigration enforcement. And it enables law enforcement to maintain crucial communication channels with immigrant residents, which helps the police gain necessary information to prevent and solve crimes.

Courts presume that exercises of the City's police power are not preempted by federal law. To overcome this, Congressional intent to preempt must be clear. But nothing in the Immigration and Nationality Act ("INA") establishes preemption. The INA regulates the admission and removal of aliens from the country, and the role of federal immigration officials in enforcing immigration laws. The WCO, in contrast, regulates City employees and removes them from the realm of civil immigration enforcement. There is no conflict between the INA and the WCO. Under the INA, the City is free to decide whether to participate in federal efforts.

The City's decision to opt out of civil immigration enforcement also does not unlawfully regulate or discriminate against the federal government. The WCO is a regulation of the City's workforce, not federal agents. And declining to assist with civil immigration enforcement, an exclusively federal domain, is not discrimination.

The Tenth Amendment, moreover, is a backstop that precludes all of Plaintiff's legal theories. Through its claims, Plaintiff seeks to compel City employees to respond to and assist with federal immigration enforcement efforts. But the Tenth Amendment prevents the federal government from commandeering the City to execute the administration's immigration policies.

Plaintiff's response does nothing to save its claims. Plaintiff rehashes legal theories and characterizations of the WCO that have been rejected by courts, including the Seventh Circuit,

time and again. Plaintiff has no answer to these cases, and barely mentions them. Plaintiff's claims all fail as a matter of law and should be dismissed with prejudice.

## ARGUMENT

### I. The WCO Is Not Preempted.

#### A. The WCO is not preempted under conflict preemption principles.

As the City explained, the WCO does not conflict with the INA. Aside from sections 1373 and 1644 (addressed below in Part I.C), the INA does not regulate state or local governments. It regulates the entry and removal of aliens and the duties and powers of federal agents. The INA also is clear that state and local governments may choose whether to participate in federal efforts. So it cannot conflict with the INA for the City to decline, even if that leads the federal government to use more of its own resources. *See* Dkt. 35 (City Mem.) at 9-13.

Plaintiff responds that the WCO is a preempted obstacle to federal immigration enforcement because it prevents police from helping federal agents by handing over detainees in response to immigration detainers and administrative warrants, or by communicating release dates. Plaintiff claims that this makes federal agents stake out local detention facilities and independently locate aliens for arrest. Plaintiff also contends that the WCO prevents police from supplying information ICE needs to obtain judicial warrants. Dkt. 50 (Pl. Opp.) at 21-22.[1]

Courts have already rejected this preemption theory. In *United States v. California*, 921 F.3d 865 (9th Cir. 2019) (*California II*), the court examined a California statute with the same allegedly obstructive features as the WCO—it prohibited law enforcement from "transfer[ing] an individual to immigration authorities" without a judicial warrant and precluded sharing release

---

[1] Plaintiff provides no basis for its contention that judicial warrants depend on information uniquely within CPD's possession, rather than available from other sources. Regardless, if an entity is pursuing a criminal investigation, CPD may respond. *See* Dkt. 35 at 5.

date information. *Id.* at 876. Like here, Plaintiff contended that this meant federal agents would have to "stake out" jails indefinitely because they "would not otherwise know if and when any given alien would be released," *id.* at 888, and would "have a more difficult time finding immigrants after the fact," *United States v. California*, 314 F. Supp. 3d 1077, 1104 (E.D. Cal. 2018) (*California I*). Similarly, in *County of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020), Plaintiff argued that a New Jersey "prohibition on sharing an inmate's release date with DHS undercuts DHS's ability to execute administrative warrants" and "fulfill the [INA's] mandatory detention obligation." *Id.* at 380 (cleaned up).

These allegations failed to establish obstacle preemption for the simple reason that "refusing to help [federal efforts] is not the same as impeding." *California II*, 921 F.3d at 888 (quoting *California I*, 314 F. Supp. 3d at 1104). As *California II* explained, it may be that "[f]ederal schemes are inevitably frustrated when states opt not to participate in federal programs or enforcement efforts," but that choice "cannot be invalid under the doctrine of obstacle preemption where," as under the INA, states retain "the right of refusal." *Id.* at 890. Likewise, *County of Ocean* held that there was no obstacle preemption, even if the non-cooperation led the federal government to "expend extra efforts and resources to apprehend aliens who are subject to removal." 475 F. Supp. 3d at 382. As the court wrote, "[m]erely because a state law 'inconveniences' the federal government does not render it preempted;" rather, "the repugnance must be so direct and positive that the two acts cannot be reconciled or consistently stand together." *Id.* (quoting *California I*, 314 F. Supp. 3d at 1088).

The Seventh Circuit views the WCO and the INA in the same fundamental way. In the prior JAG litigation against the City, *see* Dkt. 35 at 1-2 & 5-6, the Seventh Circuit concluded that declining to "inform[] the federal authorities when persons are in [local law enforcement]

3

custody and provid[e] access to those persons at the local law enforcement facility" does not "*interfere*[]" with or "thwart" federal immigration authorities. *City of Chicago v. Sessions*, 888 F.3d 272, 282 (7th Cir. 2018) (emphasis in original). And in *McHenry County v. Raoul*, 44 F. 4th 581 (7th Cir. 2022), which relied on *California II* to reject an obstacle preemption challenge under the INA, the court explained that preemption does not arise where a state law denies cooperation that the federal government "hoped or expected" to receive. *Id.* at 591-92. *See also California II*, 921 F.3d at 887 ("Even if Congress had every expectation" that local law enforcement would cooperate, "it is a state's historic police power—not preemption—that we must assume, unless clearly superseded by federal statute.").

The City discussed these cases in its opening brief, yet Plaintiff barely responds, much less distinguishes them. Nor does Plaintiff cite any case holding that non-participation provisions like the WCO's are preempted "obstacles" to the INA. Plaintiff cursorily cites *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Nash v. Fla. Indus. Comm'n*, 389 U.S. 235 (1967); *Hines v. Davidowitz*, 312 U.S. 52 (1941); and *Davis v. Elmira Sav. Bank*, 161 U.S. 275 (1896). *See* Dkt. 50 at 19, 21-22. But these cases are inapposite because they involved different federal and state statutory regimes than those at issue here. Indeed, Plaintiff invoked these same cases in *California II*, but the court dismissed them as distinguishable from the obstacle preemption issue raised under the INA. *See* 921 F.3d at 888-89 & n.14. And while Plaintiff argues that, under *Davis*, a state law is preempted merely when it "impair[s] the efficiency of" federal efforts, Dkt. 50 at 19, *Davis* is a non-immigration case that is over a century old. Moreover, *Davis* found conflict preemption because the state law at issue gave a "contrary command" to that in the federal statute, resulting in "an absolute repugnancy between" the two provisions. 161 U.S. at 284. But here, there is no such "irreconcilability" between a local and federal statute. *California*

4

*II*, 921 F.3d at 882. The WCO does not impose commands contrary to those in the INA. It merely directs City employees not to assist with certain federal efforts that the INA assigns to federal officials.

Plaintiff fares no better in emphasizing the federal government's role under 8 U.S.C. sections 1226 and 1231 in detaining aliens. *See* Dkt. 50 at 20-21. These provisions do not support obstacle preemption because they "direct *federal* activities, not those of state or local governments." *California II*, 921 F.3d at 887. *See also id.* at 873. "[T]he clear command of sections 1226 and 1231(a)(1) . . . place[s] the burden of complying with the INA on the federal government," and imposes "no duty to assist the federal government" on state and local law enforcement agencies." *Cty. of Ocean*, 475 F. Supp. 3d at 382, 380. Conversely, the WCO does not intrude upon any federal responsibilities under the INA. Like the New Jersey Trust Directive upheld in *County of Ocean*, the WCO "does not give anyone the right to remain in the country, or set limits on whom federal authorities can detain or when or where they can detain them." 475 F. Supp. 3d at 381. The WCO regulates only the duties and actions of City employees, and "does not encroach onto the regulation of immigration." *Id.* at 382

Plaintiff cites no INA provision requiring state or local assistance in these federal matters. To the contrary: state and local participation is voluntary. *See* 8 U.S.C. § 1357(g)(9); *see also Cty. of Ocean*, 475 F. Supp. 3d at 381 ("There is no indication that Congress, in enacting the INA, sought to usurp . . . the State's police power to regulate the conduct of its own law enforcement agencies."); Dkt. 35 at 10. This includes responding to detainer requests—the primary way federal authorities communicate their wish to arrest an alien upon the alien's release from local custody. *See* Dkt. 35 at 11-12. *See also California II*, 921 F.3d at 887 ("[N]othing in the federal regulatory scheme require[es] States to alert federal agents before releasing a state or

5

local inmate."). The INA does not preempt the freedom of state and local governments to choose to focus on local law enforcement rather than federal immigration objectives. *See McHenry Cty.*, 44 F. 4th at 589; *California II*, 921 F.3d at 889; *City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018). *See also* Dkt. 35 at 9-13.[2]

For these reasons, the WCO does not conflict with the INA, and Count I fails.

### B. The Tenth Amendment protects the City's decision not to assist with civil immigration enforcement.

Plaintiff's conflict preemption claim fails for a second reason: the Tenth Amendment's anticommandeering doctrine prohibits state and local government employees from being forced to assist with federal civil immigration enforcement. It protects the City's freedom under our federal system to focus on fighting local crime instead. Plaintiff's reading of the INA as obligating the City to participate in federal efforts is therefore impermissible under the Tenth Amendment. *See* Dkt. 35 at 13-15.

In response, Plaintiff argues that the anticommandeering doctrine "is not implicated" here because the INA regulates private persons (aliens), rather than government entities. Dkt. 50 at 23. Therefore, Plaintiff says, this case poses a conventional obstacle preemption scenario of the kind alluded to in *Murphy v. Nat'l Collegiate Athletic Ass'n.*, 584 U.S. 453 (2018), where "the Federal

---

[2] *Amici curiae* Ohio and other States argue that the WCO is preempted by 8 U.S.C. §1324(a)(1)(A)(iii), which imposes criminal liability for "conceal[ing], harbor[ing], or shield[ing] [an illegal alien] from detection." Dkt. 55 at 2, 14-17. But Plaintiff does not make this argument, which is reason enough to reject it. *See F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 n.4 (2013). And the argument is wrong. The statutory provision is narrow; it "grew out of the prohibition of smuggling aliens into the United States." *United States v. Costello*, 666 F.3d 1040, 1045 (7th Cir. 2012). It has never been applied to a state or local official for declining to cooperate with federal immigration enforcement. *See* American Immigration Council, *Sanctuary Policies: An Overview*, February 21, 2025 (available at https://www.americanimmigrationcouncil.org/research/sanctuary-policies-overview). And "an interpretation of Section 1324(a) that would apply to States and local governments and subject them to criminal punishment would be a violation of the Tenth Amendment." *City of Los Angeles v. Sessions*, CV 18-7347-R, 2019 WL 1957966, at *5 (C.D. Cal. Feb. 15, 2019).

Government and the State both seek to regulate private individuals," and Plaintiff seeks only to "preempt[] the State from interfering with federal regulation of private parties." *Id.* at 24-25.

This "private individuals only" framing is specious. The City law that Plaintiff wishes to preempt (the WCO) regulates government actors—City employees—not private parties.[3] And the relief sought by Plaintiff would likewise regulate government actors—those same City employees. Under Plaintiff's reading of the INA, City employees would be affirmatively "requir[ed]" to "take the steps necessary" to "turn[] aliens over" to federal custody, to "honor[]" detainers and administrative warrants, to "grant" access to detainees for investigatory purposes, and to respond to requests for information about detainees. *Id.* at 21-22, 25. The Tenth Amendment prevents precisely this imposition of federal control over state and local officers. Numerous courts have so held, *see* Dkt. 35 at 14-15, and Plaintiff offers no response to those cases. Indeed, preemption cannot be used to impose affirmative obligations like those sought here.

To be sure, the INA includes provisions addressing private aliens. But those are not a talisman that precludes application of the anticommandeering doctrine where, as here, Plaintiff attempts to use the INA to *also* compel City action. Indeed, the federal law addressed in *Murphy* had provisions regulating private actors in addition to the provision unconstitutionally commanding States not to approve sports gambling. *See* 584 U.S. at 480. So too for the statutory

---

[3] For this reason, Plaintiff is not helped by citing *Hodel v. Va. Surface Mining and Reclamation Ass'n*, 452 U.S. 264 (1981), for the proposition that the Tenth Amendment does not "limit[] congressional power to preempt or displace state regulation of private activities." Dkt. 50 at 24. The WCO does not regulate private activities. *See California II*, 921 F.3d at 889, n.15 (deeming *Hodel* inapposite because state statute "govern[ed] how California and its localities can interact with the federal government, not the activities of private individuals"). Moreover, *Hodel* found no commandeering problem because the States "[were] not compelled to enforce" federal provisions or "participate in the federal regulatory program in any manner whatsoever." 452 U.S. at 288. Here, though, Plaintiff seeks to force the City to assist with a federal enforcement program.

7

scheme in *Printz v. United States*, 521 U.S. 898 (1997), which imposed requirements on private firearms dealers in addition to the unconstitutional requirement that local law enforcement officers conduct background checks. *Id.* at 902-03. Here, as well, the sections of the INA regulating aliens do not immunize Plaintiff's effort to compel state and local cooperation. A contrary rule would allow Congress to skirt the Tenth Amendment by peppering regulations of private parties into statutes commandeering state and local governments. The Constitution is not so facilely evaded.

Nor is Plaintiff helped by saying that it wants only to prevent Defendants from "interfering with" federal efforts. Dkt. 50 at 24-25. For one, as explained above, the WCO creates no "interference;" it only removes City employees from civil immigration enforcement. More importantly, because this non-assistance results from the WCO, what Plaintiff really seeks is to prevent the City from having the WCO at all. But under *Murphy*, that denial of local lawmaking authority violates the anticommandeering doctrine. *Murphy* struck down a federal statute that prevented States from having a certain law—they could not enact legislation "authoriz[ing]" sports gambling. 584 U.S. at 461. The Court held that "there is simply no way to understand" this prohibition on state legislation "as anything other than a direct command to the States. And that is exactly what the anticommandeering doctrine does not allow." *Id.*; *see also Printz*, 521 U.S. at 920 ("[T]he Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States.").

Last, Plaintiff contends that there is no commandeering problem because state and local assistance is not compelled, but is simply a condition imposed in exchange for the INA allowing States to enforce state criminal laws before the federal government seeks deportation. Dkt. 50 at 24-25. This argument has no support in the INA or caselaw. The INA includes no such quid-pro-

quo. And one cannot be implied, especially where its terms are so draconian—a State's refusal would preclude it from enforcing its own criminal laws in its own courts. *See Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply."); *Fedorenko v. United States*, 449 U.S. 490, 513 (1981) ("We are not at liberty to imply a condition which is opposed to the explicit terms of the statute."). Implying such terms, moreover, would do violence to the principle that state and local police powers are not preempted unless that "was the clear intent of Congress." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013). *See also Arizona v. United States*, 567 U.S. 387, 400 (2012).

Plaintiff's argument is not an answer to the commandeering problem but a further manifestation of it: Barring a State from enforcing its own criminal law unless it helps enforce federal immigration law would exert undue coercion over the State, leaving it with no choice but to serve as an instrument of the federal government. The Tenth Amendment does not permit that. Plaintiff's conflict preemption claim should be dismissed.[4]

C. **The WCO's information sharing restrictions are not expressly preempted by 8 U.S.C. §§ 1373 and 1644.**

Sections 1373 and 1644 do not expressly preempt the WCO, for three reasons. *See* Dkt. 35 at 16-22. Plaintiff offers nothing that saves its express preemption claim.

---

[4] Plaintiff also cites the Constitution's Extradition Clause, *see* Dkt. 50 at 26, but that clause is an express provision of the Constitution, meaning the obligations it places on States are part of the Constitutional design. No express provision of the Constitution requires States to assist federal immigration enforcement, and the Tenth Amendment preserves State and local authority to decline. *See* U.S. Const., Amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").

### 1. Sections 1373 and 1644 are not preemption provisions.

First, sections 1373 and 1644 lack preemptive force because they regulate government actors, not private parties. As *Murphy* makes clear, preemption doctrine is implicated when a federal statute regulates private actors. But sections 1373 and 1644 regulate government agencies and officials, for they prohibit those entities from restricting the maintaining or sharing of certain information. For this reason, *Ocean Cty. Bd. of Comm'rs v. Att'y Gen. of State of New Jersey*, 8 F.4th 176, 182 (3d Cir. 2021), and *Colorado v. U.S Dep't of Just.*, 455 F. Supp. 3d 1034, 1059 (D. Colo. 2020), held that these statutes do not preempt state laws. *See* Dkt. 35 at 16-18.

Plaintiff does not attempt to distinguish these cases. And contrary to Plaintiff's suggestion, Dkt. 50 at 34-35, this is not a case where a federal statute only "appear[s] to operate directly on the States" but really preempts state regulation of private actors. *Murphy*, 584 U.S. at 478 (discussing 49 U.S.C. App. § 1305(a)(1), which preempts state regulation of certain aspects of *private* airline operations). Sections 1373 and 1644 do not seek to prevent the City from regulating private parties. Rather, they prevent the City from restricting "any government entity or official" (section 1373) or "any State or local government entity" (section 1644) from maintaining or sharing citizenship or immigration status information. Like the statute invalidated in *Murphy*, "there is no way in which [these] provision[s] can be understood as a regulation of private actors." *Id.* at 479-80. Plaintiff's express preemption claim fails for this reason alone.

### 2. Sections 1373 and 1644 are unconstitutional under the Tenth Amendment and, as invalid laws, cannot preempt the WCO.

Plaintiff's express preemption claim also fails because sections 1373 and 1644 are unconstitutional—and therefore cannot preempt anything—because they commandeer state and local governments in violation of the Tenth Amendment. As just explained, and again like the statute struck down in *Murphy*, they directly prohibit the City from adopting a particular kind of

10

law or policy (one restricting the maintaining or sharing of information by its workforce). They amount to unconstitutional direct commands to state and local officials, as numerous courts have held. *See* Dkt. 35 at 18-20.

Plaintiff ignores these cases. Its lone response is that sections 1373 and 1644 merely address information sharing with the federal government and that, under *Printz*, such statutes do not commandeer state government. Dkt. 50 at 35. There is nothing to this. Indeed, *Printz* expressly declined to address whether information sharing statutes amount to unlawful commandeering. *See* 521 U.S. at 918 (the validity of such statutes is "not before us"). *See also City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 871 (N.D. Ill. 2018) (explaining this portion of *Printz*). And regardless, sections 1373 and 1644 are unconstitutional under the rule of *Murphy*, because they command States and local governments not to enact certain policies regulating their workforces. Dkt. 35 at 18-19. As Judge Leinenweber explained, section 1373 "prohibits certain rule making by state policymakers," and therefore "presents more like the statute in *Murphy*" than the pure information-sharing provisions *Printz* discussed in *dicta*. *Sessions*, 312 F. Supp. 3d at 872. Other courts have likewise held that an information-sharing exception under *Printz* would not save sections 1373 and 1644 in the wake of *Murphy*, because the statutes restrict the lawmaking ability of state and local officials. *See* City Mem. at 19-20 (citing cases). Because sections 1373 and 1644 violate the Tenth Amendment by purporting to control state and local policymaking, they cannot preempt the WCO's information sharing restrictions.[5]

---

[5] Plaintiff also argues that, under *Reno v. Condon*, 528 U.S. 141 (2000), federal statutes may "regulate[ ] the States as the owners of data bases" consistent with the Tenth Amendment. Dkt. 50 at 35. But that overstates *Reno*. That case addressed a law of general applicability that regulated private and government database owners equally. It did not address laws commanding only government actors. Courts have thus held that *Reno* does not save section 1373. *See Sessions*, 321 F. Supp. 3d at 868-89 ("Section 1373 does not evenhandedly regulate activities in which both private and government actors engage. Thus, the saving grace of *Reno* does not apply here."). *See also California II*, 921 F.3d at 890.

11

### 3. The WCO is not preempted by sections 1373 and 1644 because it does not run afoul of those sections.

Even if sections 1373 and 1644 were valid preemption statutes, the WCO's information sharing provisions are not preempted by them. Dkt. 35 at 20-21. Section 1373 only prohibits state and local restrictions on maintaining or sharing information "regarding [a person's] citizenship or immigration status." 8 U.S.C. § 1373(a), (b).[6] It therefore does not preempt subsection -020(a)(3) of the WCO because that subsection restricts different information—a person's "custody status, release date, or contact information." MCC § 2-173-020(a)(3).

Plaintiff argues that section 1373(a) also extends to aliens' contact information and release dates. Dkt. 50 at 35. But numerous courts have rejected this argument, holding that section 1373(a) covers only citizenship and immigration status information. *See* Dkt. 35 at 20-21, n.7 (citing cases). Plaintiff cites no case construing section 1373 in its favor. Instead, citing the Supreme Court's construction of the word "respecting" in *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709 (2018), Plaintiff argues that the word "regarding" in section 1373(a) has a broadening effect, making the phrase "citizenship or immigration status" information reach custody status and release dates. Dkt. 50 at 35-37. But both the district court and the Ninth Circuit in *California* rejected that argument. *See California I*, 314 F. Supp. 3d at 1102-04; *California II*, 921 F.3d 865, 891-92. And they were correct to do so.

*Lamar* held that, under the Bankruptcy Code, a debtor's statement about a single asset could be a statement "respecting" the debtor's financial condition. 584 U.S. at 719-720. But that construction of the Bankruptcy Code is inapplicable to the INA, a very different statute. And under section 1373(a)'s plain text, release date and contact information is not information

---

[6] As the City explained, section 1644 covers only "immigration status" and so is subsumed within section 1373. Dkt. 35 at 20. Plaintiff makes no separate argument regarding section 1644. *See* Dkt. 50 at 34-38.

"regarding" citizenship or immigration status, even if release date or contact information "might assist" federal immigration enforcement efforts. *See California I*, 314 F. Supp. 3d at 1103. Neither ordinary persons nor Congress would understand release date and contact information as information "regarding… citizenship or immigration status." *See California II*, 921 F.3d at 891.

What's more, *Lamar* was not a preemption case, and so did not confront the presumption against preemption. *See California I*, 314 F. Supp. 3d at 1103 (rejecting application of *Lamar* for this reason). But Plaintiff's broad reading of section 1373(a) runs headlong into that presumption, because it would vastly increase the scope and, consequently, the preemptive sweep of section 1373(a) beyond just citizenship and immigration status information. *See id.* at 1102-03 (Plaintiff's broad reading of "citizenship or immigration" status information "could conceivably mean everything in a person's life," because "[u]nder the INA, almost every bit of information about an individual could be relevant to status, particularly with respect to the right to asylum or as a defense to removal.") (cleaned up). *See also New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (if words like "'relate to' were taken to extend to the furthest stretch of [their] indeterminacy, then for all practical purposes pre-emption would … stop nowhere").

Plaintiff appeals to the "overall structure of the statute as a whole," Dkt. 50 at 36, but that only further weakens Plaintiff's claim. Elsewhere in Title 8, Congress used "more expansive phrases… when intending to reach broader swaths of information." *California II*, 921 F.3d at 892 (citing 8 U.S.C. § 1360(a) (mandating the inclusion of "such other relevant information as the Attorney General shall require as an aid" to the creation of a central index of noncitizens entering the country); *id.* § 1360(b) ("Any information in any records kept by any department or agency of the Government as to the identity and location of aliens in the United States shall be

13

made available to the Service upon request."). Congress easily could have taken the same drafting approach in section 1373(a) if it wished to include release date and contact information within its sweep. It chose not to do so. And given the unambiguous plain language of section 1373(a), Plaintiff's recourse to legislative history, Dkt. 50 at 36-37, is not warranted. If anything, the legislative history cuts against Plaintiff, *see California II*, 921 F.3d at 892 n.18, but the critical point here is that "the authoritative statement is the statutory text, not the legislative history," and courts do not consult extrinsic materials where, as here, statutory terms are unambiguous. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).[7]

Finally, section 1373 does not preempt the other information sharing provision in the WCO, subsection -030(a)(1). While that subsection restricts the maintaining or sharing of the same type of information addressed in section 1373—"citizenship or immigration status" information—it also has a saving clause that causes its restriction on maintaining and sharing to yield when "required to do so by statute." MCC § 2-173-030(a)(1). And in the terms of the savings clause, section 1373 is a "statute" that "require[s]" that there be no prohibition on maintaining and sharing citizenship or immigration information. *See id.* Subsection -030(a)(1)'s restriction on sharing citizenship and immigration status information therefore gives way in the face of section 1373, and there is nothing left in subsection -030(a)(1) to be preempted by section 1373. Dkt. 35 at 21-22.

---

[7] Nothing should be read into Congress' omission of "regarding" from section 1373(c), which requires federal officials to respond to requests seeking to verify or ascertain citizenship or immigration status information. *See* Dkt. 50 at 36. Omitting the word in section 1373(c) does not somehow imbue the word with a broad sweep in section 1373(a). *See California II*, 921 F.3d at 892. And in arguing that the omission shows the significance of "regarding" in section 1373(a), Plaintiff relies on *California I*, which *rejected* Plaintiff's argument on this point, explaining that section 1373(a) and section 1373(c) are not "otherwise-parallel," Dkt. 50 at 36—they address different holders of information, and that, due to those differences, the absence of "regarding" in 1373(c) makes sense. *See California I*, 314 F. Supp. 3d at 1103-04.

14

Plaintiff argues that the savings clause is not triggered because section 1373 is not a statute that "require[s]" state and local governments to share information, but only "prohibits restrictions" on those activities. Dkt. 50 at 38. Plaintiff cites no support for this reading of the WCO's savings clause, and it is wrong, as just explained. Moreover, because it results in subsection -030(a)'s restriction falling away, the City's interpretation of the savings clause avoids preemption by section 1373(a), and courts should adopt such constructions where possible. Dkt. 35 at 22 (quoting *Arizona*, 567 U.S. at 415); *see also R. J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1176 (8th Cir. 2023) (relying on savings clause to adopt a plausible reading that avoided preemption). Accordingly, sections 1373 and 1644 do not expressly preempt WCO subsections -020(a)(1) and -030(a).

## II. The WCO Does Not Violate Intergovernmental Immunity By Discriminating Against The Federal Government.

The WCO does not discriminate against the federal government. As the City explained, declining to participate in federal immigration enforcement is not discrimination. There is no entity similarly situated to the federal government that the WCO treats more favorably. And the Tenth Amendment's anticommandeering rule precludes a discrimination claim here, because, through that claim, Plaintiff seeks to compel City participation in federal immigration enforcement efforts. Dkt. 35 at 22-24.

In response, Plaintiff points to WCO section -020, which states, "No agent or agency shall participate in civil immigration enforcement operations or assist the civil enforcement of federal immigration law," and lists specific civil enforcement activities that are not permitted. MCC § 2-173-020(a).[8] Among these, City employees may not allow ICE to use "[City] facilities

---

[8] Plaintiff's discrimination argument does not contest subsection -030 of the WCO, which states that "no agent or agency shall request, maintain, or share the citizenship or immigration status of any person (continued)

for investigative interviews or other investigative purpose." *Id.* -20(a)(2)(B). City employees also may not "expend their time responding to ICE inquiries or communicating with ICE regarding a person's custody status, release date, or contact information." *Id.* -20(a)(3). Plaintiff argues that these provisions discriminate against the federal government because they "facially target[] ICE and only ICE," while allowing the City to provide access and information to "the public and other law enforcement agencies." Dkt. 50 at 30.

*McHenry County* forecloses this theory. *See* Dkt. 35 at 24. That case addressed an Illinois law that, like the WCO, restricted government entities from assisting with federal immigration enforcement—specifically, it prevented them from letting federal immigration agencies use state or county facilities to house detained migrants. But as the Seventh Circuit explained, a "refusal to cooperate in the immigration context—a possibility contemplated by the [INA]—does not constitute discrimination against the federal government." 44 F.4th at 594 n.7. Because the Illinois law "affect[ed] an exclusively federal domain," the plaintiffs "[could not] identify any actors 'similarly situated' to the federal government that receive[d] more favorable treatment under the Act." *Id.* at 594. So too here. The WCO only precludes access and information on matters of civil immigration enforcement, a federal domain. And Plaintiff cannot identify a non-federal entity that the City aids in enforcing civil immigration law. Indeed, the WCO does not permit such assistance to any such entities, because any assistance on civil immigration enforcement is prohibited. *See* MCC § 2-173-020(a). Thus, there is no non-federal entity similarly situated to ICE that is treated more favorably under the WCO.

_____

unless such disclosure has been authorized in writing by the individual to whom such information pertains." MCC § 2-173-030(a)(1). Indeed, it prevents City employees from sharing information about citizenship or immigration status *with anyone*, except in certain circumstances (*i.e.*, when "required to so by statute, federal regulation, court order, or a lawfully issued judicial warrant").

Plaintiff attempts to distinguish *McHenry County* by calling the Illinois law in that case "innocuous" whereas the WCO is "discriminator[y]." Dkt. 50 at 31-32. But that is not a relevant distinction. While the court did quote *California II*'s use of the word "innocuous," the Seventh Circuit's analysis turned on whether the law treated the federal government differently from similarly situated entities, holding that it did not. 44 F.4th at 594. *McHenry County* is directly on point.[9] In contrast, *United States v. King County*, 122 F.4th 740 (9th Cir. 2024), cited by Plaintiff, found discrimination because there *were* entities treated more favorably than the federal government in the relevant domain, *id.* at 757. There, the local government prohibited private airline support companies from contracting with ICE for deportation flights, but allowed them to support flights by non-ICE entities. *Id*. ICE was therefore uniquely denied flight services allowed to others. But here, ICE is not uniquely denied civil immigration enforcement services; under the WCO, no entity receives those services from the City.[10]

Finally, the City explained that the Tenth Amendment's anticommandeering principle precludes Plaintiff's claim that, by declining to provide access and information to federal immigration agencies, the WCO unlawfully discriminates against the federal government. If that theory were valid, the cure would be for the City to provide the assistance—but the Tenth Amendment prevents that result from being imposed on the City. *See* Dkt. 35 at 24.

---

[9] *California II* itself likewise did not turn on whether the challenged provision was "innocuous." There, the state law required employers to alert employees before federal immigration inspections. 921 F.3d at 872. The Ninth Circuit held that the law did not discriminate against the federal government because it did "not treat the federal government worse than anyone else." *Id.* at 881.

[10] For this same reason, *United States v. California*, No. 2:18-cv-721-WBS-DB, 2018 WL 5780003 (E.D. Cal. Nov. 1, 2018), is inapposite. There, a state statute imposed certain requirements on purchasers of federal lands, creating unique "uncertainty and potential delay" for purchasers dealing with the federal government. *Id.* at *5.

Plaintiff argues that no commandeering occurs when ICE merely accesses public locations and information. Dkt. 50 at 34 (citing *King Cty.*, 122 F.4th at 758). But Plaintiff wants City employees to provide access and information *not* available to the public. *See id.* at 22-23. And, again, *King County* is inapposite. There, the county order restricted *private* companies from partnering with ICE, so the effect of enjoining the law was to allow *private* cooperation with the federal government. *See* 122 F. 4th at 758. Private entities working with the federal government do not present a commandeering issue. But the court distinguished that scenario from one where "[*county*] officials are being conscripted into carrying out federal immigration laws on the federal government's behalf." *Id.* And that is the scenario presented here—*City* employees would be required to work with ICE if the WCO were enjoined. The Tenth Amendment prohibits that. *See California II*, 921 F.3d at 888. Like the law upheld in *McHenry County*, the WCO must be protected as an exercise of the City's preserved authority "within our dual system of sovereignty" to direct the affairs of its own employees. 44 F.4th at 585. *See also Printz*, 521 U.S. at 932.[11] Count II fails.

### III. The WCO Does Not Violate Intergovernmental Immunity By Directly Regulating The Federal Government.

Direct regulation occurs when a local law or regulation "places a prohibition on the Federal Government." *McHenry Cty.*, 44 F.4th at 592. The WCO does not do this. *See* Dkt. 35 at

---

[11] Plaintiff calls the WCO's purported discrimination against ICE dangerous because "there is no political check on the unlawful discrimination" when local voters support "frustrating ICE's enforcement of federal immigration law." Dkt. 50 at 33. That mischaracterizes both the WCO and the "ballot-box safeguard" discussed in *United States v. Washington*, 596 U.S. 832 (2022). There, the Court noted the potential for state voters to pursue state laws that benefit them while imposing costs on the federal government and explained that "[t]he nondiscrimination principle" is a "check on the State's ability to impose such laws." *Id.* at 841. Here, in contrast, the WCO does not corral federal resources for the City's benefit. Indeed it is the federal government that seeks to impose costs on Chicago's taxpayers by using local law enforcement to support its immigration enforcement efforts.

25. It regulates only City employees. Like the law upheld in *McHenry County*, its prohibitions "impose[] no direct regulation on any federal official or agency." 44 F.4th at 593.

Plaintiff claims the WCO improperly regulates the federal government by preventing "federal agents from using their Congressionally authorized tools to effectuate alien detentions and removals," Dkt. 50 at 26, specifically the use of administrative warrants to arrest and detain immigrants, *id.* at 27. Similarly, Plaintiff argues that the WCO denies ICE "access to aliens in . . . local custody upon their release," making it more difficult for ICE to rearrest those individuals. *Id.* at 28. But the WCO's direction that City employees not respond to administrative warrants or provide access is, again, merely a regulation of City employees. It does not dictate how federal agents perform their duties. Even on the view that the WCO makes federal immigration enforcement more difficult, that does not mean it "regulates" federal activity. Otherwise, almost any failure to actively assist federal enforcement would amount to impermissible "regulation."[12]

Plaintiff's argument that the City's policies "override" the "discretion conferred by Congress," Dkt. 50 at 28, is also wrong. Congress' will is reflected in the INA, which does not obligate local law enforcement to facilitate ICE arrests or give ICE information about and access to detainees in local custody. *See* Dkt. 35 at 9-10. *See also California II*, 921 F.3d at 889 ("[T]he INA does not require any particular action on the part of California or its political subdivisions."); *Barr*, 961 F.3d at 887 ("[T]he Attorney General's perception of the urgency of immigration enforcement does not corral for the executive branch the powers entrusted to the legislative branch."). It makes local participation in federal immigration enforcement voluntary, meaning the City's decision to enact the WCO and opt out of assistance does not flout Congress'

---

[12] Plaintiff raises the specter of "dangerous criminal[s]" being released "onto the streets," Dkt. 50 at 28, but if an alien is a dangerous criminal, ICE may obtain a criminal warrant from a judge, in which case the WCO permits cooperation by City agents and agencies. *See* MCC § 2-173-030(a).

design. *See McHenry*, 44 F.4th at 593 ("[E]ven before the Act was passed, local entities were free to withhold their cooperation or terminate existing agreements.").

Plaintiff cites *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), and, again, *King County*, but these do not help it. *Geo Group* addressed a California ban on detention facilities operated by private companies, including those used by federal immigration authorities. The Ninth Circuit held that the ban regulated the federal government because it "prevent[ed] ICE from hiring the personnel of its choice" to house detainees. 50 F.4th at 757. *King County* similarly held that a county order barring private companies from servicing ICE charter flights "override[s]" ICE's decision "to use private contractors to run its flights." 122 F.4th at 756 (citing *Geo Group*, 50 F.4th at 750-51). Unlike these laws, the WCO does not bar the federal government from contracting with private entities for immigration assistance. Even more important, the Seventh Circuit takes a narrower view of intergovernmental immunity than the Ninth Circuit—the doctrine is implicated only if a law directly regulates the federal government itself. *See McHenry Cty.*, 44 F.4th at 592; *Geo Grp.*, 50 F.4th at 765-66 and n.2 (Murguia, J., dissenting). And under that rule, the WCO does not directly regulate federal entities.

Finally, Plaintiff's attempt to use a "direct regulation" argument to obligate the City to participate in civil immigration enforcement violates the Tenth Amendment's anticommandeering doctrine. *See* Dkt. 35 at 25. Plaintiff does not respond to this argument. For all these reasons, Count III should be dismissed.

**CONCLUSION**

The Court should grant the City's Motion to dismiss Plaintiff's claims against the City under Rule 12(b)(6) with prejudice.

Dated: April 29, 2025

Respectfully submitted,

MARY B. RICHARDSON-LOWRY
Corporation Counsel of the City of Chicago

*/s/ Andrew Worseck*
  Deputy Corporation Counsel

ANDREW W. WORSECK
andrew.worseck@cityofchicago.org
ELLEN W. MCLAUGHLIN
ellen.mclaughlin@cityofchicago.org
AMIE L. MEDLEY
amie.medley@cityofchicago.org
KATHERINE ROSE LAMB
Katherine.lamb@cityofchicago.org
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
2 N. LaSalle St., Ste. 520
Chicago, IL 60602
(312) 744-7129

*Attorneys for Defendants City of Chicago,*
  *Brandon Johnson, and Larry Snelling*

## **CERTIFICATE OF SERVICE**

I, Andrew Worseck, hereby certify that a copy of the foregoing document was filed on April 29, 2025, with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system, which will send notifications of such filing to all parties that have appeared in this action.

<em>/s/ Andrew Worseck</em><br>Deputy Corporation Counsel